AO 106 (Rev. 04/10)  Application for a Search Warrant (Modified: WAWD 10-26-18)

# UNITED STATES DISTRICT COURT
### for the
Western District of Washington

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) | Case No.    MJ21-183 |
| The locations more fully described in Attachments A and A1 through A39 | ) ) ) | |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
the locations more fully described in Attachments A and A1 through A39, incorporated herein by reference.

located in the _____ Western _____ District of _____ Washington _____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC §§ 841(a)(1), 841(b)(1) and 846 | Distribution of and possession with intent to distribute controlled substances, conspiracy to commit these offenses and additional offenses described in the attached affidavit |
| 18 USC §§ 1956 and 1957 | Money laundering and conspiracy to launder money |

The application is based on these facts:

☑ See attached affidavit of FBI Special Agent Shawna McCann.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Pursuant to Fed. R. Crim. P. 4.1, this warrant is presented: ☑ by reliable electronic means; or; ☐ telephonically recorded.

*Applicant's signature*

Shawna McCann, Special Agent
*Printed name and title*

○ The foregoing affidavit was sworn to before me and signed in my presence, or
◉ The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone.

Date:    03/31/2021

*Judge's signature*

City and state:  Seattle, Washington       Mary Alice Theiler, United States Magistrate Judge
*Printed name and title*

# AFFIDAVIT OF SHAWNA MCCANN

STATE OF WASHINGTON )
)  ss
COUNTY OF KING )

I, Shawna McCann, a Special Agent with the Federal Bureau of Investigation, Seattle, Washington, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I am employed as a Special Agent (SA) with the Federal Bureau of Investigation (FBI) and have been employed with the FBI since September 2017. I am currently assigned to the Seattle Field Division where I am a member of the violent crime, gang, and Transnational Organized Crime – Western Hemisphere squad. In this capacity, I investigate, *inter alia*, violations of the Controlled Substance Act, Title 21, United States Code, Section 801 *et seq*., and related offenses. I have received specialized training in the enforcement and investigation of the Controlled Substance Act. I have received over 400 hours of classroom training including, but not limited to, drug identification, drug interdiction, money laundering techniques and schemes, smuggling, and the investigation of individuals and/or organizations involved in the illegal possession, possession for sale, sales, importation, smuggling, manufacturing, and trafficking of controlled substances.

2.      In my role as a Special Agent for the FBI, I have participated in narcotics investigations (e.g., heroin, cocaine, marijuana, and methamphetamine) that have resulted in the arrest of individuals and the seizure of illicit narcotics and/or narcotics-related evidence and the forfeiture of narcotics-related assets. I have been involved in the service of federal and state search warrants as part of these investigations. I have encountered and have become familiar with various tools, methods, trends, paraphernalia, and related articles utilized by various traffickers in their efforts to import, export, conceal, and distribute controlled substances. I am also familiar with the manner in which drug traffickers use telephones, often cellular telephones, to conduct their unlawful operations,

AFFIDAVIT OF SHAWNA MCCANN - 1
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

and how they code their conversations to disguise their unlawful activities. I am also familiar with the various methods of packaging, delivering, transferring, and laundering drug proceeds. Additionally, through my training and experience, I can identify illegal drugs by sight, odor, and texture.

3.      I have also worked on drug investigations involving the use of court-authorized wiretaps under Title III. In that capacity, I have had the opportunity to monitor, listen to, and review transcripts and line sheets (prepared by linguists) documenting the content of hundreds of intercepted conversations involving the trafficking of cocaine, methamphetamine, heroin, and other narcotics, by persons who used some form of code to attempt to thwart law enforcement detection. I have also interviewed defendants at the time of their arrest and have debriefed, spoken with, and/or interviewed numerous drug dealers or confidential sources (informants) at proffer and field interviews who were experienced in speaking in coded conversation over the telephone. From these interviews, and also from discussions with other experienced agents, I have gained knowledge regarding the various methods, techniques, codes, and/or jargon used by drug traffickers in the course of their criminal activities, including their use of firearms to protect their narcotics-related activities and of cellular telephones and other electronic means to facilitate communications while avoiding law enforcement scrutiny.

4.      I have written affidavits in support of court-authorized federal warrants and orders in the Western District of Washington for GPS tracking of telephones, Pen Register/Trap and Trace, and search warrants. Additionally, I have testified in grand jury proceedings, written investigative reports, and conducted and participated in numerous interviews of drug traffickers of various roles within drug organizations, which has provided me with a greater understanding of the methods by which drug trafficking organizations operate.

5.      I am an investigative law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7). As such, I am empowered to conduct investigations

AFFIDAVIT OF SHAWNA MCCANN - 2
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   of, and to make arrests for, violations of the Controlled Substance Act, Title 21, United

2   States Code, Section 801 *et seq*., and related offenses.

3   ## PURPOSE OF THE AFFIDAVIT

4   6.       As described herein, there is probable cause to believe that the following

5   offenses have been committed, and are being committed, by Curtis Snipes aka Big Curt

6   aka Dirty, Michael Hopkins aka Mike, Terry Ezell aka T, Wayne Dubois, Jamar Howard

7   aka JHoov aka Creamy, Jerry Jones aka Snake, Gerald Aikens, Davon Evans aka Devo

8   aka Gonzo, Tibor Jackson, Terry Cameron, Craig Jordan aka 6'9, Isiah Reynolds, and

9   Carlos Daniels aka Los.

10          a.       Distribution of, and possession with intent to distribute, controlled

11   substances, and conspiracy to commit these offenses, in violation of Title 21,

12   United States Code, Sections 841(a)(1), 841(b)(1), and 846;

13          b.       Money laundering and conspiracy to launder money, in violation of

14   Title 18, United States Code, Sections 1956 and 1957;

15          c.       Use of communication facilities to commit, facilitate, or further an

16   act or acts which constitute a felony in violation of Title 21, United States Code,

17   Section 843(b);

18          d.       Interstate and foreign travel to promote, manage, establish, carry on,

19   or facilitate unlawful activity, in violation of Title 18, United States Code,

20   Section 1952;

21          e.       Possession of a firearm in furtherance of a drug trafficking crime, in

22   violation of Title 18, United States Code, Section 924(c); and

23          f.       Prohibited person in possession of a firearm, in violation of Title 18,

24   United States Code, Section 922(g).

25

26

27

28

7.      I make this Affidavit in support of an application for warrants authorizing searches of the subject locations and vehicles,[1] which are further described below and in Attachments A and A1 through A39 (attached hereto and incorporated by reference as if fully set forth herein), for evidence, fruits and instrumentalities, as further described in Attachment B (attached hereto and incorporated by reference as if fully set forth herein), of violations of the above-listed statutes, committed by the subjects listed above, and others, as described herein.

8.      For each of the following locations, I request that authority to search extend to all parts of the property, including main structure, garage(s), storage structures, outbuildings, and curtilage, and all vehicles, containers, compartments, or safes located on the property, whether locked or not, where the items described in Attachment B (list of items to be seized) could be found. For each of the following vehicles, I request that authority to search extend to all parts of the vehicle and any cases, containers, compartments, or safes located in the vehicle, whether locked or not, where the items described in Attachment B (list of items to be seized) could be found. Additionally, as is discussed herein, members of this conspiracy have been known to use vehicles with hidden compartments. For this reason, I am requesting that if agents are unable to thoroughly search or access a particular area of a vehicle at the location where the vehicle is found, the vehicle may be transported to another location where they would have at their disposal the appropriate tools and equipment to properly search the vehicle, and the search may continue at that location.

9.      I am seeking warrants for the following subject locations[2] and subject vehicles:

[1] The residences and vehicles to be searched are highlighted in bold font in this affidavit.

[2] I have verified the descriptions of the subject properties and vehicles, either by personally viewing them myself, or through my discussions with other law enforcement officers who have personally viewed them.

AFFIDAVIT OF SHAWNA MCCANN - 4
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

a. 3651 South Tyler Street, Tacoma, Washington (**Subject Premises 2**), as further described in Attachments A and A1. Curtis Snipes resides here and makes mortgage payments for this residence in cash. The probable cause with respect to this residence is discussed at paragraphs 24–73.[3]

b. 310 25th Avenue, Seattle, Washington (**Subject Premises 34**), as further described in Attachments A and A2. Curtis Snipes lists this as his residence on his driver's license, and Terry Ezell reports this as his residence to U.S. Probation. The probable cause with respect to this residence is discussed at paragraphs 24–81.

c. 5137 S Leo Street, Seattle, Washington (**Subject Premises 35**), as further described in Attachments A and A3. Curtis Snipes frequented this residence prior to drug transactions. The probable cause with respect to this residence is discussed at paragraphs 24–73.

d. 2101 E James Street, Apt. #208, Seattle, Washington (**Subject Premises 52**), as further described in Attachments A and A4. Terry Ezell resides here. The probable cause with respect to this residence is discussed at paragraphs 74–81.

e. The person of Terry Ezell as further described in Attachments A and A5. The probable cause with respect to this person is discussed at paragraphs 74–81.

f. 615 East 49th Street, Tacoma, Washington (**Subject Premises 36**), as further described in Attachments A and A6. Michael Hopkins resides here. The probable cause with respect to this residence is discussed at paragraphs 82–90.

---

[3] During this investigation, agents have already identified several residences and vehicles as Subject Premises 1–12 and Subject Vehicles 1–14. For consistency, agents are continuing the numbering of target premises and vehicles here. Agents have also already conducted searches of 11 residences associated with Michael Walker DTO members, including **Subject Premises 2** (Curtis Snipes) and **Subject Premises 10** (Jamar Howard) in the fall of 2020. In this Application and Affidavit, agents are seeking to conduct additional searches of **Subject Premises 2** and **Subject Premises 10**, based on new and additional probable cause developed since the initial searches of those premises.

AFFIDAVIT OF SHAWNA MCCANN - 5
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

g.      A tan 1997 Ford F150 bearing Washington license C41266U (**Subject Vehicle 32**), as further described in Attachments A and A7. Michael Hopkins uses this vehicle. The probable cause with respect to this vehicle is discussed at paragraphs 82–90.

h.      2102 Martin Luther King Jr. Way, Tacoma, Washington (**Subject Premises 37**), as further described in Attachments A and A8. Wayne Dubois resides here. The probable cause with respect to this residence is discussed at paragraphs 91–99.

i.      A red 2012 Chevrolet Silverado bearing Washington license plate C95611N (**Subject Vehicle 33**), as further described in Attachments A and A9. Wayne Dubois uses this vehicle. The probable cause with respect to this vehicle is discussed at paragraphs 91–99.

j.      The person of Wayne Dubois as further described in Attachments A and A10. The probable cause with respect to this person is discussed at paragraphs 91–99.

k.      2909 Mill Avenue S, Renton, Washington (**Subject Premises 10**), as further described in Attachments A and A11. Jamar Howard resides here. The probable cause with respect to this residence is discussed at paragraphs 100–129.

l.      13011 East Gibson Road, Apt. #P128, Everett, Washington (**Subject Premises 38**), as further described in Attachments A and A12. Jerry Jones aka Snake resides here. The probable cause with respect to this residence is discussed at paragraphs 130–149.

m.      A 2006 Range Rover bearing Washington license plate BVK2041 (**Subject Vehicle 34**), as further described in Attachments A and A13. Jerry Jones uses this vehicle. The probable cause with respect to this vehicle is discussed at paragraphs 130–149.

n.      A black 2018 Toyota Camry bearing Washington license plate BVM7668 (**Subject Vehicle 35**), as further described in Attachments A and A14.

AFFIDAVIT OF SHAWNA MCCANN - 6
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Jerry Jones also uses this vehicle. The probable cause with respect to this vehicle is discussed at paragraphs 130–149.

o. The person of Jerry Jones as further described in Attachments A and A15. The probable cause with respect to this person is discussed at paragraphs 130–149.

p. 4041 30th Avenue South, Seattle, Washington (**Subject Premises 39**), as further described in Attachments A and A16. Gerald Aikens resides here. The probable cause with respect to this residence is discussed at paragraphs 150–160.

q. A black 2013 Ford F150 bearing Washington license plate C72919R (**Subject Vehicle 36**), as further described in Attachments A and A17. Gerald Aikens uses this vehicle. The probable cause with respect to this vehicle is discussed at paragraphs 150–160.

r. The person of Gerald Aikens as further described in Attachments A and A18. The probable cause with respect to this person is discussed at paragraphs 150–160.

s. 601 25th Avenue E, Seattle, Washington (**Subject Premises 42**), as further described in Attachments A and A19. Davon Evans resides here. The probable cause with respect to this residence is discussed at paragraphs 161–173.

t. A blue 2006 Dodge Ram 1500 truck bearing Washington license plate C55634E (**Subject Vehicle 41**), as further described in Attachments A and A20. Davon Evans uses this vehicle. The probable cause with respect to this vehicle is discussed at paragraphs 161–173.

u. 6430 S 118th Street, Seattle, Washington (**Subject Premises 43**), as further described in Attachments A and A21. Davon Evans also frequents this residence. The probable cause with respect to this residence is discussed at paragraphs 161–173.

AFFIDAVIT OF SHAWNA MCCANN - 7
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

v.      The person of Davon Evans as further described in Attachments A and A22. The probable cause with respect to this person is discussed at paragraphs 161–173.

w.      4842 Rural Road SW, Apt. 207, Tumwater, Washington (**Subject Premises 44**), as further described in Attachments A and A23. Tibor Jackson resides here. The probable cause with respect to this residence is discussed at paragraphs 174–188.

x.      A black 2014 Hyundai Santa Fe bearing Washington license plate number BFL2212 (**Subject Vehicle 42**), as further described in Attachments A and A24. Tibor Jackson uses this vehicle. The probable cause with respect to this vehicle is discussed at paragraphs 174–188.

y.      The person of Tibor Jackson as further described in Attachments A and A25. The probable cause with respect to this person is discussed at paragraphs 174–188.

z.      1013 South 316th Street, Federal Way, Washington (**Subject Premises 45**), as further described in Attachments A and A26. Terry Cameron resides here. The probable cause with respect to this residence is discussed at paragraphs 189–205.

aa.     A white 2005 Volvo XC90 bearing Washington state license plate number BVB0498 (**Subject Vehicle 38**), as further described in Attachments A and A27. Terry Cameron uses this vehicle. The probable cause with respect to this vehicle is discussed at paragraphs 189–205.

bb.     Seattle Inn Northgate, Room 45, located at 12035 Aurora Avenue N, Seattle, Washington (**Subject Premises 46**), as further described in Attachments A and A28. Craig Jordan resides here. The probable cause with respect to this residence is discussed at paragraphs 206–219.

cc.     Hillside Motel, Room 3, located at 2451 Aurora Avenue N, Seattle, Washington (**Subject Premises 50**), as further described in Attachments A and

A29. Craig Jordan also resides here. The probable cause with respect to this residence is discussed at paragraphs 206–219.

dd.     A white 2017 Chevy Silverado bearing Washington license plate number C41148U (**Subject Vehicle 39**), as further described in Attachments A and A30. Craig Jordan uses this vehicle. The probable cause with respect to this vehicle is discussed at paragraphs 206–219.

ee.     The person of Craig Jordan as further described in Attachments A and A31. The probable cause with respect to this person is discussed at paragraphs 206–219.

ff.     323 25th Avenue S, Apt 218, Seattle, Washington (**Subject Premises 47**), as further described in Attachments A and A32. Isiah Reynolds resides here. The probable cause with respect to this residence is discussed at paragraphs 220–232.

gg.     A silver Mercedes Benz C240 with no front or rear license plate and a temporary tag in the rear window (**Subject Vehicle 40**), as further described in Attachments A and A33. Isiah Reynolds uses this vehicle. The probable cause with respect to this vehicle is discussed at paragraphs 220–232.

hh.     The person of Isiah Reynolds as further described in Attachments A and A34. The probable cause with respect to this person is discussed at paragraphs 220–232.

ii.     Bellevue South Tower, 10700 NE 4th Street, Unit #2016, Bellevue, Washington, and that unit's assigned storage unit number P364-04 (**Subject Premises 49**), as further described in Attachments A and A35. Carlos Daniels resides here. The probable cause with respect to this residence is discussed at paragraphs 233–254.

jj.     A blue 2006 Bentley Continental bearing Washington license plate number CEO (**Subject Vehicle 44**), as further described in Attachments A and

A36. Carlos Daniels owns this vehicle. The probable cause with respect to this vehicle is discussed at paragraphs 233–254.

kk.   A dark blue 2004 Land Rover Range Rover bearing Washington license plate number BHF1786 (**Subject Vehicle 45**), as further described in Attachments A and A37. Carlos Daniels uses this vehicle. The probable cause with respect to this vehicle is discussed at paragraphs 233–254.

ll.   A dark blue 2008 Mercedes CL bearing Washington license plate number BJY3445 (**Subject Vehicle 50**), as further described in Attachments A and A38. Carlos Daniels also owns this vehicle. The probable cause with respect to this vehicle is discussed at paragraphs 233–254.

mm.   The person of Carlos Daniels as further described in Attachments A and A39. The probable cause with respect to this person is discussed at paragraphs 233–254.

## SOURCES OF INFORMATION

10.   I have obtained the facts set forth in this Affidavit through my personal participation in the investigation described below; from my review of intercepted calls to date; from oral and written reports of other law enforcement officers; from records, documents, and other evidence obtained during this investigation; and from confidential sources who are associated with and knowledgeable about the subjects of this investigation. I have obtained and read official reports prepared by various law enforcement officers participating in this and other investigations. I have not included every fact known concerning this investigation. I have set forth the facts that I believe are necessary for a fair determination of probable cause for the requested search warrants. During this investigation, investigators have made use of numerous investigative techniques, including but not limited to making controlled purchases of controlled substances; executing search warrants; seizing drugs and drug proceeds; conducting video and physical surveillance; and conducting a financial investigation.

AFFIDAVIT OF SHAWNA MCCANN - 10
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

11.     When I refer to vehicle ownership or driver's licenses in this Affidavit, I have reviewed the relevant state vehicle records from the Washington State Department of Licensing, or the equivalent agency in other states or countries. When I refer to the criminal history of a subject, I have read the available criminal history from state or federal agencies. When I refer to telephone subscription records, I have read the subscriber records obtained from the telephone company by administrative subpoena or court order, or I have obtained the information from other law enforcement officers familiar with this investigation. When I refer to telephone toll records, I have received the information from the telephone company pursuant to an administrative subpoena or court-authorized pen registers. When I refer to customer information regarding utilities, power, or vehicle rentals, I obtained this information pursuant to an administrative subpoena. When I refer to GPS data for telephones, that data was obtained pursuant to court authorization, granted in the Western District of Washington.

12.     During the course of this investigation, we have obtained authorization in the Western District of Washington to intercept wire communication over multiple target telephones, including but not limited to the telephones summarized in the following table:

| Target Telephone | User | Date of Order | Date Ended |
|---|---|---|---|
| TT6 – (206) 393-7387 | Kevin Gipson | July 9, 2020 | August 7, 2020 |
| TT7 – (206) 409-2826 | Stevie Allen | July 9, 2020 | August 7, 2020 |
| TT8 – (425) 496-0964 | Michael Walker | July 9, 2020 | August 7, 2020 |
| TT12 – (206) 939-8973 | Jerrell Ingram | September 3, 2020 | October 2, 2020 |
| TT13 – (702) 275-6703 | Jimmy Carter | September 3, 2020 | October 2, 2020 |
| TT14 – (206) 898-8457 | Jamar Howard | September 3, 2020 | October 2, 2020 |
| TT16 – (206) 898-4155 | Larry Collins | September 3, 2020 February 8, 2021 | October 2, 2020 March 9, 2021 |
| TT19 – (206) 915-6994 | David Kelley | September 3, 2020 October 23, 2020 | October 2, 2020 November 21, 2020 |

AFFIDAVIT OF SHAWNA MCCANN - 11
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

| TT20 – (206) 397-7007 | Jimmy Carter | September 3, 2020 | October 2, 2020 |
| TT30 – (404) 988-2897 | Kefentse Olabisi | October 23, 2020 | November 21, 2020 |
| TT39 – (206) 231-8368 | Curtis Snipes | October 23, 2020 | November 2, 2020[4] |
| TT43 – (253) 331-0358 | Yusef Parrish | October 23, 2020 | November 21, 2020 |
| TT23 – (206) 280-9706 | Eugene McGee | February 8, 2021 | March 9, 2021 |

13.     During this investigation, investigators intercepted thousands of drug-related conversations and text messages. In this Affidavit, I discuss some of these intercepted calls and text messages. Communications occurred in English. A combination of agents, task force officers, detectives, and professional staff have listened to these calls and summarized their content. I have relied upon the written summaries (line sheets and transcripts) prepared by the monitors for the description of the calls referenced below, and I have also personally listened to the calls. I know through training and experience, including experience with this investigation, that individuals involved in the distribution of controlled substances and other criminal activity often use coded communications when referring to their illegal activity. I have used this training and experience, as well as the training and experience of other experienced law enforcement officers familiar with this investigation who have reviewed these summaries and have listened to the calls, to explain what I believe to be an accurate interpretation for these coded communications, which are included in brackets in this Affidavit.

14.     In this Affidavit, I discuss some of the pertinent portions of intercepted calls and generally do not include the entire intercepted conversation. I indicate where possible the parties who were intercepted on the call. In so doing, I often rely on voice recognition/comparison by myself, other agents, and/or the monitors. For example, if we

---

[4] On October 28, 2020, and October 30, 2020, investigators executed search warrants on three homes, three vehicles, and one person, all connected to Curtis Snipes and his associates. At the conclusion of the execution of these search warrants, collectively, seven guns, six phones, more than $92,000, and approximately one quarter kilogram of cocaine was seized. One of the phones seized was TT39, used by Curtis Snipes. Because that phone came into police custody, interception was intentionally discontinued on November 2, 2020.

AFFIDAVIT OF SHAWNA MCCANN - 12
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

have identified an individual as the user of a particular phone (through use of a ruse call, surveillance/GPS, etc.), and that person starts using a different phone, we will typically recognize the voice of that person when using the new phone.

15.     Some examples of coded terms used by members of the drug trafficking organization being investigated, referred to as the "Michael Walker DTO" for the reasons described below, include "hard," "heezy," and "heezard" (crack cocaine); "soft," "seezy," and "seezoft" (powder cocaine); and "fire" (often marijuana, but also used to describe high potency of cocaine). Some terms to indicate quantity have been "nino," "neen," or "nina" (nine ounces of cocaine); "baby" (four and a half ounces of cocaine); "half" or "heezy" (half ounce); "ball" (eightball referring to one-eighth of an ounce); and "queezy" (quarter-ounce). Drug customers are often referred to as "jug" or "joog."

16.     DTO members also use the word "need" and "on" to convey the desire to be supplied with drugs. DTO members often say, "I need to see you," "I need you," "I need on" to arrange a drug transaction. Oftentimes when this is said, no other discussion occurs regarding amounts or prices. Based upon my training and experience, I believe the expected transaction is already known by both parties because of the length of time and frequency the parties have been dealing with each other.

17.     Context is also important in interpreting coded language; for example, when someone says "one" is selling for "14-5," that indicates that the speaker is discussing an ounce of cocaine for $1,450. Based on my training and experience, including during this investigation, I am familiar with current and recent price ranges of drugs in the Seattle area, which depends on quality; I know that an ounce of cocaine can cost anywhere from $1,100 to $2,000 per ounce. The price has fluctuated significantly over the last year, due at least in part to the global pandemic and its effect on the ease of transporting goods and crossing borders. Additionally, price is affected by the volume, such that larger amounts are sold at some discount as compared to smaller amounts.

18.     In this Affidavit, I am seeking authority to search locations and vehicles associated with drug distributors. To give perspective as to the amount of drugs being

AFFIDAVIT OF SHAWNA MCCANN - 13
USAO #2019R01083

distributed, and because most of the distribution in this investigation centered on cocaine, I will draw the distinction as to user amounts and distributor amounts of this drug based upon my training, experience, and knowledge of this investigation.

19.    Crack cocaine is often sold on the street in the open air drug markets of the Seattle area. Street dealers often sell $10 or $20 rocks or wafers of crack cocaine to users. These rocks are often .1 or .2 grams of cocaine each. User amounts of cocaine also includes "teeners" (1/16 of an ounce or 1.75 grams), single grams, and "eight balls" (1/8 of an ounce or 3.5 grams). Street dealers themselves may be supplied quarter-ounce (7 grams), half-ounce, and ounce (28 grams) quantities or more. Currently, when purchasing an ounce of cocaine, the price is around $1,400 to $1,800, give or take a couple of hundred dollars. Often those purchasing multiple ounces or more of cocaine are distributing to other distributors. Larger amounts of cocaine and associated prices are discussed throughout this Affidavit.

## SUMMARY OF THE INVESTIGATION

20.    Investigators believe Michael Walker to be a trafficker of narcotics in this District. To summarize, according to historical reports, Michael Walker has been a subject or person of interest in drug investigations at least as far back as 2016, including reports of Michael Walker making trips to and from Los Angeles to pick up narcotics and supplying cocaine to numerous individuals. In 2019, two separate individuals stated they had purchased cocaine from Michael Walker and/or Michael Walker's associates, Maghan Stenson, Stevie Allen, and Jamaal Davis, on several occasions in the past.

21.    Based upon historical confidential source information, investigators identified Michael Walker as a large-scale cocaine source of supply and also a source of supply of marijuana. Information provided by confidential sources, the use of traditional investigative techniques, and the use of wiretaps have led to the identification of numerous individuals suspected to be involved with the drug trafficking and money laundering activities of Michael Walker. Investigators refer to this network of suspected drug traffickers as the Michael Walker Drug Trafficking Organization (DTO).

AFFIDAVIT OF SHAWNA MCCANN - 14
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    22.    Many of the target subjects and their associates have affiliation with

2  Seattle-area gangs, predominantly those originating from the Central District

3  neighborhood of Seattle. These gangs include, but are not limited to, Union Street Black

4  Gangster Disciples (BGD), Deuce 8 BGD, and other local Crip and Blood gangs.

5  Because of these associations, investigators believe that the Michael Walker DTO may be

6  a significant source of supply of drugs being distributed by these gangs. Many involved

7  with these gangs have been investigated for crimes ranging from street-level narcotics to

8  robbery, shootings, and murder. Many target subjects and associates have long-standing

9  relationships with others engaged in criminal activity. Many of these relationships span

10  decades.

11    **SUBJECT LOCATIONS AND VEHICLES TO BE SEARCHED**

12    23.    In this section, I discuss the identification of individual subjects, examples

13  of their drug calls and transactions, seizures of their contraband, and their associated

14  locations and vehicles for which search warrants are sought.

15  **A.    Curtis Snipes's Residence, Secondary Residence, and Stash House**

16    24.    Curtis Snipes is a multi-kilogram source of supply of cocaine to several

17  members of the Michael Walker DTO, including Jamar Howard, Jerry Jones, Michael

18  Hopkins, Terry Ezell, and Wayne Dubois. Agents have identified three locations

19  associated with Curtis Snipes and his drug trafficking, including a primary residence and

20  two locations believed to be used by Curtis Snipes as stash houses. On October 23, 2020,

21  agents obtained a court-authorized wire and electronic communications interception on

22  TT39 used by Curtis Snipes.[5] During the period of wire and electronic communications

23  interception, agents observed Curtis Snipes conducting multiple cocaine transactions on a

24  daily to weekly basis, as described in more detail below.

---

[5] Agents obtained a search warrant for GPS location data for TT39, conducted physical surveillance in the area of the GPS location data, and confirmed the user of TT39 was Curtis Snipes based on identifying Curtis Snipes from his driver's license photograph and seeing him in the same area of the GPS pings for TT39 at multiple different locations and times.

AFFIDAVIT OF SHAWNA MCCANN - 15
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

25.     Curtis Snipes has federal felony convictions for possession and distribution of cocaine. Curtis Snipes has state felony convictions for possession of stolen property, assault, and conspiracy to commit a drug offense.

### 1.     *Identification of Locations Associated with Curtis Snipes*

26.     During this investigation, agents identified the following premises associated with Curtis Snipes:

a.     A primary residence at 3651 South Tyler Street, Tacoma, Washington (**Subject Premises 2**) for which he makes monthly mortgage payments in cash;

b.     A residence at 310 25th Avenue, Seattle, Washington, which is listed as his residence on his Washington driver's license and is reported to U.S. Probation as the residence of Terry Ezell, (**Subject Premises 34**); and

c.     A residence at 5137 S Leo Street, Seattle, Washington, that he frequents in a pattern indicative of a stash house location (**Subject Premises 35**).

27.     I know, based on my training and experience, that drug traffickers frequently keep their narcotics and narcotics proceeds in their residences, vehicles, and stash locations in order to protect their supply and to have narcotics and cash on hand for transactions. Based on the information set forth below, including intercepted communications, I believe that Curtis Snipes is a multi-kilogram cocaine trafficker who likely keeps his narcotics supply and proceeds in **Subject Premises 2**, **34**, and **35**.

#### a.     *Subject Premises 2*

28.     Agents identified **Subject Premises 2** as Curtis Snipes's primary residence through physical and electronic surveillance. Agents obtained GPS location data on Curtis Snipes's cell phone, TT39, which showed that Curtis Snipes remained at **Subject Premises 2** overnights from October 2020 to November 2020. Additionally, agents installed a pole camera capturing the driveway and front door of **Subject Premises 2**, which showed that Curtis Snipes remained at **Subject Premises 2** overnights from October 2020 to the present. During this investigation, and specifically the period of wire

AFFIDAVIT OF SHAWNA MCCANN - 16
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

and electronic communications interception, agents observed Curtis Snipes conducting multiple cocaine transactions on a daily to weekly basis. Agents observed Curtis Snipes leaving from and coming back to **Subject Premises 2** immediately before and after these drug transactions as well as conducting at least one cocaine transaction at **Subject Premises 2**. Moreover, as discussed below, agents believe that Curtis Snipes was holding six kilograms of cocaine at **Subject Premises 2** but moved the cocaine after the traffic stop of an associate, Michael Hopkins, before agents could search the residence.

29.     On October 30, 2020, agents searched **Subject Premises 2**. In the months since the search, agents believe that Curtis Snipes has continued to engage in drug trafficking, and that he has returned to **Subject Premises 2** as his primary residence. For example, recent pole camera surveillance footage shows Curtis Snipes staying at **Subject Premises 2** regularly, including overnight. Accordingly, agents seek authorization to search **Subject Premises 2** again.

### b.     Subject Premises 34

30.     Agents obtained financial statements from a search of Curtis Snipes's vehicle, which showed that Curtis Snipes makes monthly mortgage payments in cash for **Subject Premises 2**, with the home mortgage and escrow account contact information from Wells Fargo being listed as Curtis Snipes's driver's license address, **Subject Premises 34**. As set forth below, agents obtained a search warrant for two vehicles associated with Curtis Snipes and executed those search warrants on October 30, 2020. Pursuant to the warrant, agents searched a silver BMW bearing Washington license plate 887ZOM (Subject Vehicle 1), which Curtis Snipes was driving when he met with Terry Ezell, a known drug trafficking associate (as discussed below). In the BMW, agents located various financial documents, including Wells Fargo Bank transaction receipts showing monthly cash deposits in amounts ranging from approximately $1,200 to $1,300 into an account associated with the escrow/mortgage of **Subject Premises 2**, and a Wells Fargo escrow statement for **Subject Premises 2** mailed to **Subject Premises 34**. Agents

AFFIDAVIT OF SHAWNA MCCANN - 17
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

also located a hidden compartment in this vehicle that was empty at the time of the search.

31.     Agents reviewed GPS location data for TT39, which showed that, from October 2, 2020, to October 20, 2020, Curtis Snipes visited **Subject Premises 34** on October 8, 10, and 20, 2020, and stayed at the residence between fifteen to thirty minutes. Based on my training and experience, I know that sophisticated and higher-level drug traffickers, such as Curtis Snipes, often have multiple stash locations for narcotics, narcotics proceeds, and other drug trafficking evidence, so that if law enforcement searches one residence, the drug trafficker will still have some narcotics and/or narcotics proceeds hidden at their other stash location(s). Accordingly, because **Subject Premises 2** is being paid for by Curtis Snipes using cash, likely proceeds from Curtis Snipes's drug trafficking, and the contact address for that escrow account is **Subject Premises 34**, those payments thereby likely constitute a form of money laundering. Additionally, **Subject Premises 34** may be a stash location for Curtis Snipes, and agents thereby believe that evidence of drug trafficking, money laundering, and other indicia of drug trafficking will be located at **Subject Premises 34**.

32.     Finally, **Subject Premises 34** is Curtis Snipes's current listed residence in Washington Department of Licensing records, and Curtis Snipes has several vehicles registered in his name at **Subject Premises 34**.

33.     **Subject Premises 34** is also associated with Terry Ezell who, as discussed below, is a drug trafficking associate of Curtis Snipes and was stopped in a vehicle registered to **Subject Premises 34** while meeting with Curtis Snipes. Terry Ezell is currently on federal probation and, on March 16, 2021, agents spoke with Terry Ezell's former Probation Officer, who had recently transferred Terry Ezell to another officer's caseload. Terry Ezell's former Probation Officer advised that Terry Ezell's reported residence was **Subject Premises 34**, where he claimed to be living with his aunt. On March 13, 2021, at approximately 1:00 p.m., and again at 4:06 p.m., agents observed parked at **Subject Premises 34** a 2017 Hyundai Elantra sedan bearing Washington

AFFIDAVIT OF SHAWNA MCCANN - 18
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

license plate BQR7928, registered to Lena Mae Jones. As set forth below, this was the same vehicle that Terry Ezell was driving and in which Terry Ezell and Curtis Snipes met briefly on October 30, 2020; agents also found a firearm in the glove box of this vehicle after obtaining a search warrant in October 2020.

34.    Agents have never searched this location.

    *c.    Subject Premises 35*

35.    Agents observed that GPS location data for TT39 placed Curtis Snipes at **Subject Premises 35** before discussing cocaine transactions on intercepted calls, as discussed below, indicating that Curtis Snipes uses **Subject Premises 35** as a stash house. Moreover, suspected drug trafficking associates of Curtis Snipes use a vehicle registered to **Subject Premises 35**, and agents have observed that vehicle parked in the driveway of **Subject Premises 35** as recently as March 2, 2021, and March 15, 2021.

36.    Agents have never searched this location.

    **2.    *Curtis Snipes's Drug Trafficking Prior to Search of Subject Premises 2***
    *a.    Latrina Bankston*

37.    On October 24, 2020, at approximately 1:19 p.m., Curtis Snipes using TT39 made a call to Latrina Bankston (identification discussed below) using (206) 650-4833. (Session 44.) During the call, Latrina Bankston said, "You should of called me... you been texting me..." Curtis Snipes interrupted, "No you could of called me, man you ain't even [unintelligible] I said man. I said, 'I thought she was loyal.'" Latrina Bankston said, "I am loyal. I know you work. Shit when I call you, you be at work. Every time you said you'll call me, 'I will call you when I get done.'" Curtis Snipes asked, "Look. What was the tickets [price] they be, you was getting' it [cocaine] for?" Latrina Bankston responded, "You was charging me seventeen [$1,700 for an ounce of cocaine]." Curtis Snipes clarified, "No I said what were you just paying?" Latrina Bankston responded, "For what?" Snipes replied, "Huh? No. From whoever you did cut me off for [rival cocaine supplier]." Latrina Bankston responded, "No I didn't cut you off for nobody!" Based on my training and experience, I believe that Curtis Snipes is one of Latrina

AFFIDAVIT OF SHAWNA MCCANN - 19
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Bankston's sources of supply for cocaine and was inquiring how much Latrina Bankston was obtaining drugs for from a competing source of supply.

38.    Latrina Bankston continued, "I just saying…yeah seventeen then ... oh no no no no ... and then you know they dropped down a little bit. Why what you charging? I been waiting on you, you said next time you go get with me ..." Curtis Snipes interrupted, "Yeah well what you cut me off for? What they give them to you for?" Latrina Bankston responded, "Well I got all the way down to fourteen [$1,400 per ounce of cocaine]." Latrina Bankston inquired, "What you got? What was you gonna charge me?" Curtis Snipes responded, "Same thing [$1,400 per ounce of cocaine]." The conversation continued, and Latrina Bankston said, "I didn't even really grab none. I really just, it's just that the little bit. I only grabbed a tiny bit and they get, you know what I am saying. And the little bit that I had, it's been so slow. But I was still waiting on you, 'cause I was going to grab that and you know. I haven't really been doing nothing." Based upon my training and experience, I believe that Latrina Bankston was expressing her intent to continue to accept Curtis Snipes as a cocaine source of supply. I know based upon my training and experience, including experience in this investigation, that $1,400 to $1,700 is consistent with the going price for an ounce of cocaine in the Seattle region at the time of this call.[6] Curtis Snipes and Latrina Bankston continued their conversation for a short period and then agreed to talk later.

39.    About ten minutes later, Curtis Snipes using TT39 called an unknown male at phone number (310) 630-7840 (referred to as UM7840). (Session 45.) During this call, Curtis Snipes said, "Just letting you know right? I tapped in with some of my people, and everybody is getting them for hella cheaper right? So we might be back to, you know what I'm saying, because, my dude going to catch wind of you know, because we already hitting up for the same thing, and he getting the whole thing, but everybody even you get

---

[6] The price of marijuana has remained consistent at $1,100 to $1,200 per pound. Based on these price differences, I do not believe that Latrina Bankston and Curtis Snipes were discussing a marijuana transaction.

AFFIDAVIT OF SHAWNA MCCANN - 20
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

a single, they down about like thirteen fifty [$1,350 per ounce of cocaine], fourteen hun[dred] [$1,400 per ounce of cocaine]. That's fifty [$50,000 per kilogram]. You know what I'm saying?" During the conversation, Curtis Snipes continued to talk about the price drop for cocaine, making comments like, "I'm already going to lose on that anyway [lose profits]," "they just dropped dramatically [prices]," and "I been telling mutha fuckas they ain't loyal…they done cut me off cold turkey [stopped contacting Snipes as a source of supply]." Later during the conversation, UM7840 asked, "What you gonna try to sell them for now?" Curtis Snipes responded, "I don't know that why I'm running it by you. I'm just telling you my mental just be running. I'm just going to tell you this is what we gotta do, cause you know that I'm saying, at the end of the day it was good while it lasted. That shit is you know what I'm saying. It's slowing us up. I just went and did the count. *I got six of them [6 kilograms of cocaine].* I ain't doing nothing right now, we can't do nothing right now because I got to get rid of the mother fuckers I got." Later during the call, Curtis Snipes said, "Like my dude, he normally has, he has a line, he hitting [contacting] me. So I know, he might be back active, and he might of flooded the town." Based upon my training and experience, I believe that Curtis Snipes told UM7840 that he still have six kilograms of cocaine that he needed to sell, that he couldn't be resuppplied with cocaine until he had gotten rid of the six kilograms he already had, and that he believed that one of his sources of supply for cocaine may have flooded the local drug market, causing prices to collapse. Based on the amounts of money being discussed during this conversation, specifically $50,000, agents believe that when Curtis Snipes said he had "six of them," he was referring to kilograms of cocaine because the price for a kilogram of cocaine at that time was around $50,000.

40.     UM7840 then asked, "You say they getting them for fifty [$50,000 per kilogram] out there." Curtis Snipes responded, "No. They paying cheaper. If you buying singles [ounces], they paying only fourteen hundred [$1,400 per ounce of cocaine]. That 50 [$50,000] for 36 [36 ounces/1 kilogram]." UM7840 asked, "So you saying not the people that buying like nines [9 ounces/quarter kilogram], but if you buying the whole

thing [a kilogram of cocaine] what you trying to sell it for?" Curtis Snipes responded, "Yeah, that's what I'm saying, I don't know. I'm just saying for our dude to turn our dude on. I'm not telling about everybody else." UM7840 asked, "But what's number [price of a kilogram]?" Curtis Snipes responded, "I haven't did it. I just called. Bro. I just called right now. I just got off the phone. I haven't did the math. I just telling you because this is what they cut me off for." Towards the end of the call, Curtis Snipes expressed, "I'm discussing this with you right now...I got to keep them at fifty [$50,000 per kilogram] right now, you know what I'm saying. Because I need to get my money right now you know what I'm saying. I got to get my money back. So I'm not even entertaining it right now. To tell you the truth. I am going to get my little bit of money…I got to get my money back then we can entertain this for our guys. I'm going to still keep it at the fourteen [$1,400 per ounce]." Based upon my training and experience, I believe Curtis Snipes's cocaine redistributors may have gone to other competing sources of supply because Curtis Snipes's prices for cocaine were too high. I believe Curtis Snipes was explaining to UM7840 that there had been a drop in price of cocaine, but Curtis Snipes was still going ensure he recoups his money for drugs already on hand.

41.     On October 28, 2020, at approximately 9:10 a.m., Curtis Snipes using TT39 sent a text message to Latrina Bankston at (206) 650-4833 stating, "Hit me" [contact me]. (Session 159.) On October 28, 2020, at approximately 12:18 p.m., Curtis Snipes using TT39 sent another text message to Latrina Bankston at (206) 650-4833, stating, "Wyd? Wya?" [What you doing? Where you at?]. (Session 167.) On October 28, 2020, at approximately 12:44 p.m., Curtis Snipes using TT39 called Latrina Bankston at (206) 650-4833. (Session 170.) During this call, the following discussion took place:

TT39: What's up baby?

Bankston: What's up bro? I was just texting you back.

TT39: Oh yea. Where you at, home?

Bankston: Yup. Getting dressed.

TT39: Ok. Hit me when you get out.

AFFIDAVIT OF SHAWNA MCCANN - 22
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Bankston: Huh?

TT39: Hit me up [unintelligible]

Bankston: Are you at work?

TT39: Naw, I'm off.

Bankston: Oh, so you in town. Ok.

TT39: Alright.

42.     On October 28, 2020, at approximately 2:17 p.m., Curtis Snipes using TT39 sent another text message to Latrina Bankston at (206) 650-4833, stating, "Wya" [Where you at?]. (Session 173.) On October 28, 2020, at approximately 2:54 p.m., the T-III intercept system intercepted a call on TT39 (Session 177). The system did not capture the direction of the call or the phone number intercepted. Investigators, however, recognized the voice of the female on the call as that belonging to Latrina Bankston. During the call, Latrina Bankston stated that she was "on the freeway headed out to Renton real quick." Latrina Bankston said she had to go to "Alaska" then interrupted herself and said, "I got to go to Walmart." Curtis Snipes asked, "So you got to go to Alaska Credit Union?" Latrina Bankston said, "Yeah." Curtis Snipes asked, "How long until you get there?" Latrina Bankston said, "About ten, fifteen minutes." Curtis Snipes said, "I'll be there." Based upon my training and experience, and prior intercepted communications between the two, I believe that Curtis Snipes and Latrina Bankston were meeting for the purposes of drug trafficking.

43.     In preparation for the planned transaction between Latrina Bankston and Curtis Snipes, agents conducted physical surveillance in the area of GPS location data for TT39 and located Curtis Snipes, identifying him based off a comparison to his driver's license photograph. Curtis Snipes was observed driving a 2004 silver BMW 530 sedan bearing Washington license plate 887ZOM (Subject Vehicle 1) in the Renton, Washington area. Agents followed Curtis Snipes directly to the Alaska Credit Union, located at 1107 SW Grady Way, Renton, Washington, where he backed into a parking spot. Approximately ten minutes later, a black 2006 Infiniti M35 registered to Latrina

AFFIDAVIT OF SHAWNA MCCANN - 23
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Bankston parked directly next to Curtis Snipes. Latrina Bankston, identified based on a comparison to her driver's license photograph, exited the driver's seat of the black Infiniti carrying a large black bag and got into the front passenger seat of Curtis Snipes's vehicle with the large black bag. About six minutes later, Latrina Bankston exited Curtis Snipes's vehicle carrying the large black bag, opened the front passenger door of her black Infiniti, and appeared to put an item in her vehicle and then shut the door. Latrina Bankston was in between two vehicles at this point, and therefore agents were unable to observe what item she put into her vehicle. Latrina Bankston then proceeded to talk with Curtis Snipes for another 20-30 minutes through his car window. During the time period that she was standing outside Curtis Snipes's vehicle, Latrina Bankston was observed opening her passenger door and leaning in and appearing to go through the large black bag. Latrina Bankston then broke contact with Curtis Snipes and walked into the Alaska Credit Union bank carrying the large black bag, and Curtis Snipes drove off. Based on my training and experience and the above-referenced intercepted communications, I believe the brief interaction between Curtis Snipes and Latrina Bankston was a narcotics transaction, in which Curtis Snipes supplied Latrina Bankston with cocaine.

44.     A few minutes later, Latrina Bankston exited the bank carrying the large black bag, got into the driver's seat of her black Infiniti, and departed the parking lot. Agents conducted physical surveillance on Latrina Bankston, who drove directly to a house in SeaTac, Washington where she pulled into the driveway. Latrina Bankston let herself into the house with a key. A records check of law enforcement databases, including CLEAR, showed that Latrina Bankston was associated with this SeaTac residence in or around 2008, but it was not her listed address in Washington State Department of Licensing records. That night, agents obtained and executed a federal search warrant for the SeaTac, Washington house that Latrina Bankston went to directly after conducting the narcotics transaction with Curtis Snipes. In the SeaTac, Washington house, agents located approximately two to three ounces of cocaine, four firearms, several thousands of dollars in U.S. currency, several pounds of processed marijuana, and

AFFIDAVIT OF SHAWNA MCCANN - 24
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

several marijuana plants/marijuana grow. A man was at the house and appeared to reside there, based on paperwork within the residence as well as a check of Washington State Department of Licensing records, which showed that the man listed that address as his residence. The cocaine was found in a pocket of the man's coat, which he claimed was his jacket. The currency was found in a safe that contained a black purse with some currency and a firearm inside, and a locked hard-shell container that contained the remaining currency.

### b.   *Michael Hopkins*

45.     On October 28, 2020, at approximately 11:30 a.m., Curtis Snipes on TT39 received a text message from Michael Hopkins (identification discussed below) using phone number (206) 920-8517 (TT70), reading, "Should let me baby sit." (Session 161.) Curtis Snipes responded, "Whatever." (Session 165.) Based on my training and experience, the training and experience of other agents I am working with, and a prior investigation into this same gang set, I know that the term "baby" is commonly used by this gang set and drug traffickers to refer to 4.5 ounces of narcotics (about one-eighth of a kilogram), in this context, cocaine. I believe that Michael Hopkins was asking Curtis Snipes to front him 4.5 ounces of cocaine for Michael Hopkins to sell and then repay Curtis Snipes.[7]

46.     On October 28, 2020, at approximately 3:56 p.m., Curtis Snipes using TT39 called Michael Hopkins at TT70. (Session 196.) During this call the following discussion took place:

> TT70: You need to let me baby sit [front him 4.5 ounces of cocaine to sell].
>
> TT39: Oh yeah. I ain't got a problem with it. You know…

---

[7] Based on prior conversations that investigators intercepted between Curtis Snipes and his customers/redistributors, it appears that Curtis Snipes regularly fronts cocaine to his customers/redistributors. For instance, he has discussed going to meet with them in order to collect money from them for narcotics that he had previously provided them. Michael Hopkins's terminology of "babysitting" also indicates to investigators that he expected to receive the cocaine to sell and then pay Curtis Snipes for it at a later time.

AFFIDAVIT OF SHAWNA MCCANN - 25
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

TT70: Yeah. Uh, shit where you at, the city or…?

TT39: Uh, yeah, I'm in the city right now.

TT70: Ok, well shit. I'm in Texas. I gotta go to Mexico [further south], and then shit, I'll be in the city later on, so.[8]

TT70: Oh no, I'm coming right back out that way, so I'll call you when I'm on my way back out that way.

TT70: Ok.

47.     Based on my training and experience, I believe that this is a continuation of the conversation between Curtis Snipes and Michael Hopkins, in which Hopkins asked Curtis Snipes to front him 4.5 ounces of cocaine, and that the parties agreed to talk later to arrange a meeting to conduct the narcotics transaction.

48.     On October 28, 2020, at approximately 7:33 p.m., Curtis Snipes using TT39 called Michael Hopkins using TT70. (Session 222.) During this call, Michael Hopkins said he was in the city, and Curtis Snipes said, "oh shit I brought that with me." Curtis Snipes and Michael Hopkins then agreed to meet at Curtis Snipes's house (**Subject Premises 2**) later that night. Based on my training and experience, I believe that Curtis Snipes told Michael Hopkins that he brought the four and a half ounces of cocaine with him from the city and was driving to his house in Tacoma (**Subject Premises 2**).

49.     Based on this call in which Curtis Snipes indicated he had picked up the 4.5 ounces of cocaine and brought the cocaine with him to **Subject Premises 2**, agents reviewed GPS location data for TT39 to determine the location where Curtis Snipes went to retrieve the cocaine earlier that day. From approximately 5:04 p.m. to 5:49 p.m. earlier that day, GPS location data for TT39 showed that Curtis Snipes was in the vicinity of **Subject Premises 35**. Within minutes of leaving the area of **Subject Premises 35**, at

---

[8] Investigators are unfamiliar with this particular slang but presume that it references Michael Hopkins being south of Curtis Snipes's location and needing to go further south before he could meet up with Curtis Snipes. Michael Hopkins was plainly not in Texas or Mexico, as he met with Curtis Snipes at Curtis Snipes's residence in Tacoma later that day.

AFFIDAVIT OF SHAWNA MCCANN - 26
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

approximately 6:04 p.m., Curtis Snipes called Jamar Howard at TT14[9] and told Jamar Howard that he was going to "pull up on" Jamar Howard. (Session 207.) Based on my training and experience and intercepted communications in this investigation, I know that Jamar Howard is supplied cocaine by Curtis Snipes and is a re-distributor for Curtis Snipes. I believe that Curtis Snipes picked up cocaine from **Subject Premises 35**, which likely serves as a narcotics stash house for Curtis Snipes, and delivered some cocaine to Jamar Howard and then drove back to his primary residence in Tacoma (**Subject Premises 2**) with at least 4.5 ounces of cocaine to front to Michael Hopkins later that evening.

50.     On October 28, 2020, at approximately 9:21 p.m., Curtis Snipes using TT39 called Michael Hopkins at TT70. (Session 223.) During this call the following discussion took place:

TT70: Hello.

TT39: Where you at?

TT70: Uh, shit. On my way. Just leaving the city.

TT39: Huh?

TT70: I'm just leaving the city.

TT39: Alright, I'm waiting on you.

TT70: Ok.

TT39: Alright.

51.     On October 28, 2020, at approximately 10:07 p.m., Michael Hopkins using TT70 called Curtis Snipes at TT39. (Session 224.) During this call Curtis Snipes told

---

[9] Agents obtained a search warrant for GPS location data for TT14, conducted physical surveillance in the area of the GPS location data, and confirmed the user of TT14 was Jamar Howard based on identifying Jamar Howard from his driver's license photograph and seeing him in the same area of the GPS pings for TT14 at multiple different locations and times. Agents then obtained a wiretap order for TT14 and further confirmed the user was Jamar Howard based on communications in which the user of TT14 was identified as "Hoov" and "JHoov," known aliases for Jamar Howard based on confidential source information and Jamar Howard's Facebook, identified based on profile pictures and selfie-style photographs of Jamar Howard, which has several comments posted on the wall referring to Jamar Howard as these aliases.

AFFIDAVIT OF SHAWNA MCCANN - 27
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Michael Hopkins to "come on" and that he was "about to go to bed." Michael Hopkins told Curtis Snipes to give him "three to five minutes." Based on my training and experience, I believe Curtis Snipes told Michael Hopkins that he was at his house about to go to bed and to come to the house to conduct the narcotics transaction for 4.5 ounces of cocaine, and that Michael Hopkins said he would be at Curtis Snipes's house in about three to five minutes. Based on prior physical surveillance, GPS location data for TT39, and a pole camera installed in the vicinity, agents knew that Curtis Snipes resided at **Subject Premises 2** and, around the time of the above-referenced phone calls, GPS location data for TT39 indicated that the phone device was at **Subject Premises 2**.

52.     On October 28, 2020, at approximately 10:12 p.m., Michael Hopkins using TT70 texted Curtis Snipes at TT39, reading "Outside." (Session 225.) Around that same time, via the remote pole camera surveillance, agents observed a tan 1997 Ford F150 bearing Washington license C41266U (**Subject Vehicle 32**) pull into the driveway of **Subject Premises 2**. A male, later identified as Michael Hopkins, exited the truck and was observed making a phone call. Around that time at approximately 10:13 p.m., Curtis Snipes on TT39 received a phone call from Michael Hopkins using TT70. (Session 227.) During the call, Michael Hopkins told Curtis Snipes that he was outside, and Curtis Snipes said "alright." A few seconds later, Michael Hopkins went inside **Subject Premises 2**. About seven minutes later, at approximately 10:20 p.m., Michael Hopkins was observed exiting **Subject Premises 2**, getting into his truck (**Subject Vehicle 32**), and driving off. Agents followed Michael Hopkins driving **Subject Vehicle 32** from **Subject Premises 2**. Michael Hopkins drove directly to a shopping center about ten minutes away. Before Michael Hopkins made any stops or got out of the vehicle, agents conducted a traffic stop on Michael Hopkins as he was entering the shopping center parking lot. Agents conducted a probable cause search of Michael Hopkins and his truck and located approximately 4.5 ounces of cocaine in the front pouch of the sweatshirt that Michael Hopkins was wearing, and a box of ammunition in his truck. He was positively identified as Michael Hopkins from his Washington State driver's license, which he

AFFIDAVIT OF SHAWNA MCCANN - 28
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   provided to agents as identification, and he was released at the scene. Michael Hopkins

2   also provided the number for TT70 to agents as his phone number.

3       53.     That same night after the traffic stop, at approximately 11:00 p.m., Michael

4   Hopkins using TT70 sent a text message to Curtis Snipes at TT39, reading "911."

5   (Session 230.) Michael Hopkins also attempted to call Curtis Snipes who did not answer.

6   (Session 232.) Based on my training and experience, I believe that Michael Hopkins was

7   alerting Curtis Snipes to the fact that police had stopped him shortly after leaving Curtis

8   Snipes's house, **Subject Premises 2**, and had found cocaine on him. At approximately

9   11:42 p.m., via remote pole camera surveillance, agents observed a male on a motorbike

10  pull into the driveway of **Subject Premises 2** and walk up to the door of Curtis Snipes's

11  house; a few seconds later, the male walked inside **Subject Premises 2**. The male was

12  wearing the same clothing as Michael Hopkins was during the traffic stop.[10] The truck

13  that Michael Hopkins was driving when stopped by investigators was registered to him.

14  A search of Washington State Department of Licensing records shows that a motorbike

15  similar in appearance to the one investigators observed parking at **Subject Premises 2**

16  was registered to Michael Hopkins. At approximately 11:59 p.m., the male exited

17  **Subject Premises 2** and drove off on the motorbike. Agents believe that the male was

18  Michael Hopkins, and that he returned to Curtis Snipes's house to tell Curtis Snipes about

19  having just been stopped by law enforcement.

20      54.     About 20 minutes later, on October 29, 2020, at approximately 12:19 a.m.,

21  via remote pole camera surveillance, agents observed Curtis Snipes quickly exit **Subject

22  Premises 2**, as if he were in a hurry, carrying a duffel bag. Curtis Snipes placed the duffel

23  bag in his vehicle and drove off. Based on prior intercepted calls on TT39 discussed

24  above, agents believe that Curtis Snipes was in possession of up to six kilograms of

---

[10] Specifically, Michael Hopkins had been wearing a black baseball hat, blue Seahawks sweatshirt, and blue sweatpants during the stop; the person who met with Curtis Snipes wore similar clothing. Moreover, Michael Hopkins is about 6'2" and weighs approximately 220 pounds, consistent with the person investigators saw entering **Subject Premises 2** after the stop of Michael Hopkins on the night of October 28, 2020.

AFFIDAVIT OF SHAWNA MCCANN - 29
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

cocaine that he was trying to sell/re-distribute to his close circle of trusted associates, including Jamar Howard (TT14) and Michael Hopkins (TT70). (Session 45, discussed above ("I got six of them.").) Agents believe that Curtis Snipes was relocating his supply of cocaine, concealed in the duffel bag, after learning that agents stopped Michael Hopkins almost immediately after Michael Hopkins had left Curtis Snipes's house (**Subject Premises 2**) following their narcotics transaction. Agents monitored GPS location data for TT39 after Curtis Snipes was observed leaving **Subject Premises 2** and noted that the phone device remained at **Subject Premises 2**, indicating that Curtis Snipes left his cell phone behind.

### c. *Terry Ezell*

55.     On October 30, 2020, at approximately 12:07 p.m., Curtis Snipes using TT39 called Terry Ezell (identification discussed below) at phone number (206) 773-7737 (TT69). (Session 258.) During this call the following discussion took place:

TT69: When you get off?

TT39: Uh, 3:30

TT69: Uh, you gonna, you gonna slide through or…

TT39: Yeah. Yep, I hear you. You meet me outside?

TT69: Uh, down by your spot?

TT39: Yeah.

TT69: Uh, yep. Wait, wait wait. Let me look…let me look at the time.

TT39: Huh?

TT69: Uh, I'm looking at the time.

TT39: [unintelligible]

TT69: Yeah imma pull up. I can pull up. What's that 3:30?

TT39: Yeah.

TT69: Ok, alright.

56.     Based on my training and experience, and other intercepted calls of Curtis Snipes, I believe that Terry Ezell and Curtis Snipes agreed to meet up to conduct a drug-

AFFIDAVIT OF SHAWNA MCCANN - 30
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

related transaction. Curtis Snipes and his associates, including his narcotics customers/re-distributors whom he supplies, frequently use the term "slide through" as coded language for a drug-related transactions, including Curtis Snipes dropping off narcotics, picking up narcotics proceeds, or exchanging narcotics for money. I know, from Washington Employment Security records and prior intercepted communications, that Curtis Snipes worked at Darigold in Seattle and got off at work around 3:30 p.m. On October 30, 2020, agents conducted physical surveillance on Curtis Snipes and saw his known vehicle, a silver BMW bearing Washington license plate 887ZOM (Subject Vehicle 1) that Curtis Snipes was seen driving during prior physical surveillance, at Darigold. Accordingly, I believe that Curtis Snipes arranged to meet with Terry Ezell outside of Darigold at 3:30 p.m. when Curtis Snipes got off of work.

57.     On October 30, 2020, at approximately 3:30 p.m., agents observed Curtis Snipes exit the employee door/gate of Darigold and wave at a male in a 2017 Hyundai Elantra sedan bearing Washington license plate BQR7928 (Subject Vehicle 3), registered to Lena Mae Jones at **Subject Premises 34**. Curtis Snipes and the male, later identified as Terry Ezell, exchanged hand signals, indicating that Terry Ezell wanted Curtis Snipes to follow him. Curtis Snipes got into a silver BMW bearing Washington license plate 887ZOM, as the sole occupant, and followed Terry Ezell, who was driving in his own vehicle, to a parking lot around the corner from Darigold. In the parking lot, agents observed Curtis Snipes exit his silver BMW and get into the front passenger seat of Terry Ezell's vehicle and meet with Terry Ezell. About a minute later, agents conducted a vehicle stop on Curtis Snipes and Terry Ezell.

58.     Agents made contact with Curtis Snipes in the front passenger seat of Terry Ezell's vehicle and removed him from that vehicle. Agents conducted a protective sweep/search of Curtis Snipes and the areas of Terry Ezell's vehicle that were within arm's reach of Curtis Snipes, to include the unlocked glove compartment on the front passenger side of Terry Ezell's vehicle. Agents observed a firearm in the glove compartment of Terry Ezell's vehicle, which agents left in place in the vehicle. Agents

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

are aware that both Curtis Snipes and Terry Ezell are felons, including having federal felony convictions, and are prohibited from possessing a firearm. A short time later, on October 30, 2020, agents conducted a full search of Curtis Snipes's person and vehicle pursuant to federal search warrants issued earlier that day (discussed in more detail below). On Curtis Snipes's person, agents located four cell phone devices, including TT39, and $7,746.00 wrapped/rolled in a rubber band. The denominations of bills were consistent with narcotics proceeds; specifically, predominately smaller bills—$20s and $10s—indicative of street level drug transactions/prices. Based on the above referenced call and other intercepted calls where Curtis Snipes has discussed "sliding through" to pick up money and/or drop of narcotics with his associates/re-distributors, investigators believe that the money found on Curtis Snipes was narcotics proceeds and that Curtis Snipes met with Terry Ezell to receive the narcotics proceeds from Terry Ezell.

59.     Agents obtained and executed a search warrant on TT39 and found messages indicating Curtis Snipes kept some cocaine supply in the Seattle area near his work location, as opposed to near his residence in Tacoma, consistent with Snipes using **Subject Premises 35** as a narcotics stash house. For example, on October 22, 2020, in response to text messages from Michael Hopkins asking to get resupplied with narcotics, Curtis Snipes using TT39 texted Michael Hopkins at TT70: "Im at work [at Darigold in Seattle]. Get off at 33o [3:30 p.m.]." Michael Hopkins texted back, "You have to come this way [to Tacoma where Michael Hopkins and Curtis Snipes live]? Heading to the city [Tacoma]." Curtis Snipes said, "No, its [cocaine] on this side [in Seattle]." Michael Hopkins replied, "I'll be over there [Seattle]." I know based on my training and experience, that drug traffickers frequently keep their narcotics and narcotics proceeds in their residences, vehicles, and stash locations in order to protect their supply and to have the narcotics on hand for transactions. I also know that drug traffickers often maintain stash locations in order to avoid having a large quantity of narcotics on their person or in their vehicles at any given time in the event they are stopped by law enforcement or robbed by a rival drug trafficker.

AFFIDAVIT OF SHAWNA MCCANN - 32
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

60.     Agents subsequently obtained a federal search warrant to search Terry Ezell's vehicle and seized the firearm previously seen in the unlocked glove compartment and a cell phone in the center console. Agents obtained a separate search warrant for this cell phone and completed a search of this cell phone, which showed numerous text messages between September 2020 and October 2020 indicative of Terry Ezell participating in drug trafficking activity, including people texting Terry Ezell to meet up, asking if Terry Ezell had the "stuff [narcotics]" and asking for a "40 [unit of narcotics]," discussing making "moves [drug deals]," and Terry Ezell collecting money from people. For example, on September 17, 2020, Terry Ezell sent the following text message to an unknown individual using phone number (360) 660-4190 (referred to as UM4190): "How the f*** are you text me if you left your phone n***** you playing a sick game you don't be here with my mother f****** money like I said N***** I'm going to blow your m********** head off."[11] Approximately 15 minutes later, Terry Ezell texted UM4190: "Why in the f*** aren't you answering your phone bro you playing a sick game." Approximately three minutes later Terry Ezell texted UM4190: "Bro you're twisting the wrong one that's going to be the death of you stop playing bring me my mother f****** money." Approximately 17 minutes later Terry Ezell texted UM4190: "We are going to find you pimp." Based on my training and experience and context of these text messages, I believe that UM4190 is a customer/re-distributor for Terry Ezell who obtained narcotics from Terry Ezell on credit and owed Terry Ezell narcotics proceeds. Also in this cell phone, agents observed the following photograph taken by Terry Ezell on August 19, 2020:

---

[11] Agents have attributed the cell phone found in the center console to Terry Ezell because several of the text messages refer to the user of the phones as "T," one text message refers to "terry," and one text message states: "I Terry ezell give my probation officer Anna Johnson permission to release my criminal history to the sound mental health administration."

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Based on my training and experience, I know that drug traffickers commonly take photographs of their narcotics supply, narcotics proceeds, and/or luxury or status items purchased with narcotics proceeds as a way to show other associates and rivals their drug trafficking status/success and/or to prove to their associates that they have the cash on hand in order to purchase more narcotics or to prove to their suppliers that they have cash to remit.

61.     As set forth above, agents were advised by Terry Ezell's former U.S. Probation Officer that Terry Ezell's reported residence is **Subject Premises 34**. Moreover, agents believe that Terry Ezell is currently associated with **Subject Premises 34** because they have seen the 2017 Hyundai Elantra sedan bearing Washington license plate BQR7928, previously driven by Terry Ezell, parked at **Subject Premises 34** as recently as March 13, 2021.

62.     Accordingly, agents believe Terry Ezell is a narcotics trafficker. I know based on my training and experience, that drug traffickers frequently keep their narcotics and narcotics proceeds in their residences, vehicles, and stash locations in order to protect their supply and to have the narcotics on hand for transactions. I also know that drug traffickers maintain records and other trafficking-related materials in their premises, including residences, for a long period of time, including current and prior cell phone

AFFIDAVIT OF SHAWNA MCCANN - 34
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

devices that contain text messages and contact lists of drug trafficking associates and pay-owe sheets. Accordingly, there is probable cause to believe that Terry Ezell's listed residence with U.S. Probation, **Subject Premises 34** – which Curtis Snipes also lists as his driver's license residence and uses as the contact address for his various assets, including his other properties and vehicles – contains evidence of drug trafficking, possession of a firearm by a prohibited person (felon), money laundering, and the overall conspiracy to commit these crimes.

### 3. October 30, 2020, Search of Subject Premises 2

63.     On October 30, 2020, the Honorable Brian A. Tsuchida, Chief United States Magistrate Judge for the Western District of Washington, signed a search warrant for **Subject Premises 2**, two vehicles associated with Curtis Snipes, an apartment unit associated with Curtis Snipes, and the person of Curtis Snipes. As set forth above, on October 30, 2020, agents executed the search warrant on Curtis Snipes's person by conducting a vehicle stop on Curtis Snipes as he was meeting with Terry Ezell. Later that same day, agents executed the search warrants on Curtis Snipes's two vehicles, **Subject Premises 2**, and an apartment unit associated with Curtis Snipes. In the apartment unit, agents located $10,000 in cash next to a firearm on the side of the bedroom believed to be used by Curtis Snipes.[12]

64.     During the search of **Subject Premises 2**, agents located a firearm, ammunition, digital scales, heat sealer/bags, and suspected narcotic pills. Agents also located the following two paintings in **Subject Premises 2**:

---

[12] An adult female in the apartment unit identified herself as Curtis Snipes's girlfriend and showed agents the side of the bedroom that Curtis Snipes used, including where his clothing was located. This woman stated that Curtis Snipes was the only male who was in the apartment unit and that he stayed overnight occasionally.



Agents believe these pictures demonstrate Curtis Snipes's drug trafficking, use of stash houses to keep his narcotics and narcotics proceeds, and his gang affiliations. More specifically, agents believe the painting on the left depicts a trap house, which is a common reference drug traffickers use to refer to a location to stash narcotics and/or narcotics proceeds or a location from which to sell narcotics. As set forth above, agents believe that Curtis Snipes has multiple stash locations (or "trap" houses), including **Subject Premises 34** and **35.** Agent believe the painting on the right also depicts another trap house with narcotics cusomters lined up outside the front door and a green "$" on the front door; the words "crack house" are written beside the trap house. Based on intercepted calls in this investigation, agents know that "Dirty" and "Dirty Red" – written on top of the painting – are aliases for Curtis Snipes, and the words "21st Hustler" and "E.U.S.H." refers to the East Union Street Hustlers street gang, whose territory and primary location is at 21st Avenue and E Union Street in Seattle.

65.     After conducting a search of **Subject Premises 2**, the two vehicles, the apartment, and his person, agents did not locate the six kilograms of cocaine that Curtis Snipes had discussed on an intercepted communication, which they believe Curtis Snipes relocated from **Subject Premises 2** after the Michael Hopkins traffic stop. However, agents located an open access panel to the attic in the ceiling of the upstairs master

AFFIDAVIT OF SHAWNA MCCANN - 36
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

bathroom of **Subject Premises 2** and a ladder leading up to this attic crawl space. Agents inspected the crawl space and observed that the insulation appeared freshly disturbed with a drag mark consistent with an object, such as a duffel bag, being dragged through the area. Agents believe this attic crawl space area was a likely hiding location for Curtis Snipes's narcotics and/or narcotics proceeds in **Subject Premises 2**, including the six kilograms of cocaine, and that when Curtis Snipes was alerted to law enforcement activity by Michael Hopkins, Curtis Snipes retrieved the narcotics bag from the crawl space and, in his hurry, failed to close the crawl space opening or move the ladder aside.

66.     Around 11:53 p.m., shortly after agents left **Subject Premises 2** on the night of the search warrant execution, agents observed, via remote video surveillance, an Acura bearing Washington license plate BCJ4006, registered to Arika Townsend at 14751 N Kelsey Street, Ste 105, Monroe, Washington, park at **Subject Premises 2**, and two occupants go into **Subject Premises 2**. A review of Washington Department of Licensing records showed that Arika Townsend, the registered owner of this Acura, lists **Subject Premises 35** as her address, in the vicinity of GPS location data for Curtis Snipes's phone (TT39) on October 28, 2020, when investigators believe he picked up cocaine to distribute to Jamar Howard and Michael Hopkins. Accordingly, agents believe that Curtis Snipes's drug trafficking associates are living at Curtis Snipes's stash house, **Subject Premises 35**, and went to **Subject Premises 2** to see what law enforcement had seized during the search. Recently, on March 2, 2021, and March 15, 2021, agents observed the same Acura parked at **Subject Premises 35**, indicating that Curtis Snipes and his drug trafficking associates are still living at and using **Subject Premises 35**.

### 4.     *Curtis Snipes's Continued Use of Subject Premises 2 and Involvement in Drug Trafficking.*

67.     After the search of **Subject Premises 2** on October 30, 2020, agents observed, via remote video surveillance, that Curtis Snipes did not appear to reside at **Subject Premises 2** for several months. However, beginning in January 2021 and continuing to the present, agents observed that Curtis Snipes began returning more

AFFIDAVIT OF SHAWNA MCCANN - 37
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

frequently to **Subject Premises 2** and eventually began staying overnight at **Subject Premises 2** on a regular basis, including as recently as March 2021.

68.     Agents, via remote video surveillance, have observed Curtis Snipes park a vehicle registered to him at **Subject Premises 2**, and his vehicle is consistently parked at **Subject Premises 2** overnight.

69.     On March 16, 2021, at approximately 4:16 p.m., agents observed, via remote video surveillance, a Jeep bearing Washington license plate APW7983 registered to Lionel Hampton, park in the driveway of **Subject Premises 2**. A male, identified as LJ Hampton and believed to be Lionel Hampton's son,[13] exited the Jeep around the same time that Curtis Snipes, identified based on a comparison to his driver's license photograph, exited **Subject Premises 2**. Curtis Snipes stood at the front door and motioned to LJ Hampton. Curtis Snipes quickly went back inside **Subject Premises 2** while LJ Hampton walked across the street and out of the camera view for less than a minute, and then walked back across the street and into **Subject Premises 2** at approximately 4:18 p.m. At approximately 4:28 p.m., agents observed, via remote video surveillance, LJ Hampton exit **Subject Premises 2**, get into the Jeep, and depart.

70.     Between March of 2014 and March of 2016, DEA Seattle intercepted a series of phones used by Lionel Hampton and his co-conspirators. That series of wiretaps revealed that Lionel Hampton was the leader and organizer of an oxycodone distribution ring based in the Tacoma, Washington area. Lionel Hampton obtained large amounts of oxycodone from various sources of supply, primarily located in the Los Angeles, California area, and then redistributed the pills in Western Washington. The Lionel

---

[13] Agents located a public Facebook account of Lionel Hampton under his true name, and observed a family photograph posted on this account of Lionel Hampton and his family; in this photograph agents identified the male whom they viewed on the pole camera footage at **Subject Premises 2**. This male was tagged in the photograph as "LJ Hampton," which was associated with a public Facebook account in the name LJ Hampton. Agents viewed the photographs on LJ Hampton's account, many of which are selfie-style photographs and videos and confirmed that LJ Hampton was the male from the remote video surveillance who visited **Subject Premises 2**. Based on the family photograph and respective ages of Lionel Hampton and LJ Hampton, agents believe LJ Hampton is the son of Lionel Hampton.

AFFIDAVIT OF SHAWNA MCCANN - 38
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Hampton investigation also had a significant and wide-ranging financial investigation into Lionel Hampton's money laundering activities, which primarily involved purchasing residential real estate (sometimes through straw buyers and/or shell companies in the names of other individuals), renovating said properties, and then either leasing out or selling said properties to others. The investigation showed that Lionel Hampton financed at least part of his real estate transactions with drug proceeds, which were often layered through accounts of family members and other trusted associates. Curtis Snipes was listed as a target subject in the applications for interceptions of Lionel Hampton, and Curtis Snipes was intercepted in suspected drug-related conversations with Lionel Hampton. However, Curtis Snipes was not indicted in that case. Numerous interviews of defendants and co-conspirators were conducted at the conclusion of that case. Two of those interviewed provided information regarding the drug trafficking activities and associates of Curtis Snipes. One defendant mentioned that Yusef Parrish was a drug dealer associated with Curtis Snipes.

71. Based on the brief duration of LJ Hampton's visit with Curtis Snipes and Curtis Snipes's prior drug trafficking history with Lionel Hampton, agents believe that this meeting between Curtis Snipes and LJ Hampton may have pertained to drug trafficking activities, indicating that Curtis Snipes continues to use **Subject Premises 2** to facilitate his drug trafficking activities in addition to using suspected narcotics proceeds to pay for the mortgage of **Subject Premises 2** in cash.

72. Because agents have not located the six kilograms of cocaine that Curtis Snipes discussed having on intercepted calls, and because the street value of six kilograms of cocaine is approximately $250,000 to $300,000, agents believe it is unlikely that Curtis Snipes destroyed the cocaine, and that he is therefore still in possession of some of the cocaine and/or narcotics proceeds. Because Curtis Snipes has subsequently returned to **Subject Premises 2** since the search in October 2020, agents believe that Curtis Snipes may have relocated his narcotics supply and/or narcotics proceeds back to **Subject Premises 2**. I know, based on my training and experience, that drug traffickers

AFFIDAVIT OF SHAWNA MCCANN - 39
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

typically return to their normal patterns of drug trafficking, including locations where they store their narcotics and proceeds, after a cooling off period from recent law enforcement activity. Since it has been at least four months since any law enforcement activity affecting Curtis Snipes's immediate drug trafficking network, I believe that Curtis Snipes may have returned to his pattern of drug trafficking and keeping narcotics and narcotics proceeds at **Subject Premises 2**.

73.     I know based on my training and experience, that drug traffickers frequently keep their narcotics and narcotics proceeds in their residences, vehicles, and stash locations in order to protect their supply and to have the narcotics on hand for transactions. I also know that drug traffickers maintain records and other trafficking-related materials in their premises, including residences, for a long period of time, including current and prior cell phone devices that contain text messages and contact lists of drug trafficking associates and pay-owe sheets. Accordingly, there is probable cause to believe that Curtis Snipes's primary residence, **Subject Premises 2**, contains evidence of drug trafficking, firearms trafficking, money laundering, and the overall conspiracy, warranting another search of this residence.

**B.      Terry Ezell's Residences**

74.     As discussed above, based on Washington Department of Licensing records, information obtained from U.S. Probation, and physical surveillance in which agents have seen a vehicle known to be used by Terry Ezell parked at **Subject Premises 34**, agents have identified **Subject Premises 34** as Terry Ezell's residence. Moreover, based on physical surveillance and information obtained from U.S. Probation, agents identified Terry Ezell's secondary residence as 2101 E James Street, Apt. #208, Seattle, Washington (**Subject Premises 52**). As set forth below, agents conducted physical surveillance at **Subject Premises 52** and observed Terry Ezell at this residence. Agents intercepted communications regarding Terry Ezell meeting with Curtis Snipes to conduct drug trafficking activities. This transaction and agents' observations are noted

AFFIDAVIT OF SHAWNA MCCANN - 40
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

below for purposes of further supporting probable cause to search **Subject Premises 34** and establishing probable cause to search **Subject Premises 52**.

75.  As set forth above, agents intercepted communications between Terry Ezell and Curtis Snipes using TT39 in which Curtis Snipes agreed to meet with Terry Ezell on October 30, 2020, for what agents believed was the purpose of resupplying Terry Ezell with narcotics or picking up narcotics proceeds from Terry Ezell. On October 30, 2020, agents conducted a traffic stop on the vehicle in which Curtis Snipes met with Terry Ezell, described in more detail above. During this stop, agents searched Curtis Snipes's person and found, among other indicators of drug trafficking, $7,746.00 in small denominations wrapped/rolled in a rubber band, leading agents to believe that Curtis Snipes met with Terry Ezell to receive the narcotics proceeds from Terry Ezell. Agents subsequently obtained a federal search warrant to search Terry Ezell's vehicle and seized a firearm from the unlocked glove compartment and a cell phone in the center console. As set forth above, agents subsequently searched the cell phone, based on a federal search warrant, and located numerous text messages showing that Terry Ezell was engaged in drug trafficking and had threatened to shoot a drug customer/re-distributor who had not paid what he owed Terry Ezell. Agents also located a photograph on Terry Ezell's cell phone showing a hand holding a large sum of money bundled with rubber bands in a manner consistent with narcotics trafficking activity and similar to the money found on Curtis Snipes's person.

76.  Terry Ezell has federal felony convictions for felon in possession of a firearm and possession of cocaine base with intent to distribute. Terry Ezell is currently on federal probation after completing his period of incarceration for those federal felony convictions. Accordingly, Terry Ezell is prohibited from possessing a firearm. Terry Ezell has state felony convictions for assault, burglary, theft, possession of stolen property, and bail jumping.

77.  On March 15, 2021, agents spoke with Terry Ezell's current and former U.S. Probation Officers. Agents were advised that while Terry Ezell's listed residence

AFFIDAVIT OF SHAWNA MCCANN - 41
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

with probation is **Subject Premises 34**, during the last few virtual home visits, including the most recent virtual visit on February 12, 2021, Terry Ezell was at **Subject Premises 52**. Terry Ezell advised U.S. Probation that **Subject Premises 52** was the residence of his girlfriend Josie Brown.

78.     Agents conducted law enforcement database checks on **Subject Premises 52** and Josie Brown and located a Seattle Police Department incident report from January 7, 2021. In this incident report, a male who stated he was the father of Josie Brown's children reported that Josie Brown was with her current boyfriend, who is known as "T." The reporting party told officers that Josie Brown had been sitting in the front seat of a car that "T" was driving, and that "T" got out of the car and attempted to instigate a confrontation with the reporting party outside of the reporting party's residence. The reporting party saw that "T" had a pistol in his hand and was pointing it at the reporting party. The reporting party immediately went inside the reporting party's apartment building. "T" walked to the door, brandishing the pistol and challenging the reporting party to come outside. The reporting party stayed inside his apartment and called 911. The reporting party stated that "T" went back to his car, and "T" and Josie Brown drove away. The reporting party also stated that "T" had threatened him with a pistol on January 1, 2021. The reporting party stated that "T" is living with Josie Brown at **Subject Premises 52**. Responding officers interviewed Josie Brown at **Subject Premises 52** regarding the incident, but she refused to provide her boyfriend "T's" full name to officers.

79.     The responding officers were able to obtain apartment building security camera footage of the January 7, 2021, incident. Agents have also obtained and reviewed a copy of this surveillance footage, which provides a close up and very clear view of the events described below. The footage shows the reporting party running into the building, followed by a male holding and brandishing a firearm in his right hand in a threatening

AFFIDAVIT OF SHAWNA MCCANN - 42
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

manner. The male with the firearm (referred to as "T")[14] is wearing a mask that covers his mouth, but agents have identified him as Terry Ezell, based on a comparison to his driver's license photograph. The firearm was a medium framed, semi-automatic pistol, with a black frame and silver/gray colored slide. Additionally, this incident occurred after agents had seized a firearm from Terry Ezell's vehicle on October 30, 2020, indicating that Terry Ezell continues to carry firearms while on federal probation and that he has stayed at **Subject Premises 52** since at least January 2021.

80.     On March 16, 2021, at approximately 5:15 p.m., agents observed Terry Ezell, identified based on a comparison to his driver's license photograph, exit the apartment building for **Subject Premises 52** and walk into the parking lot area.[15] Terry Ezell remained outside for a short period of time and then went back inside the apartment building for **Subject Premises 52**.

81.     I know based on my training and experience, that drug traffickers frequently keep their narcotics, narcotics proceeds, and firearms in their residences, vehicles, and stash locations in order to protect their supply and to have the narcotics on hand for transactions. I also know that drug traffickers maintain records and other trafficking-related materials in their premises, including residences, for a long period of time, including current and prior cell phone devices that contain text messages and contact lists of drug trafficking associates and pay-owe sheets. Based on the above-referenced intercepted communications, I believe that Terry Ezell is cocaine redistributor working for Curtis Snipes who likely keeps his narcotics supply, proceeds, and firearms in **Subject Premises 52**.

---

[14] As set forth above, during the search of Terry Ezell's cell phone, agents located text messages referring to Terry Ezell as "T."

[15] As set forth in Attachment A4, **Subject Premises 52** is an apartment unit within a larger multi-unit apartment complex. The apartment complex has an exterior entry door used by several of the apartment units, each of which have interior access doors, such that agents are unable to see the interior door of **Subject Premises 52** during physical surveillance and are only able to observe the exterior door to the apartment building.

AFFIDAVIT OF SHAWNA MCCANN - 43
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## C. Michael Hopkins's Residence and Vehicle

82.     During this investigation, based on physical surveillance and GPS location data for Michael Hopkins's cell phone (TT70),[16] agents identified Michael Hopkins's residence as 615 East 49th Street, Tacoma, Washington (**Subject Premises 36**). Specifically, agents obtained GPS location data on Michael Hopkins's cell phone, TT70, which showed that Michael Hopkins remained at **Subject Premises 36** overnights from March 7, 2021, to the present. As set forth below, agents conducted physical surveillance at **Subject Premises 36** and observed Michael Hopkins at this residence. Based on the cocaine transactions between Curtis Snipes and Michael Hopkins and subsequent traffic stop on Michael Hopkins, agents knew that Michael Hopkins drives a 1997 Ford F150 bearing Washington license C41266U registered to Michael L. Hopkins at **Subject Premises 36** (**Subject Vehicle 32**). Agents intercepted communications regarding Michael Hopkins conducting a cocaine transaction with Curtis Snipes. This drug transaction and agents' observations are noted below for purposes of establishing probable cause to search **Subject Premises 36** and **Subject Vehicle 32**.

83.     Michael Hopkins has a felony conviction for drug possession.[17]

84.     As set forth above, agents intercepted communications between Michael Hopkins using TT70 and Curtis Snipes using TT39 in which Curtis Snipes agreed to supply Michael Hopkins with four and a half ounces of cocaine. On October 28, 2020, agents conducted a vehicle stop on Michael Hopkins driving **Subject Vehicle 32** after he left Curtis Snipes's residence (**Subject Premises 2**) and seized approximately four and a half ounces of cocaine from Michael Hopkins's person.

---

[16] As discussed above, Michael Hopkins was identified as the user of TT70 based on intercepted communications between TT70 and Curtis Snipes using TT39, and the subsequent traffic stop in which Michael Hopkins was contacted and identified by law enforcement.

[17] The Washington Supreme Court has recently held that Washington's state law prohibiting mere possession of controlled substances is unconstitutional.

AFFIDAVIT OF SHAWNA MCCANN - 44
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

85.     Agents also obtained a separate search warrant and conducted a search of Curtis Snipes's cell phone, TT39, that was seized during a traffic stop of Curtis Snipes and Terry Ezell (discussed above). The contents of Curtis Snipes's cell phone showed that Michael Hopkins was routinely supplied several ounces of cocaine by Curtis Snipes. For example, on October 17, 2020, less than two weeks before the traffic stop, Michael Hopkins using TT70 texted Curtis Snipes at TT39: "Nothing else put me up 3 babies [three quantities of 4.5 ounces of cocaine] need it I'll get them." Curtis Snipes replied, "I got u." Based on my training and experience, and my experience in this investigation, I know that the term "baby" is a common reference used by drug traffickers, particularly the Michael Walker DTO, to refer to 4.5 ounces of cocaine. Accordingly, I believe that Michael Hopkins asked Curtis Snipes for three quantities of four and a half ounces of cocaine.

86.     Agents found additional evidence of Michael Hopkins's drug trafficking in other known Michael Walker DTO associates' cell phones. As set forth below, agents conducted a search of Yusef Parrish's residence on November 21, 2020, and seized cocaine, firearms, currency, and seven cell phones. Agents obtained a separate search warrant for Yusef Parrish's cell phone devices. On one of Yusef Parrish's cell phone devices (evidence item 1B202), Yusef Parrish exchanged several text messages with the phone number (206) 920-8517 (TT70). Yusef Parrish did not have this number saved in his contacts but, as set forth above, agents determined that TT70 was being used by Michael Hopkins and the text messages referenced below are consistent with Michael Hopkin's intercepted communications. Some of the text messages between Yusef Parrish and TT70 indicate that Michael Hopkins may have been involved in drug trafficking with the Michael Walker DTO since at least 2017:

Parrish: Phone fuck up text me about 2 get on [resupplied with narcotics]. [dated 10/1/2014]

…

TT70: Grabing the money [for narcotics]. [dated 8/15/2017]

AFFIDAVIT OF SHAWNA MCCANN - 45
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    TT70: Ready.

2    TT70: Need the whole thing [unit of narcotics].

3    TT70: Turning around by 320th bring money.

4    Yusef Parrish's search cell phone also showed in the Call Log section that between 2014

5    and 2017, Yusef Parrish and TT70 were in frequent communication.

6        87.    On February 17, 2021, at approximately 7:00 p.m., agents conducted

7    physical surveillance on **Subject Premises 36**. Agents observed **Subject Vehicle 32**

8    parked in the driveway of **Subject Premises 36**. Agents stayed on physical surveillance

9    at the location for several hours. No one was observed coming or going from that

10    residence during that time. Based on current GPS location data for Michael Hopkins's

11    cell phone, TT70, showing that the device stays overnight at **Subject Premises 36**, and

12    his known vehicle being observed at **Subject Premises 36**, agents believe Michael

13    Hopkins is residing at **Subject Premises 36**.

14        88.    On March 9, 2021, at approximately 11:42 a.m., agents observed **Subject**

15    **Vehicle 32** parked in the driveway unoccupied at **Subject Premises 36**. GPS location

16    data for TT70 placed the device at **Subject Premises 36**. **Subject Premises 36** is located

17    at the end of a short dead-end road and there was no location for agents to conduct

18    surveillance where the front door could be seen, so agents parked just east of the entrance

19    to the dead-end street and maintained a view of the end of **Subject Premises 36**'s

20    driveway and the cul-de-sac. At approximately 1:01 p.m., agents observed **Subject**

21    **Vehicle 32** backing out of the driveway of **Subject Premises 36**. **Subject Vehicle 32**

22    exited the dead end and drove past agents, who observed the driver of **Subject**

23    **Vehicle 32** to be Michael Hopkins, identified based on a comparison to his driver's

24    license photograph as well as agents' previous in-person contact with Michael Hopkins

25    during the October 28, 2020, traffic stop. Agents maintained surveillance of Michael

26    Hopkins as he travelled southbound on E McKinley Avenue. At approximately 1:07 p.m.,

27    GPS location data for TT70 showed the device was traveling with Michael Hopkins.

28

AFFIDAVIT OF SHAWNA MCCANN - 46
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Accordingly, agents believe that Michael Hopkins is residing at **Subject Premises 36** and continues to possess and use TT70.

89.     Agents obtained Pen Register and Trap and Trace data for TT70, which showed that Michael Hopkins using TT70 was in contact with Kenny Russell using phone number (206) 799-5695[18] a total of 51 times from March 9, 2021, to March 23, 2021. Based on confidential source information, including from CS6,[19] agents know that Kenny Russell aka "Ken Crime" traffics narcotics with Curtis Snipes and Jamar Howard. Accordingly, I believe that Michael Hopkins continues to communicate with DTO associates connected with Curtis Snipes and Jamar Howard, including Kenny Russell.

90.     I know based on my training and experience, that drug traffickers frequently keep their narcotics and narcotics proceeds in their residences, vehicles, and stash locations in order to protect their supply and to have the narcotics on hand for transactions. I also know that drug traffickers maintain records and other trafficking-related materials in their premises, including residences, for a long period of time, including current and prior cell phone devices that contain text messages and contact lists of drug trafficking associates and pay-owe sheets. Based on the above-referenced intercepted communications, I believe that Michael Hopkins is a multi-ounce cocaine redistributor working for Curtis Snipes, who likely keeps his narcotics supply and

---

[18] Agents believe this phone number is used by Kenny Russell based on a CLEAR database check showing that the current subscriber of this phone number is a business operated by Kenny Russell. Additionally, a Seattle Police Department incident report from December 29, 2014 involving a suspicious circumstances report, involving both Michael Hopkins and Kenny Russell as subjects of the incident, listed Kenny Russell's contact number as (206) 799-5695.

[19] CS6 has been a confidential source with SPD since fall of 2007. CS6 was a confidential source for the FBI from summer of 2014 to spring of 2015. CS6 was not closed for cause by the FBI, and CS6's FBI handler recommended CS6's reopening in the future. CS6 has provided credible and reliable information in the past on other narcotics, firearms, and gang investigations, which has been corroborated by physical surveillance and independent source reporting. CS6 has gross misdemeanor or misdemeanor convictions, all more than six years ago, for criminal trespass, criminal impersonation, drug possession solicitation (providing false information on a prescription), driving with suspended license, and violation of the uniform controlled substances act. CS6 is a paid informant and is not working off a charge. The identity of CS6 is not being disclosed in this Application. I believe that doing so could place CS6's safety and security in jeopardy and compromise this and other ongoing investigations in which CS6 is involved and is being utilized.

AFFIDAVIT OF SHAWNA MCCANN - 47
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  proceeds in **Subject Premises 36** and uses **Subject Vehicle 32** to conduct narcotics
2  transactions.

3      **D.    Wayne Dubois's Residence and Vehicle**

4      91.     During this investigation, based on the physical surveillance and
5  intercepted communications described below, agents identified Wayne Dubois's
6  residence as 2102 Martin Luther King Jr. Way, Tacoma, Washington (**Subject Premises
7  37**), and his vehicle as a red 2012 Chevrolet Silverado bearing Washington license plate
8  C95611N, registered to Wayne R. Dubois at 2300 S Massachusetts Street, Apt. 213,
9  Seattle, Washington[20] (**Subject Vehicle 33**). Agents obtained GPS location data on
10 Wayne Dubois's cell phone, TT73 (identification discussed below), which showed that
11 Wayne Dubois remained at **Subject Premises 37** overnights from March 5, 2021, to the
12 present. Agents intercepted communications regarding Wayne Dubois conducting
13 cocaine transactions as a redistributor for Curtis Snipes. Some of these drug transactions
14 and agents' observations are noted below for purposes of establishing probable cause to
15 search **Subject Premises 37** and **Subject Vehicle 33**.

16     92.     Wayne Dubois has felony convictions for soliciting drug possession with
17 intent to manufacture/deliver, attempted drug possession with intent to
18 manufacture/deliver, unlawful possession of a firearm, drug possession, and assault.

19     93.     On October 28, 2020, agents intercepted a series of communications
20 between Curtis Snipes using TT39 and Wayne Dubois using phone number (206) 483-
21 4530 (TT73). During a text exchange between Curtis Snipes and Wayne Dubois, Curtis
22 Snipes asked if Wayne Dubois was "working" [distributing narcotics], to which Wayne
23 Dubois later replied that he was. (Session 157.) Later that day, Wayne Dubois using
24 TT73 texted Curtis Snipes at TT39: "hit [call] me." (Session 214.) Shortly thereafter,
25 Curtis Snipes using TT39 called Wayne Dubois at TT73. (Session 216.) During the call,

26

27 ───────────────
[20] This address is listed on Wayne Dubois's driver's license as his residence. Agents have not observed Wayne
28 Dubois at this residence during prior physical surveillance.

AFFIDAVIT OF SHAWNA MCCANN - 48
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Wayne Dubois asked Curtis Snipes if he was "home." Curtis Snipes confirmed and stated that he could meet Wayne Dubois in 20 to 30 minutes if "he [Wayne Dubois] wanted to drop it [drug proceeds] off." Based on my training and experience and discussions with other experienced narcotics officers and agents regarding the above intercepted communications, I believe that Wayne Dubois conducted drug trafficking communications with Curtis Snipes. I believe that when Curtis Snipes texted Wayne Dubois asking if he was working or not, Curtis Snipes was asking Wayne Dubois if he was conducting drug trafficking activities. I believe that when Wayne Dubois texted Curtis Snipes to "hit me," Wayne Dubois was out of narcotics and was asking Curtis Snipes to re-supply him with narcotics.

94.     About 40 minutes later, at approximately 7:19 p.m., Wayne Dubois using TT73 called Curtis Snipes at TT39. (Session 219.) During the call, Wayne Dubois asked Curtis Snipes if he was "here," which Curtis Snipes confirmed. Wayne Dubois then asked Curtis Snipes to "open the door," which Curtis Snipes acknowledged. At approximately 7:22 p.m., agents arrived at Curtis Snipes's residence in Tacoma, Washington (**Subject Premises 2**) and observed a red Chevrolet Silverado bearing Washington license plate C95611N (**Subject Vehicle 33**) and registered to "Wayne R. Dubois" parked at Curtis Snipes's residence. At approximately 7:27 p.m., agents observed **Subject Vehicle 33** depart Curtis Snipes's residence and eventually park at the intersection of 21st Avenue South and Martin Luther King Jr. Way in Seattle, which is the closest intersection to **Subject Premises 37**. The driver of the red Silverado exited the truck and went into the house on the southwest corner of that intersection, which is **Subject Premises 37**. The driver matched the physical description of Wayne Dubois based on his driver's license information.

95.     As stated above, Curtis Snipes is an identified multi-kilogram cocaine source of supply. Furthermore, as described below, on November 2, 2020, the Honorable Mary Alice Theiler, United States Magistrate Judge for the Western District of Washington, signed a search warrant for Curtis Snipes's phone, TT39, which had been

AFFIDAVIT OF SHAWNA MCCANN - 49
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

seized during a traffic stop of Curtis Snipes while he met with Terry Ezell. During the search of TT39, agents discovered additional SMS text messages between Wayne Dubois using TT73 and Curtis Snipes using TT39, which shared a similar pattern to the above session content, including brief exchanges of "Hit me," "wya," "where u want me to come?" "come thru when you can," "Did u want me to pull up," "outside," and "Ready" to arrange meetings between them. Based on my training and experience, this pattern is indicative of Wayne Dubois redistributing narcotics for Curtis Snipes and needing to meet Curtis Snipes on a regular basis to get resupplied with narcotics and/or to drop off narcotics proceeds. These brief exchanges without needing to discuss specific quantities and prices of narcotics further shows that Curtis Snipes and Wayne Dubois have a long-term drug trafficking relationship and course of dealing, such that they do not need to discuss specifics over the phone or by text message.

96.     On February 17, 2021, at approximately 6:45 p.m., agents observed **Subject Vehicle 33** parked on the street in front of **Subject Premises 37**. At approximately 7:18 p.m., agents observed Wayne Dubois (identified by comparison to his driver's license photograph) exit **Subject Premises 37** with what appeared to be two hard rifle cases. Agents observed Wayne Dubois put the rifle cases in the passenger compartment of **Subject Vehicle 33** and then drive off in **Subject Vehicle 33**. Agents followed Wayne Dubois to an apartment building at 168 Norpoint Way NE, Tacoma, Washington, where he pulled into the small parking lot for a few minutes, where he could not be seen by agents following him. Wayne Dubois then left the parking lot driving alone in **Subject Vehicle 33**. Agents followed Wayne Dubois directly back to **Subject Premises 37**, where Wayne Dubois got out of **Subject Vehicle 33** without the rifle cases and went back into his residence. A few minutes later, agents observed Wayne Dubois exit **Subject Premises 37** and walk two dogs in the general area before returning home. Agents have reviewed Wayne Dubois's criminal history, which shows that he has six state felony convictions related to drug possession with intent to distribute, unlawful firearms possession, and assault, which preclude him from possessing firearms.

AFFIDAVIT OF SHAWNA MCCANN - 50
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

97.     After reviewing Pen Register and Trap and Trace data for TT73, agents believe that Dubois continues to communicate with Curtis Snipes. This data shows that Wayne Dubois exchanged 39 communications with phone number (206) 335-7746 over the span of nine days week, from March 12, 2021, to March 21, 2021. Agents are familiar with (206) 335-7746 as a long-term phone number used by Curtis Snipes. For example, a Tacoma Police Department incident report dated May 6, 2013, listed this phone number as the contact number for Curtis Snipes when he was arrested and booked into Fife City Jail for Domestic Violence Criminal Assault. Moreover, when agents searched the apartment unit associated with Curtis Snipes on October 30, 2021, the adult female living in the apartment identified herself as Curtis Snipes's girlfriend and provided (206) 335-7746 as the number at which she contacted Curtis Snipes.

98.     On March 24, 2021, at approximately 8:13 a.m., GPS location data for TT73 showed that Wayne Dubois was at a construction site at S 228th Street and 6th Avenue N in Kent, Washington. Agents arrived at this location and observed Wayne Dubois, identified based on a comparison to his driver's license photograph, at this construction site. At approximately 9:14 a.m., agents observed Wayne Dubois take off his work glove and use his cell phone; around that same time, Pen Register and Trap and Trace data for TT73 showed that TT73 was being used, confirming that Wayne Dubois is the user of TT73.

99.     I know based on my training and experience, that drug traffickers frequently keep their narcotics, narcotics proceeds, and firearms in their residences, vehicles, and stash locations in order to protect their supply and to have the narcotics on hand for transactions. I also know that drug traffickers maintain records and other trafficking-related materials in their premises, including residences, for a long period of time, including current and prior cell phone devices that contain text messages and contact lists of drug trafficking associates and pay-owe sheets. Based on the above-referenced intercepted communications, I believe that Wayne Dubois is a cocaine redistributor working for Curtis Snipes and that Wayne Dubois likely keeps his narcotics

AFFIDAVIT OF SHAWNA MCCANN - 51
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   supply and proceeds, and firearms that he is prohibited from possessing, in **Subject**

2   **Premises 37** and uses **Subject Vehicle 33** to conduct narcotics transactions.

3   **E.    Jamar Howard's Residence**

4        100.    During this investigation, agents identified Jamar Howard's residence as

5   2909 Mill Avenue S, Renton, Washington (**Subject Premises 10**). From August 2020 to

6   October 2020, GPS location data on Jamar Howard's cell phone (TT14)[21] showed that

7   Jamar Howard remained at **Subject Premises 10** overnights. Agents then obtained a

8   court-authorized wire and electronic communications interception on TT14 used by

9   Jamar Howard and, during the period of wire and electronic communications

10  interception, agents observed Jamar Howard conducting multiple cocaine transactions on

11  a daily to weekly basis, including at **Subject Premises 10**. Agents then obtained and

12  executed a search warrant on **Subject Premises 10**, where they found over $3,000 in

13  cash, six cell phones, and a firearm and various ammunition, but not the quantities of

14  narcotics expected. Agents believe that Jamar Howard had moved his narcotics and

15  proceeds before they arrived, likely in response to then-recent law enforcement contact

16  with other members of the Michael Walker DTO. Based on recent physical surveillance

17  and a search of Jamar Howard's cell phones, however, agents believe that Jamar Howard

18  continues to reside at **Subject Premises 10** and continues to traffic in narcotics.

19       101.    Jamar Howard has a criminal history that includes a felony for drug

20  possession.

21       *1.    Howard's Drug Trafficking Prior to Search of Subject Premises 10*

22       102.    During the period of wire and electronic communications interception,

23  agents observed Jamar Howard conducting multiple cocaine transactions on a daily to

24  weekly basis, including at **Subject Premises 10**. On July 25, 2020, at approximately

25

26  _____

27  [21] As set forth above, agents obtained a search warrant for GPS location data for TT14 and identified Jamar Howard
    as its user based on physical surveillance observing Jamar Howard in the vicinity of the GPS pings on multiple
28  occasions at multiple locations.

AFFIDAVIT OF SHAWNA MCCANN - 52
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

10:02 a.m., investigators intercepted a phone conversation between Kevin Gipson using TT6[22] and TT14 used by Jamar Howard (Session 2539). During the call Kevin Gipson asked Jamar Howard if he had some "seezie," which investigators believe is a code word for soft or powder cocaine. Jamar Howard told Kevin Gipson that he would have that [the "seezie"] at about 2:00 p.m. Kevin Gipson then asked Jamar Howard for "halftime hard," which investigators believe is code for a half ounce (halftime) of crack cocaine (hard). Jamar Howard agreed to meet with Kevin Gipson. Investigators believed Jamar Howard was going to deliver a half ounce of crack cocaine to Kevin Gipson at Kevin Gipson's apartment, known to be located at 4727 Beacon Ave S, Apt. 9, Seattle, Washington from prior physical and video surveillance and GPS tracking on TT6. At approximately 11:57 a.m., investigators intercepted a phone conversation between Kevin Gipson using TT6 and Jamar Howard. (Session 2561.) During the conversation, Jamar Howard told Kevin Gipson that he was leaving his house in 5 minutes. At approximately 12:41 p.m., agents observed a black 2008 Chevrolet Tahoe bearing Washington state license plate number AXG7409 (Subject Vehicle 12) and registered to "Jamar J. Howard" at **Subject Premises 10** pull up and park in the median in front of 4727 Beacon Avenue South. A tall, skinny, male got out of the driver's seat and went upstairs towards Kevin Gipson's apartment. Two minutes later, at approximately 12:43 p.m., the same tall, skinny, male exited the area near Kevin Gipson's apartment. The male got back into the Tahoe, backed out, and drove out of the area. Agents positively identified the driver of the Tahoe as Jamar Howard based off a comparison to his driver's license photograph as well as a comparison to a photograph of Jamar Howard on social media, specifically a Facebook account with the user name "Jay Howard."

---

[22] Agents obtained a search warrant for GPS location data for TT6, conducted physical surveillance in the area of the GPS location data, and confirmed the user of TT6 was Kevin Gipson based on identifying Kevin Gipson from his driver's license photograph and seeing him in the same area of the GPS pings for TT6 at multiple different locations and times. Agents then obtained a wiretap order for TT6 and further confirmed the user was Kevin Gipson based on communications in which the user of TT6 was identified as "KG" and "Mr. Gipson."

AFFIDAVIT OF SHAWNA MCCANN - 53
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

103.    On August 7, 2020, at approximately 7:44 p.m., Kevin Gipson using TT6 called Jamar Howard at TT14. (Session 4327). GPS location for TT14 at the time indicated that Jamar Howard was in the vicinity of the Southcenter Mall in the south Seattle area. Jamar Howard told Kevin Gipson that he just touched back down and was going to run to his house, get in the kitchen, and then head out in about 45. Investigators believe Jamar Howard was telling Kevin Gipson that Jamar Howard was just resupplied with cocaine (touched back down), was going to cook up the cocaine into crack form (get in the kitchen), and then be ready to sell the cocaine to Kevin Gipson in 45 minutes. Kevin Gipson then asked for the whole one hard, which investigators believe was referencing one ounce of crack cocaine. Jamar Howard agreed and said he was getting it together. At approximately 7:55 p.m., GPS location data for TT14 indicated the phone was in the vicinity of Jamar Howard's residence, **Subject Premises 10**. At approximately 8:11 p.m., investigators drove by **Subject Premises 10** and observed both of Jamar Howard's known vehicles, which prior physical surveillance had observed him driving on several occasions in conjunction with drug trafficking activities, parked at his residence: a black 2008 Chevrolet Tahoe (Subject Vehicle 12) and a blue 2012 Chevrolet Camaro (Subject Vehicle 11).[23]

104.    At approximately 10:40 p.m., GPS location data for TT14 indicated the phone had left Jamar Howard's residence and was travelling northbound towards Kevin Gipson's apartment. At approximately 10:48 p.m., investigators observed Jamar Howard, driving the blue 2012 Chevrolet Camaro (Subject Vehicle 11), park in front of Kevin Gipson's apartment complex. At approximately 10:49 p.m., GPS location data for TT14 indicated the phone was at, or in front of, Kevin Gipson's apartment complex. At approximately 10:49 p.m., investigators observed Jamar Howard exit the blue Camaro

---

[23] Investigators also observed a Dodge Magnum bearing Washington license plate BKU2983 parked at Jamar Howard's residence, which a records check showed was registered to Curtis G. Snipes at 310 25th Avenue, Seattle, Washington (**Subject Premises 34**). Based on this investigation, investigators believe Curtis Snipes is one of Jamar Howard's cocaine suppliers.

AFFIDAVIT OF SHAWNA MCCANN - 54
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

and walk up the stairs to Kevin Gipson's apartment. At approximately 10:52 p.m., investigators observed Jamar Howard walk down the stairs from Kevin Gipson's apartment, get into the Camaro, and depart the area. Investigators believe that Jamar Howard went to Kevin Gipson's apartment to deliver crack cocaine per the arranged cocaine transaction discussed on the above-referenced call. Moreover, it appeared that Jamar Howard left **Subject Premises 10** and went directly to Kevin Gipson's apartment for the cocaine transaction, indicating that Jamar Howard kept some of his supply of cocaine—and cooked powder cocaine into crack cocaine—at **Subject Premises 10**.

105.    On September 5, 2020, at approximately 7:06 p.m., Curtis Snipes using TT39 called Jamar Howard at TT14. (Session 478.) During this call the following discussion took place:

> TT39: Oh yeah. I need you, you know what I'm saying. I don't know what it is, but your equipment, your equipment (laughs) it's what I need, you know what I mean?
>
> TT14: C'mon man.
>
> TT39: Hey, hey look, hey it always comes out better [powder cocaine cooks up to crack cocaine better with Jamar Howard's equipment].
>
> TT14: Where you at?
>
> TT39: I'm in Tacoma, but I'm heading that way man.
>
> TT14: Oh, ok.
>
> TT39: Yeah.
>
> TT14: It's all good. I'll be there.
>
> TT39: Alright.

106.    Based upon my training and experience, I believe that Curtis Snipes using TT39 was arranging to meet Jamar Howard at Jamar Howard's house (**Subject Premises 10**) so that Curtis Snipes could use Jamar Howard's equipment/process to cook up powder cocaine into crack cocaine for sale. I believe, based on the context of the conversation—that Curtis Snipes appears to already know where Jamar Howard lives and

1  knows about Jamar Howard's equipment/process to cook powder cocaine into crack
2  cocaine—that Curtis Snipes and Jamar Howard have a long-standing narcotics trafficking
3  relationship, such that they can use and understand coded language and brief
4  conversations to conceal their narcotics trafficking activities.

5      107.   On September 7, 2020, at approximately 9:48 p.m., Jamar Howard using
6  TT14 made a phone call to Curtis Snipes at TT39. (Session 866.) During the call the
7  following discussion took place:

8      TT39: Hello?

9      TT14: What's up with you brodie.

10     TT39: [unintelligible]

11     TT14: Aww shit nothing. Just gonna tell you to slide through [come by] when you
12     come around [the area]. I got some change [money] for one [unit of cocaine].

13     TT39: Alright.

14     108.   Based upon my training and experience, I believe that Jamar Howard was
15  asking Curtis Snipes to come to his house (**Subject Premises 10)** because Jamar Howard
16  had money to purchase narcotics from Curtis Snipes. I know that drug traffickers
17  frequently use numbers, such as "one," to refer to a quantity/unit of a narcotic—in this
18  context and between these parties, cocaine. It is clear that Jamar Howard and Curtis
19  Snipes are familiar with what amount of narcotics "one" signifies because there was no
20  further discussion or clarification and the phone call ended.

21     109.   On September 11, 2020, at approximately 6:20 p.m., Curtis Snipes using
22  TT39 sent a text message to Jamar Howard at TT14 that read: "Wya." (Session 2130.)
23  Based on my training and experience, and the subsequent call discussed below, I believe
24  that Curtis Snipes texted Jamar Howard to ask where Jamar Howard was at for the
25  purpose of discussing narcotics activity. About 25 minutes later, on September 11, 2020,
26  at approximately 6:46 p.m., Curtis Snipes using TT39 called Jamar Howard at TT14.
27  (Session 2134.) During the call the following discussion took place:

28     TT14: What's up with you brodie?

AFFIDAVIT OF SHAWNA MCCANN - 56
USAO #2019R01083

1    TT39: Anybody hits [calls] you [for narcotics], we a man down [out of narcotics].

2    TT14: Oh ok, ok.

3    TT39: Mmm hmm.

4    TT14: And I just got hit [called] too [for a narcotics deal].

5    TT39: Yeah they uh uh…

6    TT14: Yeah.

7    TT39: They uh, uh, um. They doin that. Uh um.

8    TT14: Tryin to put it together [find narcotics].

9    TT39: I can only. Remember I told you about, the handout [front of narcotics]?

10   TT14: Yeah, yeah, yeah.

11   TT39: If I lose one of em, I'm in the uh, you know what I'm sayin?

12   TT14: Yeah, yeah.

13   TT39: I can only afford [to supply] you, you know?

14   TT14: Yeah dog, I know, I, I know exactly what you're talkin about so when I got

15   the call I was like oh, ok.

16   TT39: Yeah I just told them, I was like nah, I didn't know it was going to be that.

17   TT14: Yeah, yeah, yeah, yeah, I didn't know it was going to be that, yes sir, c'mon

18   man.

19   TT39: Know what I'm sayin? [unintelligible]

20   TT14: Where you at?

21   TT39: Um, leavin by your spot.

22   TT14: Oh, ok, ok. I'm bout to, uhh. I got a little cheet-yange [money, a play on

23   "change"].

24   TT39: Yeah I'll show [unintelligible].

25   TT14: Ok.

26   TT39: Alright bro I got you.

27   TT14: Alright.

28   TT39: Alright.

110.    Based on my training and experience, I believe that "we a man down" means that Curtis Snipes was currently unable to supply narcotics to Jamar Howard. Jamar Howard's response that he "just got hit too" means that someone had recently contacted Jamar Howard to purchase narcotics.[24] I believe that Curtis Snipes's reference to "the handout" meant that he provided narcotics to someone but had not been paid back yet (*i.e.*, fronted the narcotics to someone who did not pay for the narcotics at the time of the deal). I believe the remainder of the conversation was a discussion about how Curtis Snipes was short on money and could only afford to supply Jamar Howard. I believe Jamar Howard's statement that he had "chee-yange" (slang for change) and Curtis Snipes's response that he would take care of Jamar Howard meant that Jamar Howard had the money to purchase a quantity of narcotics and that Curtis Snipes would supply him with narcotics.

111.    On September 12, 2020, at approximately 1:53 p.m., Curtis Snipes using TT39 called Jamar Howard at TT14. (Session 2236.) During this call the following discussion took place:

TT14: Hello?

TT39: What up my guy?

TT14: What's happenin with you?

TT39: You talk to our guy [person asking for narcotics]?

TT14: Uh, yeah he called me back uh, he callin me now, man.[25]

---

[24] About three minutes prior to this call, on September 11, 2020, at approximately 6:43 p.m., Jamar Howard at TT14 received a call from Jerry Jones using phone number (206) 488-4732 (TT46) (identification discussed in a following section). (Session 2133.) The audio at the beginning of this call was not captured, but the audio at the end of the call indicated that Jerry Jones was seeking to purchase narcotics from Jamar Howard. Additionally, as discussed in a following section, other intercepted phone calls and text messages between Jamar Howard (TT14) and Jerry Jones (TT46) establish that Jerry Jones is a narcotics re-distributor of Jamar Howard.

[25] Investigators reviewed the incoming phone calls on Jamar Howard's known cell phone, TT14, around this time, but did not see any incoming calls. Investigators believe, based on this and other intercepted phone calls on TT14, that Jamar Howard has at least one additional cell phone device, on which he could have received an incoming call at the same time Jamar Howard was using TT14 to talk to Curtis Snipes at TT39. Additionally, about 20 minutes prior to this call between Jamar Howard and Curtis Snipes and again three minutes after this call, Jamar Howard

TT39: Just tell him you're a man down [out of narcotics] so, he, he, he. You know?

TT14: Yeah, yeah, yeah, yeah that's what I'm gonna do then. That's what I'm going to do then.

TT39: Yeah bro I told you that, I told you that.

TT14: Ok, ok.

TT39: And then say "you, you man down," cuz we ain't got it [narcotics], you know what I'm saying?

TT14: Yeah, yeah cuz he [unknown person who wants narcotic] said he just wanted to holler at me. I was just goin to go holler at him and then you know when he said what he said.

TT39: No no just say, "I [Jamar Howard] talked to bro [Curtis Snipes]" and you know what I'm sayin? But, uh, uh, uh, uh we man down [out of narcotics] you know what I'm sayin?

TT14: Yeah, got you. Got you.

TT39: Yeah that's all you got to do is say, "I [Jamar Howard] talked to bro [Curtis Snipes]" but, I, you know cuz I [Jamar Howard] told him [unknown person who wants narcotics] I had to check with you [Curtis Snipes].

TT14: Yeah, yeah, yeah, yeah.

TT39: You know what I'm sayin? I said man, I got to check with bro [Jamar Howard]. I said man he [unknown male who wants narcotics] was waitin for you [Jamar Howard], but I got to check with him [unknown male who wants narcotics] because you [Jamar Howard] didn't show up.

TT14: Got you, got you.

---

using TT14 communicated with Jerry Jones, the same customer/redistributor Jamar Howard likely referenced in the September 11, 2020, call between Jamar Howard and Curtis Snipes. (Sessions 2232, 2234, 2237, and 2239.)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

TT39: You know what I'm saying? All you got to do is just say, "bro [unknown male who wants narcotics] yeah I [Jamar Howard] talked to bro [Curtis Snipes] uh uh we man down right now [out of narcotics]," you know what I'm sayin?

TT14: Ok, ok.

TT39: Hit [call] him in a few days or something you know?

TT14: I got you.

TT39: You know what I'm sayin?

TT14: Yeah, yeah. I'm going to hit [call] him back cuz I was like yeah.

TT39: No I told you, I told you, you know [unintelligible].

TT14: Yeah yeah, yeah know what I'm sayin? I got you bro.

TT39: Alright.

TT14: I'm at the house.

TT39: Alright I'll slide up on you.

TT14: Alright.

TT39: Alright.

112.    Based on my training and experience, I believe that Curtis Snipes and Jamar Howard were discussing that an unidentified person, possibly Jerry Jones at TT46, was attempting to purchase a quantity of narcotics from them, but they did not want to supply him, so they discussed telling the person that they were out of narcotics to sell.

113.    On September 13, 2020, between approximately 9:20 p.m. and 11:12 p.m., Curtis Snipes using TT39 and Jamar Howard using TT14 had the following text message exchange (sessions 2489-2507):

TT39: Wyd [what you doing?]

TT14: Crib what's hannin [at the house, **Subject Premises 10**, what's happening]

TT39: Drop that back off until tomorrow

TT14: Yes sir

TT39: U up

TT14: Yes sir

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

114.     About one minute after the last text message above, on September 13, 2020, at approximately 11:13 p.m., Curtis Snipes using TT39 called Jamar Howard at TT14. (Session 2509.) During this call the following discussion took place:

TT14: Hello?

TT39: I came [to Jamar Howard's house, **Subject Premises 10**], you didn't, I didn't, you know it's kinda of late so I came.

TT14: Oh yeah I was upstairs waiting on you, I didn't even see you.

TT39: Oh yeah, nah, nah I uh um I did the dip off you know by the trash can under the grey bag. Underneath it [left the narcotics by the trash can].

TT14: Oh ok. Ok, ok, ok.

TT39: You know what I'm sayin? I did the, there was uh some trash on the ground.

TT14: Oh yeah, yeah I know what you are taking about. Right behind the gate?

TT39: Huh?

TT14: Right behind the gate?

TT39: Yep. Yep, yep

TT14: Ok, ok.

TT39: I was sayin, I didn't, like you know what I'm sayin, I was like, I mean, I done waited, it's late you know what I'm saying, I know how you dip off and go to Tacoma, you be gone all day.

TT14: I know, I know I was up here in this home playing this dominos.

TT39: Yeah.

TT14: Shit, you know what I'm saying?

TT39: That's alright, that's alright, it's cool. [unintelligible] you know what I'm saying. You ain't got to go out there.

TT14: Oh ok, ok, ok

TT39: I mean it's stanky though. I, I, I, I know it's [narcotics] going to be good.

TT14: Yeah yeah. I'm going to grab it [narcotics] anyway, shit.

TT39: Yeah, yep, ok. That's cool.

TT14: Alright.

TT39: Alright, I'll see you in the morning.

TT14: Alright bro.

115.    Based upon my training and experience, I believe that Curtis Snipes dropped off a quantity of narcotics at Jamar Howard's residence that he hid at the bottom of Jamar Howard's garbage can because he did not think Jamar Howard was at home. Curtis Snipes told Jamar Howard that the garbage was smelly, but he thought that the narcotics would be okay in the trash can until tomorrow, so Jamar Howard did not need to go outside to retrieve the narcotics tonight. Jamar Howard told Curtis Snipes that he was going to go get the narcotics now. Previously, on August 12, 2020, agents conducted a trash pull at **Subject Premises 10** and recovered four small plastic baggies containing a white powder residue, which subsequently was confirmed to be trace amounts of cocaine by the DEA Lab. I know based on my training and experience that drug traffickers frequently use plastic bags to traffic and distribute narcotics.

116.    On September 17, 2020, at approximately 9:38 p.m., Jamar Howard using TT14 sent a text message to Curtis Snipes at TT39 that read: "One left on the table." (Session 3285.) Based on my training and experience, I believe that Jamar Howard was texting Curtis Snipes to let him know that Jamar Howard had one unit of narcotics left. The following day, on September 18, 2020, at approximately 4:57 p.m., Jamar Howard using TT14 sent a text message to Curtis Snipes at TT39 that read: "Bro don't forget me." (Session 3485.) Based on my training and experience, I believe that Jamar Howard was texting Curtis Snipes to reiterate that Jamar Howard was low on narcotics and to tell Curtis Snipes not to forget to resupply him. Less than two hours later, on September 18, 2020, at approximately 6:30 p.m., Curtis Snipes using TT39 called Jamar Howard at TT14. (Session 3507.) During this call the following discussion took place:

TT14: What's up brodie?

TT39: Man shit what you mean. What you, say what, don't…

AFFIDAVIT OF SHAWNA MCCANN - 62
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

TT14: Oh no I thought you uh, I had something lined up [narcotics transaction], for some other way [powder cocaine or crack cocaine].

TT39: I thought you were going to wait until you got rid of one [unit of narcotics] or you know.

TT14: Yeah, I already did that [sold the one unit of narcotics].[26]

TT39: Oh you did?

TT14: Yeah.

TT39: Alright, alright. I didn't know.

TT14: Yeah, yes sir.

TT39: You said, you said hold on.

TT14: Yeah, yeah, yeah, yeah but they [narcotics customers] started hittin my line [calling] so I was like well shit.

TT39: Oh ok.

TT14: You know what I'm sayin?

TT39: Yep.

TT14: I'm at this Walmart now with mama.

TT39: Huh?

TT14: I said I'm out here at Walmart with mama real quick.

TT39: Oh, alright. I'm right by your house [**Subject Premises 10**].

TT14: Are you? Janica is there, and then you could just uh, meet me…

TT39: Huh?

TT14: I said, Janica's there, and then you could just meet me.

TT39: Oh, ok. Alright.

TT14: Alright.

---

[26] Prior to this call, on September 18, 2020, Jamar Howard was contacted by at least two narcotics customers/re-distributors, and Jamar Howard arranged to sell cocaine to each: an unidentified female using phone number (425) 591-6068 (session 3387) and Kevin Gipson (TT6) (session 3461).

AFFIDAVIT OF SHAWNA MCCANN - 63
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

117.     Based on my training and experience I believe that during this call Jamar Howard let Curtis Snipes know that Jamar Howard sold his remaining one unit of narcotics and asked Curtis Snipes for more narcotics. Curtis Snipes was not anticipating Jamar Howard to sell his previously provided quantity of narcotics that soon. Jamar Howard and Curtis Snipes agreed to meet at Jamar Howard's house (**Subject Premises 10**).

118.     On September 26, 2020, at approximately 11:28 a.m., investigators intercepted a call between Jamar Howard using TT14 and Curtis Snipes using TT39. (Session 4795.) The call indicated that Jamar Howard was at his residence, **Subject Premises 10**. Based on the call, investigators believed Curtis Snipes was close to Jamar Howard's residence and would be arriving shortly. Agents monitored remote camera surveillance of Jamar Howard's residence. At approximately 11:32 a.m., agents saw Curtis Snipes arrive at Jamar Howard's residence in a silver 2019 Toyota Corolla, Washington license BNS1375 (Enterprise Rental). Agents knew, based on prior intercepted calls on TT14, that the silver Corolla was previously reserved for Curtis Snipes at the car rental company by Jamar Howard. Curtis Snipes exited the vehicle and walked to Jamar Howard's house (**Subject Premises 10**). At approximately 12:20 p.m., Curtis Snipes left alone in the silver Corolla. A few minutes later Jamar Howard's black Tahoe left. GPS data for TT14 indicated Jamar Howard left in the black Tahoe.

119.     On November 13, 2020, Jamar Howard using TT14 called Yusef Parrish at TT43.[27] (Session 1224.) During this call Yusef Parrish and Jamar Howard discussed drug trafficking activities, specifically that Yusef Parrish was looking for cocaine because one of his suppliers [Curtis Snipes] had recently been involved in police activity and that his

---

[27] Agents obtained a search warrant for GPS location data for TT43, conducted physical surveillance in the area of the GPS location data, and confirmed the user of TT43 was Yusef Parrish based on identifying Yusef Parrish from his driver's license photograph and seeing him in the same area of the GPS pings for TT43 at multiple different locations and times. Agents then obtained a wiretap order for TT43 and further confirmed the user was Yusef Parrish based on communications in which the user of TT43 was identified as "Sef," a known alias for Yusef Parrish based on confidential source information.

AFFIDAVIT OF SHAWNA MCCANN - 64
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

other supplier [Richard Lewis] went to check out some cocaine recently and it was poor quality. Jamar Howard told Yusef Parrish to let him know when Yusef Parrish got more cocaine. Yusef Parrish indicated that he may need to get cocaine from Jamar Howard in the meantime, until his one supplier found good quality cocaine. Jamar Howard agreed, but Yusef Parrish said he was still waiting on his supplier to call and come through with good quality cocaine. Jamar Howard again asked Yusef Parrish to tell him when Yusef Parrish is back on and resupplied with good cocaine.

### 2.    *November 24, 2020, Search of Subject Premises 10*

120.    On November 24, 2020, the Honorable Judge Mary Alice Theiler, United States Magistrate Judge for the Western District of Washington, signed a search warrant for **Subject Premises 10** and two vehicles associated with Jamar Howard: the 2012 Chevy Camaro (Subject Vehicle 11) and the black 2008 Chevy Tahoe (Subject Vehicle 12). Later on November 24, 2020, agents conducted a traffic stop on Jamar Howard, driving his black Tahoe (Subject Vehicle 12), and executed the search warrant on this vehicle, seizing two cell phones that were with Jamar Howard while he was driving; shortly thereafter, agents executed the search warrant on **Subject Premises 10** and Subject Vehicle 11 and located a firearm in Jamar Howard's bedroom, which he admitted to owning, and six cell phones in **Subject Premises 10**.[28] However, agents did not locate any narcotics in **Subject Premises 10** or his two vehicles. **Subject Premises 10** has a large backyard area as well as a large garage area where Jamar Howard could have hidden narcotics to evade law enforcement detection. Due to the darkness of night at the time of the search, agents were unable to thoroughly search the backyard and the garage. Based on intercepted communications, agents know that Jamar Howard was aware of the recent law enforcement activity surrounding the Michael Walker DTO, including law enforcement searches of Jamar Howard's immediate drug trafficking associates Curtis

---

[28] No items of evidence were seized from Subject Vehicle 11.

AFFIDAVIT OF SHAWNA MCCANN - 65
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Snipes, Michael Hopkins, and Yusef Parrish, and agents believe that Jamar Howard may have hidden and/or relocated his narcotics supply and proceeds temporarily due to the attention of law enforcement on his drug trafficking network.

### 3. Jamar Howard's Continued Use of Subject Premises 10 for Drug Trafficking

121.    Based on physical surveillance of **Subject Premises 10**, agents know that Jamar Howard continues to reside at **Subject Premises 10** after the execution of the search warrant on November 24, 2020. For example, on February 19, 2021, agents observed Jamar Howard's black Tahoe (Subject Vehicle 12) parked in the driveway of **Subject Premises 10** and the blue Camaro (Subject Vehicle 11) parked on the street in front of **Subject Premises 10**. On March 5, 2021, at approximately 11:46 a.m., agents observed Subject Vehicle 12 parked in the driveway of **Subject Premises 10**, indicating that Jamar Howard still resides at **Subject Premises 10**.

122.    Agents have also observed Jamar Howard conducting what appear to be drug transactions from **Subject Premises 10** after the execution of the search warrant on November 24, 2020. For example, on March 17, 2021, at approximately 1:02 p.m., agents observed Subject Vehicle 12 parked in the driveway of **Subject Premises 10**. At approximately 1:19 p.m., agents observed a blue 2005 Infiniti G35 bearing Washington State license plate BVK3090 park in front of **Subject Premises 10**. The Infiniti was registered to Melvin Steward at 7809 S 114 Street, Seattle, Washington. Agents observed Melvin Steward, identified based on a comparison to his driver's license photograph, exit the driver's seat of the Infiniti and go into **Subject Premises 10**. At approximately 1:25 p.m., agents observed Melvin Steward exit **Subject Premises 10** and open the front passenger side door of the Infiniti. Agents observed Melvin Steward retrieve or place unknown item(s) into the Infiniti and then walk back into **Subject Premises 10**. At approximately 3:22 p.m., agents observed Melvin Steward exit **Subject Premises 10** and enter the driver's seat of the Infiniti. Shortly thereafter Jamar Howard and a female, believed to be his adult daughter, exited **Subject Premises 10** and got into Subject

AFFIDAVIT OF SHAWNA MCCANN - 66
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  Vehicle 12. Melvin Steward drove off in the Infiniti traveling southbound and Jamar

2  Howard left in Subject Vehicle 12 traveling northbound. Agents followed Jamar Howard

3  and observed him as he appeared to run errands in Seattle and Renton, before he returned

4  to **Subject Premises 10**.

5      123.    Based on intercepted communications, agents believe that Melvin Steward

6  is a drug trafficking associate of Jamar Howard. For example, on September 20, 2020, at

7  approximately 2:17 p.m., Melvin Steward using phone number (770) 912-2504[29] called

8  Jamar Howard at TT14. (Session 3757.) During this call, Melvin Steward said he was

9  trying to get a hold of Jamar Howard, and Jamar Howard explained that his work

10 schedule had changed. Melvin Steward asked, "when [unintelligible]?" Jamar Howard

11 replied, "I'm going to put something together [get narcotics ready for distribution]. I'll let

12 you know. It'll be before the [football] game though. I'll try to put something together…I

13 gotta put my [unintelligible]." Melvin Steward said, "C'mon man." Jamar Howard

14 replied, "I'll let you know what time I'm actually going to bust a move [ready to do the

15 drug deal] but it's sometime around there." Melvin Steward said, "we going to be in the

16 area, so just call me, you know what I'm saying, and we'll grab something [narcotics]."

17 Jamar Howard said he would call Melvin Steward in the next hour or two. Based on my

18 training and experience, I believe that Melvin Steward was calling to arrange a narcotics

19 transaction with Jamar Howard and that Jamar Howard indicated he would be ready to

20 conduct the drug deal later that day. Accordingly, agents believe that Melvin Steward is a

21 drug trafficking associate of Jamar Howard and that his presence at **Subject Premises 10**

22 in March 2021 indicates that Jamar Howard is still actively drug trafficking using

23 **Subject Premises 10** after the November 24, 2020, search of **Subject Premises 10.**

24

25

26
_____

27 [29] Agents believe Melvin Steward is the user of this phone number based on subscriber information provided by the
   phone company showing that the phone number is subscribed to "Melvin Steward" at 7809 S 114th Street, Seattle,
   Washington. Based on the information on his driver's license, Melvin Steward Jr. resides at this address.

28
AFFIDAVIT OF SHAWNA MCCANN - 67
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

124.   On March 17, 2021, at approximately 4:04 p.m., agents observed a grey 2002 Chevrolet Silverado bearing Washington State license plate B40796K with a large Seattle Seahawks logo on the rear window parked at the top of the driveway at **Subject Premises 10**. The Silverado was registered to Jumaani Jamal at 26025 119 Drive SE Kent, Washington. At approximately 4:41 p.m., agents observed Jumaani Jamal, identified based on a comparison to his driver's license photograph, exit **Subject Premises 10**, enter the Silverado, and drive off.

125.   Based on intercepted communications, agents believe that Jumaani Jamal is also a drug trafficking associate of Jamar Howard and that his presence at **Subject Premises 10** indicates that Jamar Howard is still actively drug trafficking using **Subject Premises 10** after it was searched by agents on November 24, 2020. On July 30, 2020, at approximately 10:04 a.m., investigators intercepted outgoing calls from Kevin Gipson using TT6 to Jamar Howard at TT14. (Session 3240 and 3241.) During the call, Jamar Howard told Kevin Gipson that he was waiting on his source of supply, who should be at his house (**Subject Premises 10**) by noon, and that he should be able to meet Kevin Gipson around 2:00 p.m. At approximately 11:57 a.m., agents observed a gray 2002 Chevrolet Silverado bearing Washington license plate B40796K registered to Jumaani K. Jamal pull into the driveway of **Subject Premises 10**. Agents observed a male carrying a woven basket and talking on a cell phone and an unknown female exit the truck and go into **Subject Premises 10**.[30] At approximately 1:32 p.m., agents observed the male who had previously carried the basket into **Subject Premises 10** exit the residence, get into the gray Silverado alone, and drive to a parking lot near a Wendy's in Renton. The gray Silverado backed into a parking spot in the large strip mall lot, where agents identified

---

[30] Only one other vehicle arrived at **Subject Premises 10** around noon. At approximately 12:12 p.m., agents observed a green/gray 1997 Lexus ES bearing Washington license BTF2349 registered to George-Jean A. Edwards, 15703 8th Avenue Court East, Tacoma, Washington park in front of **Subject Premises 10**. A male driver exited the Lexus and went into **Subject Premises 10**; agents did not observe anything in the male's hands. At approximately 12:54 p.m., agents observed the male driver come out of **Subject Premises 10** and leave in the Lexus.

the driver as Jumaani Jamal through a comparison to his driver's license photograph. A few minutes later, at approximately 1:38 p.m., agents observed a black 2002 Acura 3.2TL bearing Washington license plate BCB3363 park directly next to the gray Silverado so that the drivers' doors were facing each other. Agents observed Jumaani Jamal talking with the female driver of the Acura. At approximately 1:42 p.m., four minutes later, agents observed the gray Silverado and the black Acura leave the area in separate directions. Based on my training and experience, I believe this brief interaction—which involved a meeting between vehicles in a parking lot with no other discernable purpose—is consistent with drug trafficking activity. At approximately 1:47 p.m., agents observed the gray Silverado arrive back at Jamar Howard's residence (**Subject Premises 10**). Based on the timing of Jumaani Jamal's arrival at **Subject Premises 10** almost precisely when Jamar Howard had told Kevin Gipson his supplier would be arriving, and his brief interaction with the unknown female in the Wendy's parking lot, agents believe Jumaani Jamal is involved in Jamar Howard's drug trafficking operations.

126. Additionally, agents have intercepted calls between Jamar Howard using TT14 and phone number (206) 491-3307, which is subscribed to Jumaani Jamal and has a voicemail message that, when intercepted over TT14, identified the user as Jumaani Jamal, discussing drug-related activities.[31] On September 15, 2020, at approximately 5:31 p.m., Jamar Howard using TT14 called Jumaani Jamal at phone number (206) 491-3307. (Session 2851.) During this call, Jamar Howard asked, "You got some weed?" and Jumaani Jamal said, "yep." Jamar Howard replied, "Let me grab a bag. Stay there. I'll be 10 minutes." Jumaani Jamal said, "alright." Based on my training and experience, I believe that Jamar Howard discussed going to get weed, illegally,[32] from Jumaani Jamal.

---

[31] Several intercepted communications between Jumaani Jamal and Jamar Howard at TT14 were social in nature, discussing sports, work, and fishing.

[32] In Washington, marijuana can only be sold and purchased at state-licensed retail stores. *See* RCW 69.50.302-69.50.303. Moreover, home grown marijuana for sale remains illegal in Washington. *Id*.; *see also* RCW 69.50.360, 69.50.363, 69.50.366, 69.50.401, and 69.50.4013. Recreational use marijuana must be purchased from a state-licensed retailer. *Id.*

AFFIDAVIT OF SHAWNA MCCANN - 69
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

On other intercepted calls between Jumaani Jamal and Jamar Howard, Jamar Howard mentions going to meet "KG" [Kevin Gipson], and Jumaani Jamal indicates an understanding of who Kevin Gipson is and the purpose of the meeting. (Session 2674.) During that same call, Jumaani Jamal said he was "going to fuck with Don real quick. That N* totaled the Jag [wrecked his Jaguar car]." Based on my training and experience, and the training and experience of other agents with whom I work, I know that Don Kervin is a drug trafficker in the area who drove a Jaguar. Accordingly, I believe that agent's observation of Jumaani Jamal's vehicle at **Subject Premises 10** recently, and after the November 24, 2020, search, indicates that Jamar Howard is still actively drug trafficking and meeting with potential drug trafficking associates at **Subject Premises 10**.

127. Finally, agents believe that Jamar Howard was actively trafficking drugs at the time of search and that his narcotics supply and proceeds were either hidden to avoid law enforcement detection or were temporarily relocated prior to the November 24, 2020, search of **Subject Premises 10**. After conducting a search of **Subject Premises 10** and Subject Vehicles 11 and 12, agents obtained a separate search warrant for Jamar Howard's eight cell phones. In the Call Log section of one of the cell phones that was in the black Tahoe driven by Jamar Howard at the time of the traffic stop (evidence item 1B215), agents observed several phone calls to and from known Michael Walker DTO associates and drug traffickers, including Jerry Jones and Kevin Gipson, on the day of the search and on a near daily basis leading up to the day of the search. For example, Jamar Howard and Jerry Jones exchanged calls on all but one day in the week leading up to the search of **Subject Premises 10**. Similarly, Jamar Howard and Kevin Gipson exchanged a total of 17 calls from November 20 to November 24, 2020, including a call during the execution of the search warrant at **Subject Premises 10**.

128. I know, based on my training and experience, that drug traffickers typically return to their normal patterns of drug trafficking, including locations where they store their narcotics and proceeds, after a cooling off period from recent law enforcement activity. Since it has been at least four months since any law enforcement activity

AFFIDAVIT OF SHAWNA MCCANN - 70
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  affecting Jamar Howard's immediate drug trafficking network, and based on the

2  information below, I believe that Jamar Howard has returned to his pattern of drug

3  trafficking and is likely keeping narcotics and narcotics proceeds at **Subject**

4  **Premises 10.**

5  129.    I know based on my training and experience, that drug traffickers

6  frequently keep their narcotics and narcotics proceeds in their residences, vehicles, and

7  stash locations in order to protect their supply and to have the narcotics on hand for

8  transactions. Based on the above-referenced intercepted communications, I believe that

9  Jamar Howard is a multi-ounce cocaine redistributor working for Curtis Snipes who

10 likely currently keeps his narcotics supply and proceeds at, and has relocated his

11 narcotics supply and proceeds back to, **Subject Premises 10**.

12 **F.    Jerry Jones's Residence and Vehicles**

13 130.    During this investigation, based on physical surveillance and intercepted

14 communications described in more detail below, agents identified Jerry Jones's residence

15 as 13011 East Gibson Road, Apt. #P128, Everett, Washington (**Subject Premises 38**),

16 and his vehicles as a 2006 Range Rover bearing Washington license plate BVK2041

17 registered to Jerry D. Jones at 6118 S 242nd Place, Apt. 13-303, Kent, Washington

18 (**Subject Vehicle 34**) and a black 2018 Toyota Camry bearing Washington license plate

19 BVM7668 registered to Michelle L. Marshall at **Subject Premises 38** (**Subject Vehicle**

20 **35**). Agents obtained GPS location data on Jerry Jones's cell phone, TT46 (identification

21 discussed below), which showed that Jerry Jones remained at **Subject Premises 38**

22 overnights from November 2020 through December 2020. Additionally, on February 10,

23 2021, agents observed Jerry Jones at **Subject Premises 38.** Through this investigation,

24 agents have intercepted communications regarding Jerry Jones (aka Snake) conducting

25 cocaine transactions as a redistributor for Curtis Snipes and Jamar Howard. Some of

26 these drug transactions and agents' observations are noted below for purposes of

27 establishing probable cause to search **Subject Premises 38** and **Subject Vehicles 34**

28 and **35**.

AFFIDAVIT OF SHAWNA MCCANN - 71
USAO #2019R01083

### 1. *Communications Regarding Drug Trafficking (TT46)*

131.    During interceptions of Jamar Howard (TT14), agents identified Yusef Parrish (TT43) as a cocaine trafficking associate of Jamar Howard and Curtis Snipes (TT39). Agents intercepted several communications between Jamar Howard (TT14) and Yusef Parrish (TT43) discussing cocaine amounts, cocaine pricing, and prior cocaine transactions in which the cocaine quality was poor and/or the cocaine pricing was high. During interceptions of TT14 and—later—TT43, Yusef Parrish (TT43) spoke with Michael Hopkins and Jamar Howard about buying cocaine from Curtis Snipes (TT39) a few months earlier, but moving to a different source of supply that had better quality cocaine at lower prices.

132.    On September 10, 2020, at approximately 10:59 a.m., Jerry Jones using TT46 called Jamar Howard at TT14. (Session 1336.) During this call, Jerry Jones said that he was "on my way up there from Everett" and that he had been on lock down and "ain't been making no money and shit. I got to get back in the groove [drug trafficking]. I don't even know who to go fuck with anymore [get supplied by]." Jamar Howard said, "get over here man." Jerry Jones said, "meet me somewhere so I can holler at you about what's going on, what N* are up to, so I can make some fucking money." The parties agreed to meet later. Based on my training and experience, I believe that Jerry Jones called Jamar Howard to find out who had cocaine at that time to supply Jerry Jones because he needed to make money from drug sales.

133.    On September 12, 2020, at approximately 10:57 a.m., Jerry Jones using TT46 sent the following text message to Jamar Howard at TT14: "Call me." Jamar Howard responded, "Who is this?" Jerry Jones replied, "Snake." Agents obtained subscriber information for TT46, which was subscribed to "Jerry Jones," and, as described below, agents used GPS location data and physical surveillance to identify the user of TT46 as Jerry Jones. Accordingly, agents identified "Snake" as an alias for Jerry Jones.

AFFIDAVIT OF SHAWNA MCCANN - 72
USAO #2019R01083

134.   On September 12, 2020, at approximately 6:05 p.m., Jamar Howard using TT14 called Jerry Jones at TT46. (Session 2284.) During this call, Jamar Howard said, "I'm catching up with the cat [supplier] right now man. So, I only had a little bit [of cocaine], man uh, trying to get all the way right [supplied with more cocaine] for you right now man. I'm headed towards him [supplier], towards Kent right now." Jerry Jones replied, "I'm gonna be in Kent so what, so what do I need to do cause I've been out all day. I'm ready to go home now man." Jamar Howard said, "well I'm going out here to check it [cocaine quality], he [supplier] set it up. I'm going to go check it [cocaine] out real fast cause we only, I only had a little bit [of cocaine] at my house, not even enough to twinkle your toes, but uh, I'm going out there now." Jerry Jones replied, "okay, go head man, shit. I might just come see you tomorrow." Jamar Howard said, "you can just come to the house then." Jerry Jones agreed to talk to Jamar Howard the following day to arrange a meeting. Based on my training and experience, I believe Jamar Howard was going to Kent, Washington to meet with his supplier to look at and get resupplied with more cocaine, and that Jamar Howard arranged to meet with Jerry Jones the following day to redistribute some cocaine to Jerry Jones.

135.   On September 13, 2020, at approximately 12:49 p.m., Jerry Jones using TT46 sent the following text message to Jamar Howard at TT14: "What's up bro [asking if Howard had any narcotics yet]." (Session 2383.) Jamar Howard using TT14 replied, "Bro it didn't go down last night [Howard did not get narcotics last night] boy [Howard's supplier] said after Seahawks games I am waiting now hang on any time now [Howard will have more narcotics to resupply Jones with]." (Session 2395.) Later that same day, Jerry Jones using TT46 replied, "Man U guys killing my huslen spirit [delay in narcotics resupply affecting Jones's drug trafficking business]…lol." (Session 2402.) Based on my training and experience, I believe that Jerry Jones was waiting to get resupplied narcotics by Jamar Howard but that Jamar Howard said that his source of supply did not give him narcotics yet. Jamar Howard told Jerry Jones that he anticipated getting supplied with narcotics after the Seahawks football game that day and then would supply Jerry Jones

AFFIDAVIT OF SHAWNA MCCANN - 73
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

with narcotics. Jerry Jones then complained that the delay in getting supplied with narcotics was affecting his narcotics trafficking business.

136.   On September 14, 2020, at approximately 7:01 a.m., Jerry Jones using TT46 sent the following text message to Jamar Howard at TT14: "What up [asking if Howard got more narcotics]." (Session 2510.) For the next several hours, Jerry Jones using TT46 attempted to call Jamar Howard at TT14 with no answer. At approximately 6:27 p.m., Jerry Jones using TT46 texted Jamar Howard at TT14: "Are we pod or not? [asking if Howard got more narcotics]." (Session 2625.) On September 18, 2020, at approximately 1:10 p.m., Jerry Jones using TT46 sent the following text message to Jamar Howard at TT14: "Any good news bro? [asking if Howard got resupplied with narcotics]" (Session 3441.) Jamar Howard using TT14 replied, "Tomorrow is the rumor Lol I hope shit." (Session 3443.) Based on my training and experience, I believe these text messages are a continuation of Jerry Jones seeking to get supplied narcotics by Jamar Howard, and Jamar Howard told Jerry Jones that he believed the narcotics were coming the following day.

137.   On September 21, 2020, Jerry Jones using TT46 sent the following text message to Jamar Howard at TT14: "How we looking..boss? [asking if Howard has narcotics]" (Session 3924.) Based on my training and experience, I believe that Jerry Jones was again asking Jamar Howard if he had any narcotics to supply Jerry Jones with.

138.   On October 31, 2020, the day after agents searched properties and vehicles associated with Curtis Snipes, at approximately 3:47 p.m., Yusef Parrish using TT43 called Jerry Jones TT46. (Session 408.) At the beginning of the call, Yusef Parrish told Jerry Jones, "You know your boy got popped." They then discussed the search of Curtis Snipes's house the night before. For instance, they discussed that the house was searched, but that the individual didn't go to jail; that there was "nothing there" for the police to find; "the only thing we [the police] can get him on is he's a felon and he had a gun in the house"; that "they pulled Mike [Michael Hopkins] over after he left his [Curtis Snipes's] house"; that Mike "saved this n*'s life because he went back . . . on a scooter and

AFFIDAVIT OF SHAWNA MCCANN - 74
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

everything and knocked on the door and rang the doorbell" to warn him [Curtis Snipes]."

Later, the following discussion took place:

> TT43: Because he [Curtis Snipes] came, he got out—I talked to him a couple—
> About last week he came. He said, "N*, where you at? Because I'm picking you
> up, for you know, Vista." So he came over to the house. He [Curtis Snipes] was
> like, "Man, you know my circle's small, n*…" this and that because I ain't been
> hitting him [getting supplied cocaine from Curtis Snipes]. You know, and I
> haven't been hitting him. And I was like, "N*. Point blank, n*. Crap [bad quality
> cocaine]." He was like, "What?" He was like—
>
> TT46: He [Curtis Snipes] sold you some crap [bad quality cocaine]?
>
> TT43: Nah, I'm just saying—[unintelligible] N* that—Remember when I told you
> it was 17-50 [$1,750 per ounce of cocaine]?
>
> TT46: Yeah.
>
> TT43: N* that shit [cocaine] was horrible. And I gave [paid] a lot, n*. When I say
> a lot, n*—Remember when I told you like 4-0 [$40,000 for the bad quality
> cocaine Curtis Snipes sold to Yusef Parrish]?
>
> TT46: Yeah, yeah.
>
> TT43: Yeah, n*, I told him, n*, I told him I'm still trying to get my money
> [narcotics proceeds] back off that [bad quality cocaine].
>
> TT46: Yeah [unintelligible] right now. Yeah.
>
> TT43: Yeah. N* you're going to charge me top deal [high price]—Then he [Curtis
> Snipes] said—Then-then it was, "I'm going down [lowering cocaine prices]." But
> by then I already start fucking my n* [using a different supplier for cocaine].
>
> TT46: Yeah [unintelligible].
>
> TT43: So it's been a couple—So it's been a couple months [since getting cocaine
> from Curtis Snipes]. And I—You know me, I ain' t really been—I ain't fuck with
> him in a couple months. So I was like, " Hey— "

AFFIDAVIT OF SHAWNA MCCANN - 75
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

TT46: So, so—So [unintelligible] we can get … So, is it better [the cocaine Yusef Parrish is getting from this different supplier, is it better quality]? How-how better is it, Bro? Is it worth it?

TT43: N*, I' m getting 3, 4 extra [amounts of cocaine] off of each one [unit of cocaine] of them [after cutting the cocaine]. I don't know what you're talking about. I told—I told him [Curtis Snipes] I wasn't getting no extras off yours [the cocaine Curtis Snipes sold to Yusef Parrish a few months ago], n*. And I had to put damn near the same amount in there [same amount of cut as cocaine] just to try to get it back to, you know, the 2-8 [$28,000 in narcotics proceeds from a half kilogram of cocaine[33] with cut].

TT46: What-what-what's the ticket [cocaine price that Yusef Parrish is getting from this other supplier]? I don't even want the little shit though, I might have to come see [check out the quality of cocaine]—I don't want to be fucking with that weird old dude [another cocaine supplier]. I ain't going over there. Yeah, that's going to be [unintelligible]. I'm—I'm going to get at you when I come holler at you [unintelligible] my city though.

TT43: He [Yusef Parrish's different supplier] on the—He on the—He on the 2-7 on the, you know, on the half time [$27,000 per half kilogram of cocaine]. But I'm about to get it [cocaine] cheaper than that. I'm about to—I'm about to probably make him go down—make him go down at least another yard maybe 1500 [reduce the price per half kilogram of cocaine by about $1,500].

TT46: Okay.

TT43: So, I—Because I'm-I-I—All I got to do is tell him [cocaine supplier], "Well, shit, my man, m-my fans say, 'Hey, you know I haven't been messing with him [Curtis Snipes] so he going down [in cocaine prices] to this [cheaper price per

---

[33] Based on my training and experience and intercepted communications in this investigation, I know that around this time, the price for a half kilogram of cocaine ranged from about $25,000 to $30,000.

kilogram of cocaine].' Can you match it?" Can you match it? That's all I say, "Can you match it? Yes or no." "Yeah, I can match it." Well, cool.

TT46: Well, I'm going to be on your line [call Yusef Parrish] after I go run through what I got [sell remaining cocaine and need resupply]. Alright?

TT43: Yeah.

TT46: Hit you. Alright, Bro bro. Well let me know what's up [with the cocaine pricing], though. If something happen [Yusef Parrish gets resupplied with cocaine], call me, bro.

TT43: Oh, yeah. I'll let you know.

139.    Based on my training and experience and intercepted communications in this investigation, I believe that Yusef Parrish told Jerry Jones that Yusef Parrish used to get supplied cocaine by Curtis Snipes, but that because the last batch of cocaine Yusef Parrish bought from Curtis Snipes was bad quality and priced too high, Yusef Parrish had started to buy cocaine from a different source of supply. Yusef Parrish stated that this different source of supply sold him a half kilogram of cocaine for $27,000, but that for the next cocaine Yusef Parrish buys from this supplier, Yusef Parrish is going to try and negotiate the price per half kilogram of cocaine down by about $1,500. During this call, Jerry Jones expressed interest in buying cocaine from Yusef Parrish when Yusef Parrish gets more cocaine from this different source of supply, and Jerry Jones stated that he was going to check and see how much cocaine he currently had left and let Yusef Parrish know when he is ready to buy more cocaine. During this call, Jerry Jones demonstrated that he had knowledge of drug trafficking, had cocaine that he was selling, was looking to purchase more cocaine from Yusef Parrish in the future, and was aware of Yusef Parrish, Curtis Snipes, and other members of the Michael Walker DTO. I also believe that, because Jerry Jones was having difficulty getting supplied narcotics from Jamar Howard, as set forth above, Jerry Jones was looking for a different supplier and therefore reached out to Yusef Parrish.

AFFIDAVIT OF SHAWNA MCCANN - 77
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

140.    On a subsequent intercepted call between Yusef Parrish using TT43 and Jerry Jones using TT46, on November 2, 2020, the parties continued to discuss Curtis Snipes, including then-recent law enforcement action against Curtis Snipes on October 30, 2020, and that Jerry Jones had talked to "Hoov" [Jamar Howard][34] recently. Jerry Jones's familiarity with this law enforcement activity further demonstrates his knowledge of and involvement in the Michael Walker DTO activities. (Session 478.)

141.    As set forth above, on October 30, 2020, agents conducted a full search of Curtis Snipes's person and vehicle pursuant to federal search warrants and located four cell phone devices, including TT39, and $7,746.00 wrapped/rolled in a rubber band. Agents subsequently obtained a federal search warrant to search the cell phone devices seized from Curtis Snipes's person and have conducted a search of those devices. In the instant message contents of TT39, agents located the following text messages between Curtis Snipes using TT39, Jerry Jones using TT46, and Jamar Howard aka Hoov using TT14, sent on October 20 and October 21, 2020:

> TT46 to TT39: Hit me [call me]
>
> TT39 to TT14: Bro hit [call] snake [Jerry Jones] and give him a baby [4.5 ounces of cocaine].
>
> TT39 to TT46: Hit our guy [Jamar Howard] im at work.

Based on my training and experience, I believe that Curtis Snipes instructed Jamar Howard to supply Jerry Jones with 4.5 ounces of cocaine and that Curtis Snipes told Jerry Jones to contact Jamar Howard to get supplied with cocaine.

### 2.    Identification of Jerry Jones as User of TT46

142.    Agents have reviewed a number of cell phones seized from known members of the Michael Walker DTO, and the contents of some of these phones associate TT46 with Jerry Jones. For example, as set forth above, agents conducted a

---

[34] As set forth above, based on confidential source information and a Facebook of Jamar Howard, agents know that Jamar Howard's alias is "Hoov."

AFFIDAVIT OF SHAWNA MCCANN - 78
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

search of Yusef Parrish's residence on November 21, 2020, and seized cocaine, firearms, currency, and seven cell phones. Agents obtained a separate search warrant for Yusef Parrish's cell phone devices. On one of Yusef Parrish's cell phone devices (evidence item 1B207), phone number (206) 488-4732 (TT46) is stored under the contact name "Snake," which agents have determined is an alias for Jerry Jones. There were only six substantive text messages on this cell phone device, all from November 21, 2020. Based on my training and experience, I know that drug traffickers frequently delete incriminating text messages after communicating with their fellow drug trafficking associates in order to evade law enforcement detection if their cell phones were to be seized and searched.

143.    As set forth above, agents conducted a search of Jamar Howard's residence and vehicles on November 24, 2020, and seized a firearm and eight cell phones. Agents obtained a separate search warrant for Jamar Howard's cell phone devices. On one of Jamar Howard's cell phone devices (evidence item 1B215), the only contact saved to the phone was phone number (206) 488-4732 (TT46) stored under the contact name "J." Agents were only able to recover 21 text messages from this cell phone device going back to October 31, 2020; however, the Call Log section for this cell phone showed that Jamar Howard made frequent calls to the user of TT46 from November 2, 2020, to November 24, 2020.

144.    As set forth above, agents seized a cell phone from Terry Ezell's vehicle, which they later searched after obtaining a federal search warrant for its contents. An analysis of Terry Ezell's cell phone (assigned evidence number 1B44) showed a contact name of "Union snake" stored under phone number TT46 and a second phone number of (206) 902-0381. Based on my training and experience, I believe that "snake" is a reference to Jerry Jones's alias and that "Union" is a reference to the street gang that Jerry Jones is affiliated with—Union Street.

145.    Agents have been able to confirm Jerry Jones's identity as the user of TT46 based on physical surveillance and GPS location data for TT46, acquired pursuant to a federal search warrant. On November 23, 2020, at approximately 10:00 a.m., GPS

AFFIDAVIT OF SHAWNA MCCANN - 79
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   location data for TT46 indicated the user of that phone was in the vicinity of **Subject**

2   **Premises 38**. At approximately 11:00 a.m., agents arrived at the **Subject Premises 38**

3   and observed **Subject Vehicle 34** parked in spot 70. Agents also observed **Subject**

4   **Vehicle 35** parked in spot 66, near **Subject Vehicle 34**. At approximately 3:15 p.m.,

5   agents observed a male exit the area of building P near the vehicles and leave in **Subject**

6   **Vehicle 35**. The next GPS location data for TT46 indicated that the user of TT46 had left

7   the area, likely in **Subject Vehicle 35**, as that was the only vehicle to leave the area

8   during the relevant time. Agents attempted to locate **Subject Vehicle 35** as GPS location

9   data for TT46 indicated the device traveled south into Seattle and then back to **Subject**

10  **Premises 38**, but they were unable to locate the vehicle while it was gone. At

11  approximately 5:15 p.m., GPS location data for TT46 indicated the user was back at the

12  apartment complex. Around that same time, agents observed Jerry Jones, identified based

13  on a comparison to his driver's license photograph, park **Subject Vehicle 35** in the

14  apartment complex parking lot, exit **Subject Vehicle 35,** and walk to and inside the front

15  door of Apartment P128 (**Subject Premises 38).**

16     146.    On November 24, 2020, at approximately 12:00 p.m., GPS location data for

17  TT46 indicated the user was at **Subject Premises 38**. At approximately 1:00 p.m., agents

18  observed **Subject Vehicles 34** and **35** parked in the same area of the parking lot. At

19  approximately 2:15 p.m., agents observed a male exit Apartment P128 (**Subject**

20  **Premises 38**) with a garbage bag and walk out towards the vehicles. The male took the

21  garbage to the dumpsters and went back inside **Subject Premises 38**. At approximately

22  2:38 p.m., agents observed a UPS driver approach **Subject Premises 38**. Agents

23  observed the same male who threw out the garbage accept a package from the UPS driver

24  and put it in **Subject Premises 38**. A short time later, the same male exited **Subject**

25  **Premises 38,** got into **Subject Vehicle 35** by himself, and drove off. At this point, agents

26  were able to identify this male as Jerry Jones based on a comparison to his driver's

27  license photograph. Agents followed Jerry Jones driving **Subject Vehicle 35** from the

28  apartment complex; Jerry Jones drove about one mile and then quickly pulled into a

AFFIDAVIT OF SHAWNA MCCANN - 80
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

residential driveway and immediately backed out. Jerry Jones then was observed watching traffic at a traffic circle at the next intersection, immediately after he had just abruptly pulled into and backed out of a residential driveway. Agents believed Jerry Jones was conducting countersurveillance and looking to he was being followed by law enforcement. Based on my training and experience, I know that sophisticated and long term drug traffickers as opposed to lower level drug dealers have the experience and awareness to conduct countersurveillance and frequently do so; countersurveillance techniques include taking detours and back roads, stopping or pulling over randomly, taking sharp or last minute turns, driving at variant speeds, and driving several laps around a final destination before parking. After performing the countersurveillance maneuver using **Subject Vehicle 35**, Jerry Jones eventually got onto Interstate 5 northbound. The next GPS data for TT46 indicated the device was traveling in the same direction as **Subject Vehicle 35** at the same time, verifying that Jerry Jones was the user of TT46.

147.     On February 10, 2021, at approximately 2:15 p.m., surveillance was established at **Subject Premises 38**. Upon arrival agents observed **Subject Vehicle 34** in parking spot #70 and **Subject Vehicle 35** in spot #66. Agents observed Jerry Jones and a female come out of the walkway that leads to **Subject Premises 38**. Jerry Jones got into the driver's seat and the female got into the front passenger seat of **Subject Vehicle 35**. Jerry Jones and the female then departed the parking lot in **Subject Vehicle 35**.

148.     On March 1, 2021, at approximately 5:32 p.m., surveillance was established at **Subject Premises 38**. Upon arrival agents observed **Subject Vehicle 34** in parking spot #70 and **Subject Vehicle 35** in spot #66, indicating that Jerry Jones still resides at **Subject Premises 38** and drives and/or is associated with **Subject Vehicles 34** and **35**.

149.     I know based on my training and experience, that drug traffickers frequently keep their narcotics, narcotics proceeds, and firearms in their residences, vehicles, and stash locations in order to protect their supply and to have the narcotics on

AFFIDAVIT OF SHAWNA MCCANN - 81
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

hand for transactions. I also know that drug traffickers maintain records and other trafficking-related materials in their premises, including residences, for a long period of time, including current and prior cell phone devices that contain text messages and contact lists of drug trafficking associates and pay-owe sheets. Based on the above-referenced intercepted communications, I believe that Jerry Jones is a multi-ounce cocaine re-distributor working for Curtis Snipes and Jamar Howard and that Jerry Jones likely keeps his narcotics supply and proceeds in **Subject Premises 38** and **Subject Vehicles 34-35.**

### G.     Gerald Aikens's Residence and Vehicle

150.     During this investigation, based on physical surveillance and intercepted communications discussed in more detail below, agents identified Gerald Aikens's residence as 4041 30th Avenue South, Seattle, Washington (**Subject Premises 39**), and his vehicle as a black 2013 Ford F150 bearing Washington license plate C72919R registered to Gerald Aikens II at **Subject Premises 39** (**Subject Vehicle 36**). Agents obtained GPS location data on Gerald Aiken's cell phone, TT22 (identification discussed below), which showed that Gerald Aikens was at **Subject Premises 39** overnights from October 2020 through March 29, 2021.[35] Agents intercepted communications regarding Gerald Aikens supplying narcotics to Jamar Howard. Some of these drug transactions and agents' observations are noted below for purposes of establishing probable cause to search **Subject Premises 39** and **Subject Vehicle 36**.

---

[35] Agents obtained a search warrant for GPS location data for TT22 on October 2, 2020; that warrant expired on or about November 15, 2020. Agents obtained a second warrant for GPS location data for TT22 on February 25, 2021, and are still receiving location data. Agents did not receive data from mid-November 2020 through February 25, 2021. GPS location data for TT22 showed that Gerald Aikens flew from Seattle, Washington, to Los Angeles, California, on March 29, 2021. Law enforcement database checks, including CLEAR, do not indicate that Gerald Aikens changed his residence. Additionally, open source research shows that **Subject Premises 39** has not been listed for sale, indicating that Gerald Aikens continues to reside at **Subject Premises 39** and has merely taken a trip to Los Angeles. The search warrant for the person of Gerald Aikens will only be executed on Gerald Aikens if he returns to and is located in this District within the period covered by the warrant.

AFFIDAVIT OF SHAWNA MCCANN - 82
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

151.     On September 4, 2020, at approximately 5:49 p.m., Gerald Aikens using TT22 sent the following text message to Jamar Howard at TT14: "U still want on…. got a new batch…..just letting u know" (Session 327). Based on my training and experience, I believe that Gerald Aikens contacted Jamar Howard to advise Jamar Howard that he had narcotics to sell and asked if Jamar Howard needed a re-supply of narcotics. I know that the term "on" is a common term used by drug traffickers to refer to their current level of narcotics supply, namely that a trafficker needing or wanting "on" means that he/she is out of narcotics and needs to be resupplied. On September 5, 2020, Jamar Howard responded: "Ok bro I am going to get with you."[36]

152.     On September 29, 2020, at approximately 2:49 p.m., Gerald Aikens using TT22 called Jamar Howard at TT14. (Session 5367.) During this call the following discussion took place:

TT22: What the hell you doing on my side dawg [selling narcotics in Gerald Aikens's territory].

TT14: Man I can't even make a quick jug [drug deal]. I'm getting the hell up out of here man.

TT22: Where you going man?

TT14: I just got off work. Headed to, uh, the crib.

TT22: Oh serious?

TT14: Yep.

TT22: Ok ok. Yeah I ain't making no noise. I'm headed right back home, man, shit.

TT14: That's what's up.

---

[36] Agents did not intercept this text message. Agents found this message when they conducted a search of Jamar Howard's cell phone devices seized during a search of his residence and vehicle and identified additional conversations between Jamar Howard and TT22, which was stored in the contact list in TT14 as "Man G," possibly in a reference to the name "Gerald."

1    TT22: I'm going to tap in with you about something [talk to Jamar Howard about
2    a narcotics deal] in about, probably about a day or two.
3    TT14: Alright.
4    TT22: I'm going to run it cross you.
5    TT14: Yep.
6    TT22: Ok.

7    153.    Prior to this call, at approximately 1:33 p.m., Jamar Howard using TT14
8    spoke with Kevin Gipson at TT6 and agreed to meet at Kevin Gipson's apartment
9    complex in Beacon Hill, Seattle, Washington in about 15 minutes. (Session 5348.) Earlier
10   that morning at approximately 10:44 a.m., Kevin Gipson using TT6 called Jamar Howard
11   at TT14 and asked to buy a "quarter of soft" from Jamar Howard, to which Jamar
12   Howard agreed. (Session 5297.) Based on my training and experience, I know that the
13   term "tap in" with someone is a common term used by drug traffickers to refer to
14   discussing or engaging in a narcotics transaction with another person; that the term
15   "quarter" refers to a quarter ounce; and that the term "soft" refers to powder cocaine, as
16   opposed to "hard," which is commonly used to refer to crack cocaine. Accordingly,
17   agents believe that when Jamar Howard discussed making a "jug" with Gerald Aikens,
18   Jamar Howard was referring to a narcotics transaction in which Jamar Howard sold a
19   quarter of an ounce of powder cocaine to Kevin Gipson and received narcotics proceeds
20   in exchange. Since Jamar Howard lives in Renton and Gerald Aikens lives in Seattle (as
21   does Kevin Gipson), and based on the tone of the conversation, I believe that Gerald
22   Aikens was giving Jamar Howard a hard time, in jest, for selling cocaine in the Seattle
23   area where Gerald Aikens lives.

24   154.    A review of one of Jamar Howard's cell phones seized during the search of
25   his residence, **Subject Premises 10**, and his vehicle, Subject Vehicle 12, which was
26   identified as TT14 based on the downloaded phone details, showed additional text
27   messages between Jamar Howard and Gerald Aikens using TT22. For example, on
28   August 31, 2020, Gerald Aikens using TT22 texted Jamar Howard: "Whats good bro.... i

AFFIDAVIT OF SHAWNA MCCANN - 84
USAO #2019R01083

need a chef [to cook powder cocaine into crack cocaine] u know a good one." Jamar Howard using TT14 sent a text message in response, but the content was not visible on the phone extraction; however, after Jamar Howard's text message, Gerald Aikens using TT22 replied, "Ill come holla." Moreover, on August 18, 2020, Gerald Aikens using TT22 texted Jamar Howard: "206 602 7880 [TT22] new phone # Gerald." Additionally, TT22 is subscribed to "Gerald C. Aikens" at **Subject Premises 39.**

155.    In October 2020, agents obtained a search warrant for GPS location data for TT22, which consistently indicated that the user of TT22 was frequenting and staying overnight at **Subject Premises 39**. Additionally, Washington Department of Licensing records showed that **Subject Premises 39** was the listed address for Gerald Aikens. On October 20, 2020, GPS location data for TT22 indicated that was located near Melrose Avenue in Seattle. Agents observed **Subject Vehicle 36** in the vicinity of the GPS location data for TT22. At approximately 2:49 p.m., agents observed a male, whom they identified as Gerald Aikens based on a comparison to his driver's license photograph, walk to **Subject Vehicle 36** and get inside. Gerald Aikens drove off in **Subject Vehicle 36**. The next GPS location data for TT22 indicated the phone had left the area, indicating that Gerald Aikens was the user of TT22.

156.    Agents obtained renewed GPS location data for TT22 beginning on or about March 2, 2021, which showed that Gerald Aikens continues to frequent **Subject Premises 39**, including staying overnight at the premises through the present. On February 19, 2021, agents observed **Subject Vehicle 36** parked in front of **Subject Premises 39**, indicating that Gerald Aikens still resides here.

157.    On March 17, 2021, at approximately 4:54 p.m., GPS location data for TT22 put Gerald Aikens within range of Puget Sound Electrical Joint Apprenticeship and Training Committee, located at 550 Southwest 7th Street, in Renton. At approximately 5:15 p.m., agents observed **Subject Vehicle 36** parked outside of the building. At approximately 8:21 p.m., agents observed Gerald Aikens, identified based on a comparison to his driver's license photograph, exit the building with approximately ten

AFFIDAVIT OF SHAWNA MCCANN - 85
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

other males. Gerald Aikens spoke with one of the males in the parking lot for several minutes before getting into **Subject Vehicle 36**. At approximately 8:27 p.m., Gerald Aikens drove away eastbound on Southwest 7th Street in **Subject Vehicle 36**. At approximately 8:32 p.m., agents observed Gerald Aikens pull into a strip mall parking lot on the northeast corner of Southwest 7th Street and Edwards Street. Gerald Aikens parked next to another vehicle in the lot. Agents bypassed Gerald Aikens in the parking lot so as not to be detected; by the time agents were able to turn around and drive by the parking lot again, which took less than five minutes, Gerald Aikens was already exiting the parking lot and heading northbound. At approximately 8:40 p.m., Gerald Aikens pulled into another parking lot on the west side of the 400 block of Rainier Avenue North. Again, agents bypassed Gerald Aikens in the parking lot so as not to be detected; by the time agents were able to turn around and drive by the parking lot again, which took less than five minutes, Gerald Aikens was no longer in the parking lot. At approximately 9:00 p.m., agents observed Gerald Aikens exit **Subject Vehicle 36** and go inside his residence at **Subject Premises 39**. Around that same time, GPS location data put TT22 within range of **Subject Premises 39**. Accordingly, agents believe Gerald Aikens still resides at **Subject Premises 39** and uses **Subject Vehicle 36.** Based on my training and experience, I believe that Gerald Aikens's two brief stops in parking lots for less than five minutes each and with no apparent legitimate purpose for the stop, such as visiting a store, were indicative of drug trafficking activity. I know that parking lots are common locations for Michael Walker DTO members to conduct drug transactions by meeting car-to-car or having the drug purchaser get in the drug supplier's car to conduct the drug transaction, and I also know that these transactions are brief, lasting only a few minutes.

158.    On March 19, 2021, the Pen Register and Trap and Trace data for TT22 showed that Gerald Aikens received an incoming call from TT14, which agents believe was being used by Jamar Howard. Gerald Aikens using TT22 then sent two outgoing text messages to TT14 followed by an outgoing call to TT14 that was answered and lasted

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

about 2 minutes and 11 seconds. This call was followed by an incoming call from TT14, which lasted only 6 seconds, indicating this call may have been an accidental dial by TT14 after completing the previous call with Gerald Aikens. Gerald Aikens then made two outgoing calls to TT14, which lasted for a little more than 30 seconds each. During the search of Jamar Howard's residence and vehicle in November 2020, agents seized a cell phone device that was assigned TT14 as its phone number. However, based on my training and experience, I know that an individual can carry over a specific phone number to a different device such that, after agents seized the device that Jamar Howard used to communicate with assigned phone number TT14, Jamar Howard could have purchased a new device and kept TT14 as his phone number, allowing him to continue contacting others using TT14, including Gerald Aikens. A check of CLEAR on March 24, 2021, showed that TT14 is still subscribed to the same subscriber that it was in October and November 2020, when agents knew TT14 was being used by Jamar Howard.

159.    On March 21, 2021, GPS location data for TT22 showed that at approximately 8:52 a.m., Gerald Aikens left **Subject Premises 39,** travelled about 200 miles to Coulee, Washington, stayed in Coulee for only a few minutes, and then drove directly back to **Subject Premises 39**, arriving at around 7:22 p.m. Based on my training and experience, I know that the route from western Washington to eastern Washington is a common drug trafficking route and that eastern Washington is a hub of narcotics coming from California into Washington state, such that once the narcotics loads coming from California reach eastern Washington, the narcotics loads are offloaded in eastern Washington and then redistributed in smaller loads throughout the state. Based on the intercepted communications above establishing that Gerald Aikens has access to supplies of cocaine and the quick trip he made to eastern Washington, driving about 200 miles and only staying in Coulee City for a few minutes before returning to Seattle, I believe this activity is indicative of Gerald Aikens likely making a trip to eastern Washington to pick up a narcotics load and drive back to Western Washington.

AFFIDAVIT OF SHAWNA MCCANN - 87
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

160.    I know based on my training and experience, that drug traffickers frequently keep their narcotics, narcotics proceeds, and firearms in their residences, vehicles, and stash locations in order to protect their supply and to have the narcotics on hand for transactions. I also know that drug traffickers maintain records and other trafficking-related materials in their premises, including residences, for a long period of time, including current and prior cell phone devices that contain text messages and contact lists of drug trafficking associates and pay-owe sheets. Based on the above-referenced intercepted communications, I believe that Gerald Aikens is a cocaine source of supply working with Jamar Howard and that Gerald Aikens likely keeps his narcotics supply and proceeds in **Subject Premises 39** and **Subject Vehicle 36**.

**H.    Davon Evans's Residences and Vehicle**

161.    During this investigation, based on physical surveillance and intercepted communications discussed in more detail below, agents identified Davon Evans's (aka Devoe) primary residence as 601 25th Avenue E, Seattle, Washington (**Subject Premises 42**), his secondary residence and/or stash house location as 6430 S 118th Street, Seattle, Washington (**Subject Premises 43**), and his vehicle as a blue 2006 Dodge Ram 1500 truck bearing Washington license plate C55634E registered to Davon Evans at **Subject Premises 42** (**Subject Vehicle 41**). Agents obtained GPS location data on Davon Evans's cell phone, TT47 (identification discussed below), during November and December 2020, which showed that Davon Evans frequented **Subject Premises 42** and **43** during those months, including staying overnights and making quick trips to and from both residences. During this investigation, agents intercepted a communication regarding Davon Evans supplying narcotics to Yusef Parrish. This intercepted call and agents' observations are noted below for purposes of establishing probable cause to search **Subject Premises 42** and **43** and **Subject Vehicle 41**.

162.    Davon Evans has felony convictions for assault and solicitation of murder.

/ / /

/ / /

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1
### 1.    Communications Regarding Drug Trafficking on TT47

2    163.    On October 31, 2020, at approximately 1:33 p.m., the day after agents

3  searched Curtis Snipes's residence and person, Davon Evans using phone number (206)

4  661-2702 (TT47) called Yusef Parrish at TT43. (Session 397.) During this call the

5  following discussion took place:

6    TT47: I'm just checkin on you. Glad you answered.

7    TT43: Why? What's going on?

8    TT47: Er, yesterday went and got Dirty[37] [law enforcement stopped Curtis

9    Snipes].

10    TT43: Yeah, I heard.

11    TT47: Yeah, I'm checkin on you, you know.

12    TT43: They released him [Curtis Snipes].

13    TT47: Oh, they released him? That's a great thing, then.

14    TT43: Yeah, somethin' like that, six or seven hours later or some shit.

15    TT47: That's a great thing then.

16    TT43: That's what I heard. I heard they went up, and, uh, went up in his [Curtis

17    Snipes's] house while they wuz, you know, hollerin' at him and they didn't find

18    nothin but a gun.

19    TT47: Oh, a gun--well, that's bad, but, yeah, that's a great [unintelligible], that's a

20    great thing.

21    TT43: Oh, you'd rather find a gun than whatcha guys talkin' about what you're

22    looking for [kilograms of narcotics].

23    TT47: Believe that, you, motherfucker, right.

24

25

26  _____

27  [37] Agents have intercepted other communications in which Curtis Snipes is referred to as Dirty such that agents
28  believe Dirty is another alias for Curtis Snipes.

AFFIDAVIT OF SHAWNA MCCANN - 89
USAO #2019R01083

TT43: I don't know what you talkin' about, so, to hey, [unintelligible] N*, you talkin, what you guys talkin about and we black, every black man gonna have that [a gun] in his house. I mean, shit--

TT47: Yeah. Yeah, right, especially with what's goin on now in the world.

TT43: Yeah, you already know it though, so as long as there ain't nuthin' else [narcotics] up in there, shit.

TT47: Yeah.

TT43: I told him, though, you guys got the wrong cat.

TT47: Yeah, real, for real, for real, yeah.

TT43: Yeah, I heard that.

TT47: Yeah, yeah. I wuz, like, let me check on my guy [referencing either his supplier or Parrish], man. But they released him. That's great then.

TT43: Yeah, that's what I heard and everything but, shit, I-I hollered at him [Curtis Snipes] but I ain't really been hollering at him like that [haven't bought cocaine from Curtis Snipes in a while], so--

TT47: Yeah, yeah. No, he [Curtis Snipes] called me a couple weeks of weeks ago to say I'm just checking on you, bro. And I said good looking, you know.

TT43: Yeah.

TT47: You know.

TT43: Yeah. Yeah, my sister called me and told me, er, er, while I was goin to get a haircut. She said they picked up old Cuddy [Curtis Snipes]. I said "What?"

TT47: Yeah.

TT43: Yeah, they [police] interrogated him [Curtis Snipes] for six, seven hours, talkin' about, uh, they were lookin', that he'd been doing something, but, they--

TT47: Yeah.

TT43: —he ain't have, but he ain't been... ain't nobody been arrested or nuthin and, this and that, so I don't know.

TT47: He's [Curtis Snipes] good, then?

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

TT43: Yeah.

TT47: Just now, just stop, woot, everything [Curtis Snipes should stop drug trafficking due to law enforcement detection].

TT43: Yeah, I already know.

TT47: Cuz, they [police] on you now.

TT43: Yeah, man, come on. [laughs]

TT47: They on you, just stop--

TT43: Yeah, I already know.

TT47: —stop, then, they on you, then.

TT43: Yes, somebody's in there, you can, you can, er, uh, you be usin' and comin', now, y-you been pushing a little too much buddy [selling/moving too much cocaine].

TT47: Yeah, yeah, just, just stop now.

TT43: Yeah.

TT47: Just stop, you know.

TT43: Yeah.

TT47: Yeah.

TT43: Thought you wuz callin' to tell me something else [thought Davon Evans was calling to discuss their cocaine trafficking activities, not Curtis Snipes].

TT47: Uh, uh, no, we got a couple weeks [before needing more cocaine or before more cocaine arrives in Seattle]. I got you though [will supply Yusef Parrish with cocaine when the next load comes in].

TT43: Alright, hit me up [call me].

TT47: Okay.

TT43: Alright.

164.     During this call, Davon Evans demonstrated that he understands drug trafficking and that he is aware of the members and associates of Yusef Parrish, Curtis Snipes, and other members of the Michael Walker DTO investigation, such that Davon

AFFIDAVIT OF SHAWNA MCCANN - 91
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Evans is himself a member and/or associate of the Michael Walker DTO. In particular, Davon Evans's comments indicate that he was aware of the law enforcement search of Curtis Snipes; it is clear that the two were discussing Curtis Snipes because Yusef Parrish then accurately reported details relating to the arrest, length of detention, and release of Curtis Snipes, as well as a location that law enforcement searched and what investigators located there—only a firearm. Yusef Parrish indicated that he thought Davon Evans was calling for a different reason, likely to discuss their cocaine trafficking operations. I believe that when Davon Evans referenced that they have a couple of weeks but that he "got" Yusef Parrish, that Davon Evans meant that he will be getting more cocaine in a couple of weeks and agreed to supply Yusef Parrish with cocaine when the new load came in.

### 2. *Identification of Davon Evans as User of TT47*

165.    FBI Task Force Office Jon Huber, a Gang Unit Detective with Seattle Police Department, is familiar with the voice of Davon Evans from prior investigations and communications with Davon Evans in person and over the phone. TFO Huber listened to the intercepted call discussed above and recognized the voice of the male using TT47 as Davon Evans. Based on Davon Evans's history and both historical and recent information from confidential sources, TFO Huber has knowledge that Davon Evans is involved in drug trafficking activity and goes by the alias "Devoe."

166.    Based on wire and electronic interceptions of Yusef Parrish using TT43, agents know that Yusef Parrish traffics cocaine and has multiple sources of supply of cocaine, including Richard Lewis and Curtis Snipes. On November 21, 2020, investigators intercepted calls between Richard Lewis using TT53[38] and Yusef Parrish using TT43, which led investigators to believe that Richard Lewis was going to stop by

---

[38] Agents obtained a search warrant for GPS location data for TT53 and identified the user as Richard Lewis based on physical surveillance observing Richard Lewis, identified based on a comparison to his driver's license photograph, in the same area as the GPS pings at different locations and times.

Yusef Parrish's house later that evening to deliver a half kilogram of cocaine to Yusef Parrish. (Sessions 1640, 1642, 1644.) Investigators conducted physical and remote video surveillance on Richard Lewis that evening and observed Richard Lewis and Yusef Parrish meet outside of Yusef Parrish's residence. After this meeting, on November 21, 2020, investigators obtained and executed federal search warrants for Yusef Parrish's residence and vehicle. In Yusef Parrish's residence and vehicles, investigators seized cocaine, digital scales, seven cell phones, three firearms, and almost $9,000 in cash. Investigators have subsequently obtained a federal search warrant for the cell phone devices seized from Yusef Parrish, and one of those devices (evidence item 1B207) contained a stored contact under the name "Devoe" for TT47.

167.    Pursuant to a federal warrant, agents obtained GPS location data for TT47 in November and December 2020, which showed that the user, Davon Evans, frequented **Subject Premises 42** and **43** from November 2020 to December 2020, including staying overnights at both residences and making quick trips to and from both residences. The pattern of Davon Evan's movements indicated to agents that Davon Evans primarily resided at **Subject Premises 42** but frequently visited **Subject Premises 43**, including late at nights and early in the mornings and for short durations. This pattern is consistent, based on my training and experience, with Davon Evans using **Subject Premises 43** as a stash location for narcotics and/or narcotics proceeds by making short trips to and from this residence to pick up narcotics to sell to customers. I know that drug traffickers often maintain stash locations in order to avoid having a large quantity of narcotics on their person or in their vehicles at any given time in the event they are stopped by law enforcement or robbed by a rival drug trafficker.

168.    On March 3, 2021, at approximately 4:57 p.m., agents observed **Subject Vehicle 41**, a blue Dodge Ram truck bearing Washington license plate C55634E registered to Davon Evans at **Subject Premises 42**, parked at **Subject Premises 43**, indicating that Davon Evans was still frequenting **Subject Premises 43**. Additionally, Davon Evans currently lists **Subject Premises 42** as his residence on his driver's license

AFFIDAVIT OF SHAWNA MCCANN - 93
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

and vehicle registration. On March 4, 2021, at approximately 5:27 a.m., agents observed **Subject Vehicle 41** parked directly in front of **Subject Premises 42**, indicating that Davon Evans is still residing at **Subject Premises 42**.

169.    On March 5, 2021, at approximately 12:19 a.m., and on March 8, 2021, at approximately 1:08 a.m., agents observed **Subject Vehicle 41** parked in the driveway of **Subject Premises 42**, indicating that Davon Evans still resides overnight at this address.

170.    On March 7, 2021, agents met with CS3[39] who was familiar with Davon Evans. CS3 advised agents that Davon Evans is a drug trafficker and frequents the Skyway area (where **Subject Premises 43** is located). CS3 reported that Davon Evans is supplied up to nine ounces of cocaine at a time and that Davon Evans always has money from narcotics transactions. CS3 reported that Davon Evans was a Madison Street Gangster, a gang which eventually became the Union Street gang set, and that Davon Evans was an original member of the Union Street gang.

171.    On March 8, 2021, at approximately 11:30 a.m., agents observed a silver 2002 Toyota Sequoia bearing Washington State license plate BTC9066 parked in the driveway of **Subject Premises 43**. A records check revealed that the vehicle is registered to Glenn E Watson at 30409 155 Pl SE, Kent, Washington. The driver of the vehicle was observed to be a male with shoulder length dreadlock style hair and appeared to be waiting for someone. At approximately 11:36 a.m. agents observed **Subject Vehicle 41** arrive at **Subject Premises 43**. As **Subject Vehicle 41** approached the residence, the Sequoia backed out of the driveway and parked on S 118 St and **Subject Vehicle 41**

---

[39] CS3 has been a confidential source with SPD and FBI for over six years. CS3 has worked as a paid informant. CS3 has provided reliable information in the past, including information that led to successful prosecutions of a number of individuals; CS3 has also conducted more than five controlled buys under the supervision of agents. CS3 has felony convictions involving assault/robbery, firearm possession, and witness tampering (all more than 7 years ago). CS3 also has gross misdemeanor convictions for no contact order violations, obstructing law enforcement, and reckless endangerment (all more than 7 years ago) and several misdemeanor and other minor convictions for assault, driving violations, code violations, and obstructing a public servant (all more than 7 years ago). The identity of CS3 is not being disclosed in this Application. I believe that doing so could place CS3's safety and security in jeopardy and compromise this and other ongoing investigations in which CS3 is involved and is being utilized.

AFFIDAVIT OF SHAWNA MCCANN - 94
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

parked in the driveway of **Subject Premises 43**. Agents observed Davon Evans, identified based on a comparison to his driver's license photograph, exit the driver's seat of **Subject Vehicle 41** and enter the front door of **Subject Premises 43**. It appeared that Davon Evans used a key to open the door. At approximately 11:38 a.m. agents observed Davon Evans exit **Subject Premises 43**, get back into **Subject Vehicle 41** and leave eastbound on S 118 St with the Sequoia following him.

172.    On March 9, 2021, at approximately 4:00 p.m., agents observed **Subject Vehicle 41** parked on the street in front of **Subject Premises 42**. At approximately 8:04 p.m., agents observed a sedan arrive at **Subject Premises 42**, back up and park in the driveway. Agents observed Davon Evans, identified based on a comparison to his driver's license photograph, exit the sedan and stand in the driveway of **Subject Premises 42**. Agents observed that Davon Evans was wearing a bullet proof vest on the outside of his clothing and was looking down the street and into the windows of passing and parked cars. Agents believe Davon Evans was attempting to see if anyone followed him to **Subject Premises 42**. Davon Evans stood in the middle of the street such that passing cars had to drive around him. After looking around for a few minutes, Davon Evans went to the front door of **Subject Premises 42**, opened the door with a key, and went inside the residence. Agents are familiar with a prior drive-by shooting incident in 2019 in which Davon Evans's prior residence was shot at; agents believe this incident was likely drug and/or gang related and was the cause of Davon Evan looking around and wearing a bullet proof vest.

173.    I know based on my training and experience, that drug traffickers frequently keep their narcotics, narcotics proceeds, and firearms in their residences, vehicles, and stash locations in order to protect their supply and to have the narcotics on hand for transactions. Based on the above-referenced intercepted communications, I believe that Davon Evans is a cocaine trafficker and that Davon Evans likely keeps his narcotics supply and proceeds in **Subject Premises 42** and **43** and **Subject Vehicle 41**.

/ / /

AFFIDAVIT OF SHAWNA MCCANN - 95
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## I.   Tibor Jackson's Residence and Vehicle

174.   During this investigation, based on physical surveillance and intercepted communications discussed in more detail below, agents identified Tibor Jackson's residence as 4842 Rural Road Southwest, Apt. 207, Tumwater, Washington (**Subject Premises 44**) and his vehicle as a black 2014 Hyundai Santa Fe bearing Washington license plate BFL2212 registered to Jennifer A. Scott at 3211 Southeast Kamilche Point, Shelton, Washington (**Subject Vehicle 42**). On March 1, 2021, agents obtained a search warrant for GPS location data on Tibor Jackson's cell phone, TT74 (identification discussed below), which showed that Tibor Jackson frequented **Subject Premises 44** from around March 14, 2021, to the present, including staying overnight, and agents observed Tibor Jackson walk up the stairs towards **Subject Premises 44**. During this investigation, agents have intercepted communications regarding Tibor Jackson getting supplied cocaine from Jamar Howard. These intercepted calls and agents' observations are noted below for purposes of establishing probable cause to search **Subject Premises 44** and **Subject Vehicle 42**.

175.   Tibor Jackson has ten felony convictions for conspiracy drug possession, drug possession, drug possession with intent to manufacture/deliver, vehicle theft, and possession of stolen firearm.

### 1.   Communications Regarding Drug Trafficking on TT74

176.   On September 4, 2020, at approximately 11:33 a.m., Tibor Jackson using phone number (206) 602-5055 (TT74) sent the following text message to Jamar Howard at TT14: "Come thru cuddy heezy [half ounce of cocaine]." (SID 122.) Jamar Howard replied, "Ok 15min." (SID 114.) At approximately 11:38 a.m., Tibor Jackson using TT74 texted Jamar Howard at TT14, "Imo mw back 1230 I'm there." (SID 110.) At approximately 11:43 a.m., Jamar Howard at TT14 received an incoming call from Tibor Jackson using TT74. (Session 200.) During this call, Tibor Jackson said, "I got here early, I'm at the [hotel] room…it's some good shit [good quality cocaine] though right bro?" Jamar Howard said, "yeah." Tibor Jackson said, "I'm like a hundred bucks short,

AFFIDAVIT OF SHAWNA MCCANN - 96
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

but I'll give it to you today." Jamar Howard said, "yep, how do you want it [powder or crack cocaine]?" Tibor Jackson said, "I want some soft, some good soft [powder cocaine]." Jamar Howard said he was going to "leave here in about 15 minutes." At approximately 1:12 p.m., Jamar Howard at TT14 received an incoming call from Tibor Jackson using TT74. (Session 225.) The call did not appear to be answered; however, the cell site location data for TT14 generated from this call showed that Jamar Howard was in range of the Larkspur Landing Hotel located at 1701 East Valley Road, Renton, Washington. As set forth below, agents later observed Tibor Jackson at the Larkspur Landing Hotel and believe this was the hotel "room" Tibor Jackson referenced during the call. At approximately 1:13 p.m., Tibor Jackson using TT74 texted Jamar Howard at TT14: "U not comin cuddy. It's been 2 hours. If not it's good." (SID 258, 261, 264.) At approximately 8:48 p.m., Jamar Howard using TT14 texted Tibor Jackson at TT74: "What's good it's all good now [has cocaine to sell]." (SID 280.)

177.    Based on my training and experience, I believe that Tibor Jackson asked to buy a half ounce of powder cocaine from Jamar Howard and that Tibor Jackson was $100 short for the amount of narcotics he was purchasing but agreed to get the $100 to Jamar Howard later that day; based on the intercepted communications I believe that Jamar Howard and Tibor Jackson did not eventually conduct the drug deal that day but that Jamar Howard said that evening that it was "good now," indicating that Jamar Howard had obtained cocaine to sell to Tibor Jackson.

178.    On September 6, 2020, at approximately 2:17 p.m., investigators intercepted an outgoing call from Jamar Howard using TT14 to Tibor Jackson using TT74. (Session 539.) During the call, Tibor Jackson asked, "What's up man, is it [cocaine] the good shit?" Jamar Howard responded, "Yes, sir." Tibor Jackson then complained that the last time he waited for hours and that Jamar Howard did not get back to him until a day later. Tibor Jackson asked, "What you gonna charge me for a ball [an eightball or 1/8 ounce of cocaine] so I can come back?" Jamar Howard said, "Give me two twenty five, two twenty [$225 or $220]." Tibor Jackson asked, "Is it some good shit

[cocaine]?" Jamar Howard responded, "Yep." Tibor Jackson stated, "And then you know from there, you know, I'll make a jig [drug deal] or two, I'll be calling you back today to flip it to get a quarter [quarter ounce of cocaine]. I'm working on, I'm about to flip my way up real fast." Jamar Howard informed Tibor Jackson, "Well I'm headed from town, coming from town now. Just got to snatch and grab it [cocaine], then I'll be set. You at the room [hotel]?" Tibor Jackson stated, "Yeah, I'm at the room." Based upon my training and experience, I believe that Tibor Jackson requested 1/8 ounce of cocaine from Jamar Howard and would be requesting an additional quarter ounce of cocaine after conducting some drug transactions of his own. Jamar Howard agreed to go to Tibor Jackson's hotel room to supply him with cocaine.

179.    That same day, at approximately 2:32 p.m., Tibor Jackson using TT74 texted Jamar Howard at TT14: "Need a q [quarter ounce of cocaine] cuddy." (SID 193.) At approximately 3:45 p.m., Jamar Howard texted back, "Ok on my way." (SID 237.) At approximately 4:17 p.m., Tibor Jackson using TT74 called Jamar Howard at TT14. (Session 552.) Jamar Howard said, "Come on." Tibor Jackson asked, "You outside?" Jamar Howard affirmed. Less than ten minutes after this call, GPS location data for TT14 indicated that Jamar Howard was leaving the vicinity of the Larkspur Landing Hotel located at 1701 East Valley Road, Renton, Washington. Investigators did not locate Jamar Howard during the search of the area, indicating that Jamar Howard had left before investigators arrived at the hotel. They did, however, locate a black Chevrolet Cobalt bearing Washington state license plate number BQX2286 registered to Shante Saunders at 2307 Northeast 4th Street, #H207, Renton, Washington, which they had observed Tibor Jackson driving in the recent past. At approximately 5:28 p.m., agents observed a male whom they recognized as Tibor Jackson, carrying a backpack, exit the hotel with two other males. Tibor Jackson and the two males got into a black BMW with no license plates and drove out of the hotel parking lot.

180.    Later that night, at approximately 8:52 p.m., Tibor Jackson using TT74 called Jamar Howard at TT14. (Session 578.) During the call, Tibor Jackson said, "I'm

AFFIDAVIT OF SHAWNA MCCANN - 98
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

about to cook this one down and then need some soft [going to cook powder cocaine into crack cocaine, and then will need more powder cocaine]." Jamar Howard replied, "I got you." At approximately 10:08 p.m., Tibor Jackson using TT74 called Jamar Howard at TT14. (Session 591.) Jamar Howard told Tibor Jackson that he would be there in five minutes. Based upon my training and experience, I believe that Tibor Jackson obtained more cocaine from Jamar Howard, as requested earlier in the day.

181.    On March 7, 2021, agents met with CS3 who was familiar with Tibor Jackson. CS3 advised that Tibor Jackson is a street level crack dealer who is supplied between one and two ounces of cocaine at a time. CS3 advised that Tibor Jackson is from the Central District of Seattle.

### 2.    Identification of Tibor Jackson as User of TT74

182.    Agents reviewed a Renton Police Department report from November 6, 2020, regarding a vehicle theft involving Tibor Jackson and his sister as the victims, and Tibor Jackson's sister reported Tibor Jackson's phone number as TT74.

183.    On March 4, 2021, at approximately 10:20 p.m., GPS location data indicated that TT74 was in the vicinity of an apartment in Tacoma, Washington. Around that same time, agents observed a male, matching the physical description of Tibor Jackson based on his driver's license information, exit an apartment unit, get into a 2019 Kia Forte bearing Washington license plate BNK0897 registered to Monica Smith at 28417 18th Avenue S, Apt E103, Federal Way, Washington, and drive out of the apartment complex parking lot. It was too dark for agents to positively identify this male as Tibor Jackson. A few minutes later, GPS location data for TT74 indicated that the device had left the area, consistent with when the male, matching Tibor Jackson's description, left. A review of the law enforcement database CLEAR showed that Monica

AFFIDAVIT OF SHAWNA MCCANN - 99
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Smith was associated with the apartment unit in Tacoma, Washington from November 2020 to the present and was dating Tibor Jackson.[40]

184.    On March 14, 2021, at approximately 12:00 p.m., GPS location data for TT74 indicated Tibor Jackson was in the vicinity of the Stonebrook Apartments in Tumwater, Washington (the apartment complex where **Subject Premises 44** is located). The range of the GPS data for TT74 was very accurate and consistent with one area of a specific building within the complex, **Subject Premises 44**.

185.    On March 15, at approximately 8:15 p.m., GPS location data for TT74 indicated that the device was traveling north and had just left the area of **Subject Premises 44**. Agents attempted to locate Tibor Jackson over the next couple hours in Tacoma and Seattle. GPS location data for TT74 indicated Tibor Jackson was making brief stops at numerous locations. At approximately 10:30 p.m., GPS location data for TT74 indicated Tibor Jackson was in the vicinity of 2nd Avenue West and West Olympic Place in Seattle. Agents observed a black 2014 Hyundai Santa Fe bearing Washington license plate BFL2212 (**Subject Vehicle 42**) parked on the side of the road with the lights on. **Subject Vehicle 42** was registered to Jennifer Alexis Scott at an address in Shelton, Washington, but Jennifer Scott's Washington Department of License address was listed as 4842 Rural Road Southwest, Apartment 207, Tumwater, Washington (**Subject Premises 44**). At approximately 10:35 p.m., agents observed **Subject Vehicle 42** drive off. At approximately 11:30 p.m., GPS location data for TT74 indicated Tibor Jackson was in the vicinity of Martin Luther King Jr. Way South and South 129th Street in Seattle. Agents arrived and observed **Subject Vehicle 42** leaving a parking lot at that location. At approximately 1:44 a.m., agents observed **Subject Vehicle 42** park in front

---

[40] On or about February 2, 2021, officers from Tacoma were dispatched to a possible domestic incident at the same apartment unit in Tacoma. The officer spoke with Monica Smith who stated that her boyfriend, Tibor Jackson, was trying to take her newborn baby from her and had pulled her hair and thrown a book at her during an argument. The officers did not observe any marks on Monica Smith or signs of an altercation in the apartment. The officers spoke with Tibor Jackson who was present and who denied Monica Smith's statement.

AFFIDAVIT OF SHAWNA MCCANN - 100
USAO #2019R01083

of **Subject Premises 44** and an individual going up the stairs towards **Subject Premises 44**. It was too dark for agents to identify this individual. Shortly thereafter, GPS location data for TT74 showed that its user, Tibor Jackson, was at **Subject Premises 44**. Based on my training and experience, I believe that Tibor Jackson's pattern of movement, specifically making quick stops late at night in various parking lots without any apparent legitimate purpose, is indicative of drug trafficking activities.

186.    On March 16, 2021, at approximately 6:59 p.m., GPS location data for TT74 indicated Tibor Jackson was in the vicinity of Rainier Avenue South and South 115th Street in Seattle. Agents observed **Subject Vehicle 42** traveling northbound on Rainier Avenue South. Agents followed **Subject Vehicle 42** to 36th Avenue South and South Dakota Street. **Subject Vehicle 42** parked at that intersection and appeared to be waiting for someone. Agents drove by **Subject Vehicle 42** and identified Tibor Jackson as the only person in the vehicle, based on a comparison to his driver's license photograph. Around that same time, GPS location data indicated that TT74 was in the same location as Tibor Jackson, confirming that Tibor Jackson was the user of TT74.

187.    On March 18, 2021, at approximately 8:52 a.m., agents observed **Subject Vehicle 42** park in front of **Subject Premises 44** and Tibor Jackson, identified based on a comparison to his driver's license photograph, exit **Subject Vehicle 42** and walk up the stairs towards **Subject Premises 44**.

188.    I know based on my training and experience, that drug traffickers frequently keep their narcotics, narcotics proceeds, and firearms in their residences, vehicles, and stash locations in order to protect their supply and to have the narcotics on hand for transactions. I also know that drug traffickers maintain records and other trafficking-related materials in their premises, including residences, for a long period of time, including current and prior cell phone devices that contain text messages and contact lists of drug trafficking associates and pay-owe-sheets. Based on the above-referenced intercepted communications, I believe that Tibor Jackson is a cocaine

AFFIDAVIT OF SHAWNA MCCANN - 101
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

trafficker and that Tibor Jackson likely keeps his narcotics supply and proceeds in **Subject Premises 44** and **Subject Vehicle 42**.

## J.   Terry Cameron's Residence and Vehicle

189.    During this investigation, based on physical surveillance and intercepted communications discussed in more detail below, agents identified Terry Cameron's residence as 1013 South 316th Street, Federal Way, Washington (**Subject Premises 45**) and his vehicle as a white 2005 Volvo XC90 bearing Washington state license plate number BVB0498, registered to Terry V. Cameron at **Subject Premises 45** (**Subject Vehicle 38**). On March 4, 2021, agents obtained a search warrant for GPS location data on Terry Cameron's cell phone, TT71 (identification discussed below), which showed that Terry Cameron frequented **Subject Premises 45** from around March 5, 2021, to March 28, 2021, including staying overnight.[41] During this investigation, agents have intercepted communications demonstrating that Terry Cameron is supplied cocaine from Yusef Parrish. These intercepted calls and agents' observations are noted below for purposes of establishing probable cause to search **Subject Premises 45** and **Subject Vehicle 38**.

190.    Terry Cameron has four felony convictions for drug possession with intent to manufacture/deliver and unlawful possession of a firearm.

### 1.   Communications Regarding Drug Trafficking on TT71

191.    On October 26, 2020, at approximately 1:52 p.m., Terry Cameron using phone number (206) 351-4043 (TT71) sent the following text message to Yusef Parrish at TT43: "Ready [for more cocaine]." (Session 146.) Yusef Parrish replied, "711 225 [meet at 7-Eleven store at 2:25 p.m.]." (Session 148.) As set forth below, agents identified these short communications to be code for arranging a drug transaction, specifically for Yusef

---

[41] GPS location data for TT71 showed that Terry Cameron flew from Seattle, Washington, to Houston, Texas, on March 28, 2021. Law enforcement database checks, including CLEAR, do not indicate that Terry Cameron changed his residence. Additionally, open source research shows that **Subject Premises 45** has not been listed for sale, indicating that Terry Cameron continues to reside at **Subject Premises 45** and has merely taken a trip to Houston.

AFFIDAVIT OF SHAWNA MCCANN - 102
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1 Parrish to supply Terry Cameron with cocaine at the 7-Eleven store near Yusef Parrish's

2 residence at the specified time, 2:25 p.m.

3     192.    On October 28, 2020, at approximately 9:37 a.m., Terry Cameron using

4 phone number TT71 sent the following text message to Yusef Parrish at TT43: "Ready

5 [for more cocaine]." (Session 256.) Yusef Parrish replied, "Safeway 1010 [meet at

6 Safeway store at 10:10 a.m.]." (Session 258.) Based on my training and experience, I

7 believe Terry Cameron arranged another drug transaction with Yusef Parrish to get

8 resupplied with cocaine. Later that same day at approximately 3:40 p.m., Terry Cameron

9 using phone number TT71 sent the following text message to Yusef Parrish at TT43:

10 "Ready put a quarter [for more cocaine and add a quarter ounce of cocaine to the usual

11 order]." (Session 287.) Yusef Parrish replied, "711 410 [meet at 7-Eleven at 4:10 p.m.]."

12 (Session 289.) Based on my training and experience, I believe Terry Cameron arranged

13 another drug transaction with Yusef Parrish to get resupplied with a quarter ounce of

14 cocaine.

15     193.    On October 29, 2020, Terry Cameron using phone number TT71 sent the

16 following text message to Yusef Parrish at TT43: "Ready [for more cocaine]." (Session

17 325.) Yusef Parrish replied, "711 450 [meet at 7-Eleven store at 4:50 p.m.]." (Session

18 327.) Based on my training and experience, I believe Terry Cameron arranged another

19 drug transaction with Yusef Parrish to get resupplied with cocaine.

20     194.    On October 30, 2020, at approximately 2:15 p.m., Terry Cameron using

21 phone number TT71 sent the following text message to Yusef Parrish at TT43: "Ready

22 put a quarter with it [for more cocaine and add a quarter ounce of cocaine to the usual

23 order]." (Session 357.) Yusef Parrish replied, "711 245 [meet at 7-Eleven store at 2:45

24 p.m.]." (Session 359.) Based on my training and experience, I believe Terry Cameron

25 arranged another drug transaction with Yusef Parrish to get resupplied with cocaine.

26     195.    On October 31, 2020, at approximately 1:27 p.m., Terry Cameron using

27 phone number TT71 sent the following text message to Yusef Parrish at TT43: "Ready

28 [for more cocaine]." (Session 393.) Yusef Parrish replied, "711 155 [meet at 7-Eleven

AFFIDAVIT OF SHAWNA MCCANN - 103
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

store at 1:55 p.m.]." (Session 395.) Based on my training and experience, I believe Terry Cameron arranged another drug transaction with Yusef Parrish to get resupplied with cocaine.

196.    On November 1, 2020, at approximately 11:32 a.m., Terry Cameron using phone number TT71 sent the following text message to Yusef Parrish at TT43: "Ready [for more cocaine]." (Session 432.) Yusef Parrish replied, "711 1155 [meet at 7-Eleven store at 11:55 a.m.]." (Session 434.) Based on my training and experience, I believe Terry Cameron arranged another drug transaction with Yusef Parrish to get resupplied with cocaine.

197.    On November 2, 2020, at approximately 1:27 p.m., Terry Cameron using phone number TT71 sent the following text message to Yusef Parrish at TT43: "Ready [for more cocaine]." (Session 486.) Yusef Parrish replied, "711 150 [meet at 7-Eleven store at 1:50 p.m.]." (Session 488.) Based on my training and experience, I believe Terry Cameron arranged another drug transaction with Yusef Parrish to get resupplied with cocaine.

198.    On November 3, 2020, at approximately 12:32 p.m., Terry Cameron using phone number TT71 sent the following text message to Yusef Parrish at TT43: "Ready put a half with it [for more cocaine and add a half ounce of cocaine to the usual order]." (Session 510.) Yusef Parrish replied, "711 1 [meet at 7-Eleven store at 1:00 p.m.]." (Session 512.) Based on my training and experience, I believe Terry Cameron arranged another drug transaction with Yusef Parrish to get resupplied with cocaine.

199.    On November 4, 2020, agents intercepted a series of communications between Yusef Parrish using TT43, and Terry Cameron using phone number TT71. During the communications, Terry Cameron texted Yusef Parrish: "Am ready i want to get a half [ounce of cocaine] n give u yo money for yours so how much?" (Session 564), to which Yusef Parrish replied with a phone call asking Terry Cameron to give him an hour and that he was making his way home. Terry Cameron asked Yusef Parrish if it would be "fifty on the half and everything we're taking off?" Yusef Parrish confirmed

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

and replied that "on the half it's going to be like fifty dollars [off]." Yusef Parrish also stated, if you get your own and "nine dollars" and then the other ones at "nine fifty," and told Terry Cameron to "do the math." (Session 567.) Based on my training and experience, I believe that Yusef Parrish and Terry Cameron were arranging to meet later that day to conduct a narcotics transaction for a half ounce of cocaine and discussed prices based on how much Terry Cameron owed Yusef Parrish from prior narcotics transactions. Based on my training and experience, $900 to $950 is consistent with the price of a half-ounce of cocaine around this time, particularly in light of the global pandemic and the short supply of narcotics in the Seattle area at this time, when the price of cocaine was high and fluctuating.

200.    On November 7, 2020, agents intercepted a series of texts and calls between Terry Cameron using TT71 and Yusef Parrish using TT43. During the communications, Terry Cameron texted Yusef Parrish: "Half n a quarter all togather [half ounce of cocaine and a quarter ounce of cocaine]." (Sessions 738.) Shortly thereafter, Yusef Parrish called Terry Cameron and asked for Terry Cameron to "give [him] a hot second" because Yusef Parrish was going to get his money from "these horses" [winnings from horse race betting]. (Session 740.) Later that day, Yusef Parrish texted Terry Cameron: "711 210 [meet at 7-Eleven store at 2:10 p.m.]." (Session 752.) At approximately 2:03 p.m., agents observed a white 2005 Volvo XC90 bearing Washington state license plate number BVB0498, **Subject Vehicle 38,** arrive at the 7-Eleven store located at 5700 Martin Luther King Jr Way South in Seattle. The vehicle was occupied by one male driver. At approximately 2:05 p.m., remote video surveillance captured Yusef Parrish leave his residence driving his known Escalade, a car that investigators had seen Yusef Parrish driving during previous surveillance. At approximately 2:07 p.m., agents observed Yusef Parrish, identified based on a comparison to his driver's license photograph, arrive at the 7-Eleven. Yusef Parrish parked his Escalade next to the **Subject Vehicle 38**. Yusef Parrish exited the Escalade and reached through front passenger side window. Yusef Parrish appeared to exchange something with the male driver of **Subject**

AFFIDAVIT OF SHAWNA MCCANN - 105
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**Vehicle 38**, later identified on subsequent surveillance as Terry Cameron, as set forth below. Yusef Parrish then went inside the 7-Eleven. At approximately 2:08 p.m., agents observed **Subject Vehicle 38** pull out of the lot and drive away northbound on Martin Luther King Jr Way South. Yusef Parrish then exited the 7-11 and got back into his Escalade.

201.    Agents followed **Subject Vehicle 38** to the Central District of Seattle. **Subject Vehicle 38** eventually pulled into the Walgreens parking lot located at 2400 South Jackson Street in Seattle. The parking lot is shared by several other businesses. This parking lot is known to agents as a common location for drug dealers to conduct drug transactions out in the open. At approximately 2:18 p.m., agents observed **Subject Vehicle 38** back into a parking spot in front of the Starbucks in the same parking lot. Within a minute of parking, three people approached Terry Cameron in **Subject Vehicle 38**. Terry Cameron then appeared to make exchanges with approximately seven different people from **Subject Vehicle 38**. Based on my training and experience and discussions with other experienced narcotics officers and agents regarding the above intercepted communications and subsequent surveillance, I believe Terry Cameron discussed drug quantities and prices with Yusef Parrish, was supplied narcotics by Yusef Parrish in the 7-Eleven parking lot, and then immediately re-distributed the purchased narcotics at the parking lot in the Central District to Terry Cameron's drug customers.

202.    On November 10, 2020, at approximately 2:30 p.m., investigators intercepted an incoming text message to Yusef Parrish at TT43 from Terry Cameron using TT71 that read "Half [half ounce of cocaine]." (Session 943.) Investigators then intercepted an outgoing text message from Yusef Parrish using TT43 to Terry Cameron at TT71 that read "711 3 [meet at the 7-11 store at 3:00 p.m.]." (Session 945.) At approximately 2:54 p.m., agents observed, via remote video, Yusef Parrish exit his residence and leave in his known white Toyota Corolla, a vehicle that investigators had seen Yusef Parrish drive during previous surveillance. A couple of minutes later, agents observed the white Corolla travelling northbound on Martin Luther King Jr. Way South

AFFIDAVIT OF SHAWNA MCCANN - 106
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

towards the 7-Eleven. At approximately 2:58 p.m., agents observed Terry Cameron, identified based on a comparison to his driver's license photograph, arrive at the 7-Eleven in **Subject Vehicle 38**. Approximately one minute later, agents observed Yusef Parrish park next to Terry Cameron at the 7-Eleven. Terry Cameron and Yusef Parrish met quickly and then both left the area in their own vehicles. Based on my training and experience, I believe that this meeting between Terry Cameron and Yusef Parrish was another instance where Yusef Parrish supplied Terry Cameron with narcotics, specifically a half ounce of cocaine.

### 2. *Identification of Terry Cameron as User of TT71*

203.   In addition to the identification agents made while conducting surveillance on the user of TT71 (described above), agents obtained subscriber information for TT71, which showed the device was subscribed to "Terry Cameron."

204.   On March 2, 2021, agents conducted physical surveillance at **Subject Premises 45** and observed Terry Cameron exiting **Subject Premises 45** and observed **Subject Vehicle 38** parked outside this residence. Agents obtained GPS location data on Terry Cameron's cell phone, TT71, which showed that Terry Cameron frequented **Subject Premises 45** from around March 5, 2021, to the present, including staying overnight, indicating that Terry Cameron still resides at **Subject Premises 45** and uses **Subject Vehicle 38**.

205.   I know based on my training and experience, that drug traffickers frequently keep their narcotics, narcotics proceeds, and firearms in their residences, vehicles, and stash locations in order to protect their supply and to have the narcotics on hand for transactions. Based on the above-referenced intercepted communications, I believe that Terry Cameron is a cocaine redistributor getting supplied by Yusef Parrish on a daily to weekly basis and that Terry Cameron likely keeps his narcotics supply and proceeds in **Subject Premises 45** and uses **Subject Vehicle 38** to conduct drug transactions.

///

AFFIDAVIT OF SHAWNA MCCANN - 107
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**K.     Craig Jordan's Residences and Vehicle**

206.     During this investigation, based on physical surveillance and intercepted communications described in more detail below, agents identified Craig Jordan's residence as the Seattle Inn Northgate, Room 45, located at 12035 Aurora Avenue N, Seattle, Washington (**Subject Premises 46**), another residence as the Hillside Motel, Room 3, located at 2451 Aurora Ave N, Seattle, Washington (**Subject Premises 50**), and his vehicle as a white 2017 Chevy Silverado bearing Washington license plate C41148U registered to Craig E. Jordan at 711 N 83rd Street, Seattle, Washington (**Subject Vehicle 39**). On March 1, 2021, agents obtained a search warrant for GPS location data on Craig Jordan's cell phone, TT76 (identification discussed below), which showed that Craig Jordan frequented both **Subject Premises 46** and **50** from around March 5, 2021, to the present, splitting time at each hotel room; specifically staying at **Subject Premises 46** in the morning and early afternoon and relocating to **Subject Premises 50** in the late afternoon and evening. During this investigation, agents have intercepted a communication indicating that Craig Jordan is supplied cocaine from Yusef Parrish. This intercepted call and agents' observations are noted below for purposes of establishing probable cause to search **Subject Premises 46** and **50** and **Subject Vehicle 39**.

207.     Craig Jordan has four gross misdemeanor convictions for assault, attempted possession of a firearm, and drug possession.

208.     On November 11, 2020, investigators intercepted an incoming call to Yusef Parrish using TT43 from Craig Jordan using (206) 841-1906 (TT76). (Session 1004.) Yusef Parrish answered, "Six four."[42] The two had mostly a social conversation about their children and school and the call was minimized. During a spot check, Craig Jordan asked, "You still be doing your thizzle [drug dealing] right?" Yusef Parrish responded,

---

[42] Investigators found through a law enforcement database, including CLEAR, that this number is associated with Craig Jordan. Seattle Police Gang Unit investigators familiar with Craig Jordan know his nickname to be "Six nine," a reflection of his height. Investigators believe that the reference to "Six four" is a joking slight towards Craig Jordan.

"Oh yeah." Craig Jordan said, "I'm about to get back in the groove again [dealing drugs]. It's about that time." Yusef Parrish said, "I got one that came in. Probably about, I don't know, seventeen [$1,700 per ounce of cocaine]…I'm waiting on him [supplier] now though." Craig Jordan said, "Now that I got him [child] caught up in school, I could move and groove [deal drugs] a little bit."

209.    Based upon my training and experience, I believe that Craig Jordan was soliciting Yusef Parrish to supply him with drugs for distribution. As discussed throughout this Affidavit, I know Yusef Parrish to supply cocaine to redistributors. I believe that Yusef Parrish quoted a price of $1,700 per ounce of cocaine; based upon my training and experience, that is consistent with the going price for an ounce of cocaine at this time in this region. I know based on my training and experience, and other intercepted calls during this investigation, that the terms "groove" and "moving and grooving" are commonly used by drug traffickers, specifically Michael Walker DTO members, to refer to moving around town making drug transactions.

210.    As set forth above, agents conducted a search of Yusef Parrish's residence on November 21, 2020, and seized cocaine, firearms, currency, and seven cell phones. Agents obtained a separate search warrant for Yusef Parrish's cell phone devices. On one of Yusef Parrish's cell phone devices (evidence item 1B204), phone number (206) 841-1906 (TT76) is stored under the contact name "Jordan." Agents were unable to recover any substantive text messages from this cell phone device. Another one of Yusef Parrish's cell phone devices (evidence item 1B202), showed in the Call Log section that between 2016 and 2017, Yusef Parrish and TT76 were in frequent communication.

211.    On March 5, 2021, at approximately 4:15 p.m., agents observed a white Chevy Silverado registered to Craig Jordan (**Subject Vehicle 39**) parked at the Seattle Inn Northgate near Room 45 (**Subject Premises 46**). At that time, GPS location data for TT76 placed Craig Jordan at **Subject Premises 46**. At approximately 5:33 p.m., agents observed **Subject Vehicle 39** pull out of the parking lot for **Subject Premises 46** with a male driver who was subsequently identified as Craig Jordan based off his driver's

AFFIDAVIT OF SHAWNA MCCANN - 109
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

license photograph and agents' familiarity with him from a prior investigation, including his unusual height of 6'9". At approximately 5:44 p.m., agents observed Craig Jordan driving **Subject Vehicle 39** and pulling into a retail parking lot at N 163rd Street and Aurora Avenue N in Seattle. Agents observed Craig Jordan exit **Subject Vehicle 39**, go into a store for a few minutes, and then return to **Subject Vehicle 39**. At that time, GPS location data for TT76 placed the device at Craig Jordan's location in the retail store parking lot.

212.    On March 5, 2021, agents spoke with an employee working at the Seattle Inn Northgate; this employee showed agents the guest ledger, which did not list Craig Jordan as a current hotel guest. Agents asked the employee if there have been any particularly tall guests staying at the hotel recently, to which the employee immediately responded, "oh, Craig, he's staying in Room 45 (**Subject Premises 46**)." The employee advised agents that Craig has been staying in **Subject Premises 46** "for a while" with a female under whose name the room is booked. Agents obtained a photograph of the female's identification, which identified her as Estelle L. Stripling.

213.    At approximately 6:28 p.m. on March 5, 2021, GPS location data placed TT76 at the Hillside Motel in Seattle (**Subject Premises 50**).[43] Agents arrived at the Hillside Motel at 6:49 p.m. and observed **Subject Vehicle 39** parked at the hotel. GPS location data for TT76 placed Craig Jordan at **Subject Premises 50** from around 6:38 p.m., overnight until around 7:07 a.m. on March 6, 2021. At approximately 7:22 a.m., on March 6, 2021, GPS location data for TT76 placed Craig Jordan back at the Seattle Inn Northgate (**Subject Premises 46**).

214.    On March 7, 2021, agents met with CS3 who was familiar with Craig Jordan. CS3 advised agents that CS3 knows Craig Jordan as a Valley Hood Piru gang

---

[43] Agents learned that the hotel management staff at **Subject Premises 50** had recently changed, and were uncertain of whether this new hotel management staff was law enforcement friendly or would alert Craig Jordan to law enforcement's interest in him if agents were to approach the new management.

1   member and a cocaine dealer. CS3 reported that Craig Jordan is supplied around one to

2   two ounces of cocaine at a time.

3       215.   On March 8, 2021, at approximately 4:07 p.m., agents observed Craig

4   Jordan, identified based on a comparison to his driver's license photograph, exit Room 45

5   at the Seattle Inn Northgate (**Subject Premises 46**) by himself, get into the driver's seat

6   of **Subject Vehicle 39**, and drive off. Prior to this, GPS location data for TT76 placed

7   Craig Jordan at **Subject Premises 46**. At approximately 4:40 p.m., agents observed Craig

8   Jordan park on the side of the road just north of the Hillside Motel in **Subject Vehicle 39**.

9   At approximately 4:49 p.m., Craig Jordan exited **Subject Vehicle 39**, retrieved unknown

10  items from **Subject Vehicle 39**, and then walked with an unknown female across the

11  parking lot of the motel. A few seconds later, an unknown male exited from a room in the

12  Hillside Motel, distinct from Room 3, while another unknown male exited from a vehicle

13  in the motel parking lot. Both of these men met with Craig Jordan in the motel parking lot

14  before they accompanied Craig Jordan and the unknown female into Room 3 of the

15  Hillside Motel (**Subject Premises 50**). Based on my training and experience, I know that

16  their behavior of a brief meeting outside before going into a hotel room in a high

17  narcotics-trafficking area is consistent with a narcotics transaction.

18      216.   On March 9, 2021, at approximately 5:04 p.m., GPS location data for TT76

19  placed the device in the area of **Subject Premises 50**. Around that time, agents observed

20  **Subject Vehicle 39** parked in front of the motel office. Shortly thereafter, agents

21  observed Craig Jordan enter **Subject Premises 50**. While watching the motel, agents

22  observed a high level of traffic in and out of **Subject Premises 50** with the unknown

23  persons going in and out of Room 3 and only staying a few minutes. The high number of

24  people going to **Subject Premises 50** was in stark contrast to the rest of the units at the

25  motel and appeared to be consistent with both narcotics and prostitution activity. Each

26  person that arrived at **Subject Premises 50** knocked on the door and were allowed in

27  after an unknown person(s) looked out the closed curtains on the front window of

28  **Subject Premises 50**. Agents were unable to see who was opening the door. However,

AFFIDAVIT OF SHAWNA MCCANN - 111
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

GPS location data for TT76 placed Craig Jordan in **Subject Premises 50** during the time of the high level of visitors to **Subject Premises 50**.

217.    On March 10, 2021, at approximately 3:00 p.m., agents went to Northacres Park, located at 12718 1st Avenue NE in Seattle, based on GPS location data for TT76 placing the device in the area of this park. Agents located Craig Jordan and **Subject Vehicle 39** in the "overflow" parking lot located off of 3rd Avenue NE in Seattle. An unknown white female was observed in the front passenger seat of **Subject Vehicle 39** and Craig Jordan was in the driver's seat. At approximately 3:19 p.m., agents observed Craig Jordan drive off in **Subject Vehicle 39** with the female still in the passenger seat. At approximately 3:39 p.m., Craig Jordan arrived at the Hillside Motel (in which **Subject Premises 50** is located) and parked in front of the motel office. GPS location data for TT76 showed that the device had travelled with Craig Jordan to the Hillside Motel. At approximately 3:49 p.m., agents observed Craig Jordan approach **Subject Premises 50** with the unknown female. Craig Jordan attempted to open the door, but it was locked. Craig Jordan then knocked on the door but it was not answered. A short time later, Craig Jordan began sorting through keys which he had on a lanyard but put them away after apparently not locating the key he was looking for. At approximately 4:04 p.m., an unknown person opened the door to **Subject Premises 50** from inside, and Craig Jordan and the unknown female went inside.

218.    I know based on my training and experience, and the training and experience of other agents with whom I work, that the Hillside Motel and Seattle Inn Northgate along Aurora Avenue North are high-crime and drug trafficking areas. I also know that drug traffickers commonly book or rent hotel rooms to conduct drug transactions and keep their narcotics proceeds and narcotics stash to evade law enforcement detection. For example, several Michael Walker DTO members have kept their narcotics at a hotel room or conducted drug deals at a hotel room, including Richard Lewis, and Tibor Jackson.

AFFIDAVIT OF SHAWNA MCCANN - 112
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

219.    I know, based on my training and experience, that drug traffickers frequently keep their narcotics, narcotics proceeds, and firearms in their residences, vehicles, and stash locations in order to protect their supply and to have the narcotics on hand for transactions. Based on the above-referenced intercepted communications and observed interactions between Craig Jordan and others that appear to be drug transactions, I believe that Craig Jordan is a cocaine redistributor getting supplied by Yusef Parrish and that Craig Jordan likely keeps his narcotics supply and proceeds in **Subject Premises 46** and **50**, and **Subject Vehicle 39**.

**L.**    **Isiah Reynolds's Residence and Vehicle**

220.    During this investigation, based on physical surveillance and intercepted communications discussed in more detail below, agents identified Isiah Reynolds's residence as 323 25th Avenue S, Apt. 218, Seattle, Washington (**Subject Premises 47**) and his vehicle as a silver Mercedes Benz C240 with no front or rear license plate and a temporary tag in the rear window (**Subject Vehicle 40**). Agents obtained GPS location data on Isiah Reynolds's cell phone, TT75 (identification discussed below), which showed that Isiah Reynolds frequented **Subject Premises 47** from around March 3, 2021, to the present, including staying overnight. Agents intercepted communications indicating that Isiah Reynolds is supplied cocaine from Yusef Parrish. These intercepted communications and agents' observations are noted below for purposes of establishing probable cause to search **Subject Premises 47** and **Subject Vehicle 40**.

221.    Isiah Reynolds has two felony convictions for no contact order violation and drug possession.

222.    On October 26, 2020, investigators intercepted an incoming call from Isiah Reynolds using (206) 650-6523 (TT75) to Yusef Parrish at TT43. (Session 177.) During the call, Isiah Reynolds said, "Yeah I need one of that soft shot [one unit of powder cocaine]." Yusef Parrish replied, "Huh?" Isiah Reynolds repeated, "I said I need one soft." Yusef Parrish replied, "Alright." Isiah Reynolds asked, "It ain't that duffy shit is it?" [referring to a poor quality of cocaine]. Yusef Parrish replied, "Nah."

AFFIDAVIT OF SHAWNA MCCANN - 113
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

223.    On November 12, 2020, at approximately 3:21 p.m., Yusef Parrish at TT43 received a call from Isiah Reynolds using TT75. (Session 1114.) Yusef Parrish picked up, and Isiah Reynolds asked, "What's good [have cocaine]?" Yusef Parrish replied, "I'm working on it [obtaining cocaine to redistribute]." Isiah Reynolds asked, "you dump that other huh…you dumped that little half time [sell the half ounce of cocaine]?" Yusef Parrish said, "I'm getting ready to do it [sell the half ounce of cocaine]. I'm getting low and I've got like a half of a heezy [a half of a half ounce of cocaine left]. That's about what I got left. Cat [supplier] called me this morning talking about he got to get off of work and check it [new supply of cocaine] out." Isiah Reynolds asked, "you still got the heezy sizzle [amount of cocaine]?" Yusef Parrish replied, "Yep, but it's like…a point five off. I can give you that hard [crack cocaine]. You know, like a stone basically." Isiah Reynolds replied, "Let me grab it, then fuck it." Yusef Parrish said, "give me a hot second, I got to get to the house and get it [cocaine] and then I'll hit [call] you." Two hours later, Yusef Parrish using TT43 called Isiah Reynolds at TT75. (Session 1137.) The call was not answered. Forty-five minutes later, Isiah Reynolds using TT75 returned the call. (Session 1140.) Upon picking up, Yusef Parrish stated, "Tried to hit you. I got rid of it [sold the cocaine to someone else]," which Isiah Reynolds acknowledged.

224.    Based upon my training and experience, I believe that Yusef Parrish intended on supplying Isiah Reynolds with an amount of crack cocaine that was a half a gram less that the normal unit amount ("a point five off"). Isiah Reynolds agreed to accept the amount. However, when Yusef Parrish reached back out to deliver the drugs, Isiah Reynolds did not answer his phone, so Yusef Parrish distributed the drugs to someone else.

225.    As set forth above, agents conducted a search of Yusef Parrish's residence on November 21, 2020, and seized cocaine, firearms, currency, and seven cell phones. Agents obtained a separate search warrant for Yusef Parrish's cell phone devices. On one of Yusef Parrish's cell phone devices (evidence item 1B204), phone number (206) 650-6523 (TT75) is stored under the contact name "Darrnel." According to Washington

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Department of Licensing Records, Isiah Reynolds's middle name is Darnell, and the name Darnell is associated with Isiah Reynolds in housing records, as discussed in more detail below. Agents were unable to recover any substantive text messages from this cell phone device. Another one of Yusef Parrish's cell phone devices (evidence item 1B202), showed in the Call Log section that, in 2016, Yusef Parrish and TT75 were in communication.

226.    On March 7, 2021, agents met with CS3 who was familiar with Isiah Reynolds. CS3 advised agents that CS3 knows Isiah Reynolds as a street-level dealer of cocaine in the Central District area and that Isiah Reynolds sells cocaine to users at 23rd and Jackson.

227.    Isiah Reynolds's residential address is listed in Washington Department of Licensing records as **Subject Premises 47**. Additionally, GPS location data on Isiah Reynolds's cell phone, TT75, showed that Isiah Reynolds frequented **Subject Premises 47** from around March 3, 2021, to the present, including staying overnight, indicating that he is currently residing at **Subject Premises 47**.

228.    On March 4, 2021, at approximately 11:00 a.m., agents observed Isiah Reynolds, identified based on a comparison to his driver's license photograph, sitting in the driver's seat of a parked silver Mercedes Benz C240 (**Subject Vehicle 40**) approximately 15 yards away from **Subject Premises 47** in the parking lot for that apartment complex. Agents observed that **Subject Vehicle 40** did not have a front or rear license plate but did have a temporary tag in the rear window, which agents were not able to see without getting too close to avoid detection. GPS location data for TT75 indicated that, at the time, the device was in the area of Isiah Reynolds and the parked car at **Subject Premises 47**. Agents observed Isiah Reynolds on/using a cell phone while seated in the silver Mercedes Benz, and at the same time, agents observed TT75 have activity on the pen register and trap and trace. Moreover, GPS location data for TT75 showed that Isiah Reynolds had stayed at **Subject Premises 47** overnight from the evening of March 3, 2021, to the morning of March 4, 2021, indicating that Isiah Reynolds was residing at

AFFIDAVIT OF SHAWNA MCCANN - 115
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**Subject Premises 47**. Isiah Reynolds remained seated in the driver's seat of the silver Mercedes Benz until approximately 11:55 a.m., and then eventually drove out of the apartment complex parking lot alone in **Subject Vehicle 40**. At approximately 11:56 a.m., GPS location data for TT75 showed that the device had moved, consistent with when Isiah Reynolds left the apartment complex parking lot. At approximately 12:18 p.m., agents observed Isiah Reynolds sitting in the driver's seat of the silver Mercedes backed into a parking space in the parking lot of Rainier Teriyaki at 3330 Rainier Ave S, Seattle, Washington. GPS location data for TT75 placed the device at Isiah Reynolds's location, confirming that Isiah Reynolds is the user of TT75. When agents arrived at the parking lot, agents observed an unknown female already inside the Mercedes Benz front passenger seat. This female met with Isiah Reynolds for a few seconds and then exited the Mercedes and got into an SUV parked next to Isiah Reynold's Mercedes. Agents believe this interaction between Isiah Reynolds and the unknown female, including the apparently short duration of the meeting, the location of the meeting in a parking lot with no other apparent purpose for the meeting, and the fact that the female met with Isiah Reynolds in his vehicle, , was indicative of a drug deal. Agents therefore believe that Isiah Reynolds left **Subject Premises 47** immediately before going to meet with the unknown female and conduct what appeared to agents to be consistent with a drug transaction.

229.    On March 4, 2021, agents spoke with an employee of Seattle Housing Authority (SHA) who confirmed that **Subject Premises 47** is a Seattle Housing Authority location and identified the individual on the lease of **Subject Premises 47** as Dorothy Durant. The SHA employee advised that Dorothy Durant had resided at **Subject Premises 47** since at least 2018 and had most recently paid rent on February 10, 2021. The SHA employee also advised that there was a note in the file for Dorothy Durant/**Subject Premises 47** showing that in 2018 "Darnell (Isiah)," noted as the son of Dorothy Durant, had been reported as an "unauthorized border" at **Subject Premises 47**. Agents also located a Seattle Police Department incident report from June 22, 2018, in

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

which an officer responded to a Property Damage complaint at the Giddeon Matthews apartment complex (where **Subject Premises 47** is located) run by the SHA for the elderly. The property assistant for the complex called in the report and stated to the officer that when she arrived at the complex on June 22, 2018, at 8:00 a.m., she discovered the common restroom, hallway, and stairwell had writing on the walls. The writing was made in permanent marker and all depicted the same message: "Apt #218 Drug Dealing Good crack call Darnell #206-650-6523 [TT75]." The property assistant believed that Sandra Victoria, ex-girlfriend to "Darnell Reynolds," had written the messages after being trespassed from the building a couple of weeks earlier because she was causing problems at the residence. The officer ran Sandra Victoria's name in the Seattle Police Department system and observed that she had a restraining order against "Isiah Darnell Reynolds," with his phone number listed as the same number that was written on the wall, TT75.

230.    On March 5, 2021, at approximately 12:10 a.m., agents observed the silver Mercedes Benz with no license plates (**Subject Vehicle 40**), which Isiah Reynolds had been seen driving previously, parked in the apartment complex parking lot for **Subject Premises 47**.

231.    On March 23, 2021, at approximately 2:57 p.m., GPS location data for TT75 put Isiah Reynolds in a parking lot on the east side of Martin Luther King Jr Way South at South Graham Street in Seattle. GPS location data showed that Isiah Reynolds stayed in the parking lot for only a short amount of time before leaving the area. Fifteen minutes later, at approximately 3:12 p.m., GPS location data for TT75 placed Isiah Reynolds in a parking lot on the east side of Rainier Avenue South at South Walden Street in Seattle, where investigators had observed Isiah Reynolds conducting a possible narcotics transaction on prior surveillance. Again, GPS location data showed that Isiah Reynolds stayed in the parking lot for only a short amount of time before leaving the area. At approximately 3:27 p.m., GPS location data for TT75 put Isiah Reynolds within range of **Subject Premises 47**. Around that time, agents observed **Subject Vehicle 40**

AFFIDAVIT OF SHAWNA MCCANN - 117
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

parked in the parking lot of the apartment building. At approximately 3:41 p.m., agents observed Isiah Reynolds, identified based on a comparison to his driver's license photograph, exit the apartment building for **Subject Premises 47**, get into **Subject Vehicle 40,** and drive out of the parking lot; Isiah Reynolds was alone in the vehicle. Agents then observed Isiah Reynolds stopped in the middle of the roadway on 25th Avenue South. A bald male, in his late 40's or early 50's, approached the driver's side window of **Subject Vehicle 40**. The male looked around before handing something to Isiah Reynolds through the window of **Subject Vehicle 40**. Agents observed Isiah Reynolds give the male something in return. The male then quickly placed the item in his right front pants pocket. The male then backed away from **Subject Vehicle 40** and went onto the east sidewalk, and Isiah Reynolds drove away in **Subject Vehicle 40**. Based on my training and experience, I believe that Isiah Reynolds short stops in parking lots earlier this day was indicative of drug trafficking activity, specifically conducting brief narcotics transactions, and that later that day, Isiah Reynolds left **Subject Premises 47** driving **Subject Vehicle 40** and conducted a hand to hand transaction with the unknown bald male out of the window of **Subject Vehicle 40.**

232.    I know based on my training and experience, that drug traffickers frequently keep their narcotics, narcotics proceeds, and firearms in their residences, vehicles, and stash locations in order to protect their supply and to have the narcotics on hand for transactions. I also know that drug traffickers maintain records and other trafficking-related materials in their premises, including residences, for a long period of time, including current and prior cell phone devices that contain text messages and contact lists of drug trafficking associates and pay-owe-sheets. Based on the above-referenced intercepted communications, I believe that Isiah Reynolds is a cocaine redistributor getting supplied by Yusef Parrish and that Isiah Reynolds likely keeps his narcotics supply and proceeds in **Subject Premises 47** and uses **Subject Vehicle 40**.

**M.    Carlos Daniels's Residence and Vehicles**

AFFIDAVIT OF SHAWNA MCCANN - 118
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

233.    During this investigation, based on physical surveillance and intercepted communications discussed in more detail below, agents identified Carlos Daniels's residence as Bellevue South Tower, 10700 NE 4th Street, Unit #2016, Bellevue, Washington, and storage unit in that building of P364-04 (**Subject Premises 49**), and his vehicles as a blue 2006 Bentley Continental bearing Washington license plate CEO registered to Carlos R. Daniels at 4300 Cashmere Drive NE, Lacey, Washington (**Subject Vehicle 44**), a dark blue 2004 Land Rover Range Rover bearing Washington license plate BHF1786 registered to Carlos R. Daniels at 4300 Cashmere Drive NE, Lacey, Washington (**Subject Vehicle 45**), and a dark blue 2008 Mercedes CL bearing Washington license plate BJY3445 registered to Carlos R. Daniels at 4300 Cashmere Drive NE, Lacey, Washington (**Subject Vehicle 50**). On March 4, 2021, agents obtained a search warrant for GPS location data on Carlos Daniel's cell phone, TT83 (identification discussed below), which showed that Carlos Daniels frequented **Subject Premises 49** from around March 8, 2021, to the present, including staying overnight. Agents intercepted communications between Jamar Howard and Carlos Daniels discussing trafficking narcotics in the Seattle area. These intercepted communications and agents' observations are noted below for purposes of establishing probable cause to search **Subject Premises 49** and **Subject Vehicles 44**, **45**, and **50**.

234.    Carlos Daniels has three federal felony convictions for possession with intent to distribute cocaine, selling/distributing/dispensing narcotics, and unlawful transport of firearms. He has three state felony convictions for possession of stolen property, forgery, and narcotics possession with intent to manufacture/deliver. Carlos Daniels was on federal supervised release until August 24, 2020, when his five-year term of release was terminated early.

### 1.    *Communications regarding Carlos Daniels's Drug Trafficking*

235.    As set forth above, on October 30, 2020, agents conducted a full search of Curtis Snipes's person and vehicle pursuant to federal search warrants and located four cell phone devices, including TT39, and $7,746.00 wrapped/rolled in a rubber band.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Agents subsequently obtained a federal search warrant to search the cell phone devices seized from Curtis Snipes's person and have conducted a search of those devices. In the instant message contents of TT39, agents located the following text messages between Curtis Snipes using TT39, Jerry Jones aka Snake using TT46, and Jamar Howard aka Hoov using TT14 from October 21, 2020:

> TT46 to TT39: Loss [believed to be Carlos Daniels] hit to call me.
>
> TT39 to TT14: Bro hit [call] snake [Jerry Jones] and give him a baby [4.5 ounces of cocaine].
>
> TT39 to TT46: Hit our guy [Jamar Howard] im at work.
>
> TT46 to TT39: what u want to tell los [Carlos Daniels].

236.    Based on my training and experience, I believe that Jerry Jones told Curtis Snipes that Carlos Daniels aka "Los," identified by subscriber information for TT83 and information intercepted and recovered by investigators regarding "Los" (as described below), had called him about narcotics. Curtis Snipes told Jerry Jones to call Jamar Howard because Curtis Snipes was at work; around the same time Curtis Snipes told Jamar Howard to give Jerry Jones four and a half ounces of cocaine. Jerry Jones then asked Curtis Snipes what he should tell Carlos Daniels regarding the narcotics and pricing. I know that high-level cocaine suppliers like Curtis Snipes rely on distributors, like Jamar Howard and Jerry Jones, to run their drug trafficking operations. I believe that Carlos Daniels either is a cocaine redistributor in communication with Jerry Jones or that Carlos Daniels is a competing source of supply of cocaine who was contacting Jerry Jones to see if Jerry Jones needed cocaine, and that Jerry Jones advised his main cocaine supplier, Curtis Snipes. Based on my training and experience, intercepted communications in this investigation, and a prior investigation, I know that the term "baby" is commonly used by Michael Walker DTO associates to refer to four and a half ounces of narcotics.

237.    Also as set forth above, on November 24, 2020, agents conducted a search of Jamar Howard's residence and vehicles based on federal search warrants and seized a

AFFIDAVIT OF SHAWNA MCCANN - 120
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

firearm, $3,090.00 in cash, and eight cell phones. Agents subsequently obtained a federal search warrant to search the cell phone devices seized from Jamar Howard's residence and vehicle and have conducted a search of those devices. In the contact section of two of Jamar Howard's cell phones, he listed the contact name "Daniel Los" for TT83. In the instant messages section of one of Jamar Howard's cell phones, agents located the following historical text message exchanges between Jamar Howard and "Daniel Los," believed to be Carlos Daniels using TT83 (identification discussed below), from late 2017 and early 2018:

> TT83: Hoov [Jamar Howard] wuz good

> Howard: Hey Hey my guy just chilling bro how you doing it what good with u

> TT83: Man aint shyt, chillin trying to meetup at the roundtable [get more cocaine]

> Howard: Yes sir all day

> TT83: Ima hit yu in a few see where yu at

> Howard: Ok all good

> … [on a later day]

> TT83: Wzup wit my guy

> Howard: What it do my guy

> TT83: Ain't shyt watching this game, seeing what it do do

> Howard: Man doing the same bro making it happen we need to tap in bro [get resupplied]

> TT83: Fasho…lemme kno when you ready

238.    Based on my training and experience, I believe these text messages referenced drug trafficking activities. When Carlos Daniels referenced meeting up at the roundtable, I believe he is indicating that he needs to meet with Jamar Howard, Curtis Snipes, Jerry Jones, and the other DTO members to discuss their business dealings and/or get resupplied with narcotics. When Jamar Howard referenced needing to "tap in," I believe that is another reference to getting re-supplied with narcotics. I know based on

AFFIDAVIT OF SHAWNA MCCANN - 121
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

other intercepted communications in this investigation that the term "tap in" is commonly used by the Michael Walker DTO associates to refer to needing a resupply of narcotics.

239.    Based on conversations intercepted in the course of this investigation, including communications to and from TT83, investigators believe that Carlos Daniels is still engaged in drug trafficking. For example, on September 16, 2020—less than a month after his term of supervised release was terminated—Carlos Daniels using TT83 and Jamar Howard using TT14 had the following text message exchange that was intercepted by agents over TT14:

TT83: Wuz gud my guy (SID 1278)

TT14: What's up bro every thing gravey trying to make it happen what's up with you bro (SID 1295)

TT83: Man everything Gucci (SID 1320)

TT14: Yes sir how we looking [have any cocaine] (SID 1330)

TT83: We Gucci, they up there [confirming has cocaine] (SID 1332)

TT14: I already know bro what's the tag [price] (SID 1346)

TT83: 19 cent [$1,900 per ounce] (SID 1352)

240.    Based on my training and experience, I believe that Jamar Howard asked Carlos Daniels if he had any cocaine and the price, and that Carlos Daniels confirmed that he had cocaine and that it was $1,900 per ounce. I know, based on my training and experience and intercepted communications in this investigation, that in the fall of 2020, the price of cocaine was around $1,600 to $2,000 per ounce and was in scarce supply, likely due in part to the global pandemic and travel restrictions, which made it harder for suppliers in Mexico to transport cocaine to the United States through California and up to Washington state.

241.    During this investigation, agents have also intercepted communications of Michael Walker DTO members and associates regarding Carlos Daniels's drug trafficking. For example, agents conducted a court authorized wiretap on Larry Collins

AFFIDAVIT OF SHAWNA MCCANN - 122
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

using TT16 and Eugene McGee using TT23.[44] During these wiretaps, agents intercepted several communications discussing cocaine transactions and cooking powder cocaine into crack cocaine on TT16. Based on these interceptions, agents believe that Eugene McGee is a source of supply of cocaine to Michael Walker DTO members, including Larry Collins and Randolph Brown. During the wiretap on TT23, agents have intercepted Eugene McGee discussing that a man named "Carlos" and "Los," believed by investigators to be Carlos Daniels, is recently involved in drug trafficking and making illicit drug proceeds.

242.    For example, on February 19, 2021, agents intercepted Eugene McGee using TT23 talking to an unknown male using (206) 604-0742 (referred to as UM0742). (Session 2142.) During this call, UM0742 discussed telling a male named Carlos to "stay away from that game [drug dealing]" because "that game [drug dealing] is nothing but a dead end…that shit is washed up and it's changed. All N* doing is telling [talking to police], and it's washed up. The technology [wiretaps] they [police] have now, man, it's a no win." Eugene McGee said, "it's easy money [drug money] and a lot of cats [drug dealers] are addicted to it…you sitting on 200 grand [$200,000] you're in the game, you can start your life off [with the drug proceeds] and do good." Eugene McGee said he had been trying to tell "Los" that "he can make more money legit now…than in the street game [drug dealing]" and that everything "Los" was trying to do "is shit the police is

---

[44] Agents obtained a search warrant for GPS location data for TT16 and identified the user as Larry Collins based on observing Larry Collins, identified based on a comparison to his driver's license photograph, in the vicinity of the GPS pings for TT16 at different locations and times. Additionally, agents obtained a court-authorized wiretap on TT16 and further confirmed the user was Larry Collins based on callers identifying the user of TT16 as "L," and "L-Candy," which are known aliases for Larry Collins. Agents obtained a search warrant for GPS location data for TT23 and identified the user as Eugene McGee based on observing Eugene McGee, identified based on a comparison to his driver's license photograph, in the vicinity of the GPS pings for TT23 at different locations and times. Additionally, agents obtained a court-authorized wiretap on TT23 and further confirmed the user was Eugene McGee based on callers identifying the user of TT23 as "Gene" and "Jericho," which are known aliases for Eugene McGee.

AFFIDAVIT OF SHAWNA MCCANN - 123
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

going to come in on." Eugene McGee mentioned that "Los" is fifty years old.[45] Agents obtained Washington Department of Licensing information on Carlos Daniels, which showed he recently turned 51 years old. Additionally, Eugene McGee referenced during this call that he had talked with "Carlos/Los" about getting out of the "game" and going into the real estate business to make legitimate money. Agents intercepted a communication between Eugene McGee and TT83, subscribed to Carlos Daniels, a few days prior on February 15, 2021, in which the parties discussed buying and flipping houses, which agents believe is the prior call referenced by Eugene McGee. (Session 1292.) Accordingly, based on my training and experience and other intercepted communications on TT23, I believe that the "Carlos" and "Los" that UM0742 and Eugene McGee discussed during this call was Carlos Daniels and that Carlos Daniels is still making illegal money from narcotics proceeds.

### 2. Identification of Carlos Daniels's Residence, Vehicles, and Phone (TT83)

243.    On March 18, 2021, at approximately 11:00 a.m., GPS location data placed TT83 within range of Factoria Mall, located at 4065 Factoria Square Mall Southeast, Bellevue, Washington. Agents observed a dark blue 2004 Range Rover bearing Washington state license plate number BHF1786 (**Subject Vehicle 45**) parked unoccupied outside of the TJ Maxx in the vicinity of the GPS location data for TT83. A records check revealed the vehicle is registered to Carlos Daniels at 4300 Cashmere Drive Northeast, Lacey, Washington. At approximately 11:08 a.m., agents observed Carlos Daniels, identified based on a comparison to his driver's license photograph, walk from the mall and get into **Subject Vehicle 45**. Carlos Daniels drove northbound out of the area. Around that same time, GPS location data for TT83 showed that the device moved out of the area. At approximately 11:25 a.m., agents observed **Subject Vehicle 45** arrive at the Bellevue Towers condominiums located 10700 Northeast 4th Street,

---

[45] During a call between Eugene McGee using TT23 and an unknown male using phone number (206) 851-8417, the parties stated that Carlos Daniels should be 50 years old turning 51.

Bellevue, Washington (the building in which **Subject Premises 49** is located). **Subject Vehicle 45** went into the secured parking garage and out of view. GPS location data for TT83 showed that the device was within range of **Subject Premises 49**, confirming that Carlos Daniels is the user of TT83.

244.    On March 18, 2021, agents spoke with condominium management and were escorted into the parking garage. Agents observed **Subject Vehicle 45** parked in space #P2-009. Agents also located a blue 2006 Bentley Continental bearing Washington license plate CEO (**Subject Vehicle 44**) parked in space #P3-048. A records check revealed that **Subject Vehicle 44** is also registered to Carlos Daniels at 4300 Cashmere Drive Northeast, Lacey, Washington, as is **Subject Vehicle 45**. Later in the afternoon, agents obtained leasing documentation and surveillance footage from Bellevue Towers management. The leasing documents showed that Carlos Daniels resides in unit 2016 since on or about July 6, 2020, with a 12-month lease term (**Subject Premises 49**). The leasing documents also showed that Carlos Daniels has a storage locker #P364-04 and two parking spaces in the condo building, #P3-047 and #P3-048. Agents obtained surveillance footage showing **Subject Vehicle 45** pulling into the secure parking garage of the condo building where **Subject Premises 49** is located.

245.    Agents conducted Washington Department of Licensing checks on **Subject Vehicles 44** and **45,** which showed that Carlos Daniels owns both vehicles outright and that Carlos Daniels has a lien interest on **Subject Vehicle 50**. The leasing documents showed that Carlos Daniels registered both **Subject Vehicles 44** and **45** for the condo building associated with **Subject Premises 49**. The leasing documents for **Subject Premises 49** show that Carlos Daniels pays $5,200 per month in rent, is the sole occupant of **Subject Premises 49**, and was required to pay $16,200 up front at the time of signing the lease, which included first and last month's rent, a non-refundable move in/out fee of $500, a non-refundable cleaning fee of $300, and a refundable $5,000 security deposit. The leasing documents reflected that Carlos Daniels reported a monthly income of $16,000 (which extrapolated out, would be a yearly income of $192,000) from "Moving"

AFFIDAVIT OF SHAWNA MCCANN - 125
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  at Won't Stop Moving, during a time period when, as set forth below, he had no reported
2  wages.

3      246.    Agents conducted open source research on Won't Stop Moving company in
4  Washington state and identified a company with that name operated by sole proprietor
5  Christopher Neal, who was listed as the sole governing person of this business. Agents
6  conducted open source research on any businesses in Washington state owned or
7  operated by Carlos Daniels and located a moving company named World Class Movers
8  operated by sole proprietor Carlos Daniels, who was listed as the sole governing person
9  of this business. However, Carlos Daniels did not list his business as a source of income
10 in the leasing documents. Based on my training and experience, I know that drug
11 traffickers often open sham businesses to launder their narcotics proceeds and to evade
12 law enforcement detection and give the appearance of being engaged in legitimate
13 employment. During this investigation, including the GPS location data on TT83 from
14 March 8, 2021, to the present, agents did not observe Carlos Daniels going to any place
15 of employment or demonstrating any pattern of movement indicative of working on a
16 regular basis. Rather, the GPS location data for TT83 showed that Carlos Daniels stayed
17 at **Subject Premises 49**, leaving only to make quick trips to parks and parking lots,
18 indicative of drug trafficking activity.

19     247.    On February 13, 2021, at approximately 7:56 p.m., Eugene McGee using
20 TT23 called an unknown male at phone number (601) 940-1120 (referred to as UM1120).
21 (Session 1023.) During this call Eugene McGee and UM1120 talked about how Eugene
22 McGee has a personal problem with Chris. After getting off the phone with UM1120,
23 Eugene McGee attempted to call phone number (206) 823-9007 with no answer. The
24 voicemail for this phone number stated: "Hi this is Chris Neal with Won't Stop Moving."
25 (Session 1041.) Based on these calls, agents believe that Eugene McGee had a personal
26 problem with Chris Neal who is the same Chris Neal who owns Won't Stop Moving, the
27 company that Carlos Daniels claimed he made $16,000 per month working at.

28

AFFIDAVIT OF SHAWNA MCCANN - 126
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

248.   On February 26, 2021, at approximately 1:50 p.m., Carlos Daniels using TT83 texted Eugene McGee at TT23: "Anybody scene or heard from tha crackhead?" (Session 4018.) Eugene McGee using TT23 replied, "Who?" (Session 4020.) Carlos Daniels said, "Chris black ass." (Session 4024.) At approximately 1:52 p.m., Eugene McGee using TT23 called Carlos Daniels at TT83. (Session 4029.) During this call, Carlos Daniels said, "that N* has some of my fire [marijuana] over there at his house. This N* [Chris Neal] done left town with my [Carlos Daniel's] shit [marijuana supply]." Eugene McGee asked, "when was that?" Carlos Daniels said, "shit whenever he [Chris Neal] left, like last, about two weeks ago…and he cut all his numbers off [changed phone numbers]." Based on my training and experience, I believe that Chris Neal was keeping some of Carlos Daniels's supply of marijuana at Chris Neal's house and that Chris Neal left town with Carlos Daniels's drug supply.

249.   Later that same day, at approximately 2:06 p.m., Eugene McGee using TT23 called a female at phone number (206) 981-1459, believed to be Eugene McGee's girlfriend, Christina Dunlap.[46] (Session 4049.) During this call, the female said she got a call from "Chris" and asked "Chris" to stop calling her. The female said that Chris told her that "somebody named up Darcell with the moving thing [sham moving company] and told him that oh yeah I can get you on and this and that." Eugene McGee said, "No I did not! I told him Darcell wanted to go through and pull this [unintelligible]. Darcell ain't even hooked on with the [sham] moving business." The female asked, "who is Darcell?" Eugene McGee said, "Darcell's my little homebody from Louisiana…Gator's baby momma is Darcell's sister. If Darcell wanted to get on, he could go through Gator because Gator know how to get on." Eugene McGee went on to say, "everybody that I fuck with, my friends, would never fuck with Chris [Neal]." Eugene McGee then said,

---

[46] Agents believe Christina Dunlap is Eugene McGee's girlfriend based on observing vehicles registered to her staying overnight at Eugene McGee's residence and based on the nature of the conversations between the two parties intercepted over Eugene McGee's line, TT23. Agents also obtained subscriber information showing that phone number (206) 981-1459 was subscribed to Christina Dunlap.

AFFIDAVIT OF SHAWNA MCCANN - 127
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

"Carlos [Daniels] texted me like, 'have you seen this motherfucking crackhead [referring to Chris].' And I think he's [Carlos Daniels'] talking to somebody else. The wrong person he's texting. I'm like 'who?' He [Carlos Daniels] said, 'this crackhead motherfucker Chris.' So I called him [Carlos Daniels], I was like, 'what's going on?' He [Carlos Daniels] said 'man I left some weed [marijuana] over at this montherfucker's [Chris Neal's] house. This bitch [Chris Neal] done ran off on me. He [Chris Neal] won't answer my [Carlos Daniels] phone [calls]. He [Chris Neal] changed his number. He say he went to jail, which I know he was lying.' He [Carlos Daniels] said, 'But you know when I [Carlos Daniels] catch this motherfucker I'm going to do [unintelligible]...he [Chris Neal] ran off with all my motherfucking shit." Based on my training and experience, I believe that Eugene McGee told this female what Carlos Daniels had just told him about Chris Neal's leaving town with Carlos Daniels's marijuana supply. I also believe that the references to hooking someone up with the moving business reflects the sham nature of these moving businesses in relation to this drug trafficking organization and how the moving businesses are used as a drug trafficking and money laundering front to legitimize the DTO members and their narcotics proceeds.

250.    On March 3, 2021, at approximately 1:39 p.m., the female believed to be Christina Dunlap called Eugene McGee at T23. Eugene McGee said that "he [referring to Carlos Daniels] called Chris [Neal] from another number and he [Chris Neal] said he was going to pay him [Carlos Daniels]." The female asked, "How much is it [how much money does Chris Neal owe Carlos Daniels]?" Eugene McGee and the female discussed how Chris Neal owed Carlos Daniels "$15-20K." The female said, "He [Chris Neal] borrow money from the drug dealers [Carlos Daniels], and stuff, and not paying them back." Based on my training and experience, I believe that Carlos Daniels was able to talk to Chris Neal by calling from a different phone number and that Chris Neal agreed to pay Carlos Daniels between $15,000 to $20,000 for the marijuana supply that Chris Neal had taken from Carlos Daniels. Based on the amount of the drug debt, I believe that the

AFFIDAVIT OF SHAWNA MCCANN - 128
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

marijuana in dispute between Chris Neal and Carlos Daniels was not a legal amount that may be expected for personal use but, rather, reflects over ten pounds of marijuana.[47]

251.    Agents obtained reported earnings/wages for Carlos Daniels from Washington State Employment Security Department, which showed that Carlos Daniels had no reported wages from January 1, 2020, through December 31, 2020. This amount of reported income is inconsistent with his apparent lifestyle of owning two luxury vehicles and renting a luxury condo and does not appear to reflect his actual income acquired through drug trafficking, including illegal marijuana trafficking. Carlos Daniels has a history of drug trafficking and buying luxury items with narcotics proceeds, including luxury vehicles. In 2006, Carlos Daniels was arrested after a lengthy wiretap investigation during which Carlos Daniels had been heard in recorded calls arranging a deal for 20 kilograms of cocaine. At the time of his arrest, Carlos Daniels was stopped in a vehicle in which agents located nearly 24 kilograms of cocaine and $182,500 in cash. A search of Carlos Daniels's home located more than $70,000 in cash, multiple firearms, and expensive jewelry. Carlos Daniels pled guilty to possession of cocaine with intent to distribute and being a felon in possession of a firearm and was sentenced to 135 months in prison. As part of his plea deal, Carlos Daniels forfeited more than $250,000 in cash, three homes, and four luxury cars, including a Rolls-Royce, two Mercedes-Benzes, and a Cadillac, all of which were proceeds from drug sales.

252.    Based on the absence of legitimate sources of income for Carlos Daniels and his luxurious lifestyle, including owning a Bentley and a Range Rover and living in a luxury condo, coupled with the recent wiretaps discussing Carlos Daniels engaged in drug trafficking and having a large quantity of marijuana valued at $15,000 to $20,000 taken from him, agents believe Carlos Daniels has returned to drug trafficking and is

---

[47] Agents conducted open source research on the Washington state business license list and did not find any legal marijuana licenses associated with Carlos Daniels or his moving company business. Additionally, Carlos Daniels prior convictions would preclude him from being eligible to possess any legal marijuana license in Washington state.

using narcotics proceeds to afford his luxurious lifestyle. Moreover, based on the absence of legitimate sources of income for Carlos Daniels, it is likely that **Subject Vehicles 44** and **45**, which Carlos Daniels owns with no encumbrances, and **Subject Vehicle 50** were purchased or financed with proceeds of drug trafficking.

253.   On March 23, 2021, agents observed **Subject Vehicle 44** parked in space P3-048 and **Subject Vehicle 50** parked in space P3-047 of **Subject Premises 49,** both of which are the assigned parking spaces to Carlos Daniels as part of the lease for **Subject Premises 49.**

254.   I know based on my training and experience, that drug traffickers frequently keep their narcotics, narcotics proceeds, and firearms in their residences, vehicles, and stash locations in order to protect their supply and to have the narcotics on hand for transactions. I also know that drug traffickers maintain records and other trafficking-related materials in their premises, including residences, for a long period of time, including current and prior cell phone devices that contain text messages and contact lists of drug trafficking associates and pay-owe sheets. Based on the above-referenced intercepted communications, I believe that Carlos Daniels is a cocaine and marijuana trafficker and that Carlos Daniels likely keeps his narcotics supply and proceeds in **Subject Premises 49** and uses **Subject Vehicles 44**, **45**, and **50**, which are themselves evidence and fruits of Carlos Daniels's drug trafficking activities.

## KNOWLEDGE BASED ON TRAINING AND EXPERIENCE

255.   Based upon my training and experience, and my discussions with other experienced officers and agents involved in drug investigations, I know the following:

   a.   Traffickers of controlled substances, and those who assist them, maintain and tend to retain accounts or records of their drug trafficking activities, including lists of drug quantities and money owed (pay-owe sheets), telephone records including contact names and numbers, photographs, and similar records of evidentiary value. These items are generally kept in locations where drug

AFFIDAVIT OF SHAWNA MCCANN - 130
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

traffickers believe their property is secure and will remain undetected from law enforcement, such as inside their homes, vehicles, storage lockers, and businesses.

b.      Traffickers of controlled substances commonly maintain records reflecting names or nicknames, addresses, and/or telephone numbers of their suppliers, customers, and associates in the trafficking organization. Traffickers commonly maintain this information in books or papers as well as in their cellular telephones. Traffickers often maintain cellular telephones for ready access to their clientele and to maintain their ongoing drug trafficking. Traffickers often change their cellular telephone numbers to avoid detection by law enforcement, and it is common for traffickers to use more than one cellular telephone at any one time.

c.      Traffickers maintain evidence of their criminal activity at locations that are convenient to them, including their residences, vehicles, and storage lockers. This evidence often includes not only contraband and paraphernalia, but also financial records, records of property and vehicle ownership, records of property rented, and other documentary evidence relating to their crimes. Drug traffickers sometimes take or cause to be taken photographs and/or video recordings of themselves, their associates, their property, and their illegal product. These individuals often maintain these photographs and recordings in their possession or at their premises.

d.      During the execution of search warrants, it is common to find papers, letters, billings, documents, and other writings which show ownership, dominion, and control of vehicles, residences, and/or storage units.

e.      Persons trafficking and using controlled substances commonly sell or use more than one type of controlled substance at any one time.

f.      Traffickers frequently maintain items necessary for weighing, packaging, and cutting drugs for distribution. This paraphernalia often includes, but is not limited to, scales, plastic bags and cutting/diluting agents and items to mask the odor of drugs.

AFFIDAVIT OF SHAWNA MCCANN - 131
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

g.     It is common for drug dealers to also be users of their product, and that it is common for the drug user to maintain paraphernalia associated with the use of controlled substances.

h.     Traffickers frequently maintain records, books, notes, ledgers, travel documents, and other papers relating to the transportation and distribution of controlled substances, including travel records, in locations convenient to them, such as their residences and vehicles.

i.     Traffickers frequently keep on hand amounts of United States currency in order to maintain and finance their ongoing narcotics business. They commonly deal in currency because of its untraceable nature. They sometimes convert their illicit currency into currency equivalents such as cashier's checks and money orders. Traffickers often conceal in secure locations such as their residences and vehicles currency, financial instruments, precious metals, jewelry, and other items of value which are the proceeds of drug transactions, and evidence of consequential financial transactions relating to obtaining, transferring, secreting, or spending large sums of money made from engaging in drug trafficking activities, and financial books, records, receipts, notes, ledgers, diaries, journals, and all records relating to income, profit, expenditures, or losses, and other records showing the management of such assets. Traffickers often have money counters.

j.     Traffickers often maintain weapons, including guns, ammunition, and body armor, in secure locations such as their residences and vehicles, in order to protect their drugs and drug proceeds.

k.     Traffickers often have false identification documents and identification documents in the names of others in order to conceal their identities.

l.     Traffickers very often place assets in names other than their own, or use fictitious names and identification, to avoid detection of these assets by government agencies. Even though these assets are in other persons' names, the

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

drug dealers actually own and continue to use these assets and exercise dominion and control over them.

      m.    Illegal drug trafficking is a continuing activity over months and even years. Illegal drug traffickers will repeatedly obtain and distribute controlled substances on a somewhat regular basis, much as any distributor of a legitimate commodity would purchase stock for sale and, similarly, such drug traffickers will have an "inventory" which will fluctuate in size depending upon various factors to include the demand and supply for the product. I would expect the trafficker to keep records of his illegal activities for a period of time extending beyond the time during which he actually possesses illegal controlled substances, in order that he can maintain contact with his criminal associates for future drug transactions, and so that he can have records of prior transactions for which, for example, he might still be owed money, or might owe someone else money. These records are often created in code.

      256.   As noted above, drug dealers use cellular telephones as a tool or instrumentality in committing their criminal activity. They use them to maintain contact with their suppliers, distributors, and customers. They prefer cellular telephones because, first, they can be purchased without the location and personal information that land lines require. Second, they can be easily carried to permit the user maximum flexibility in meeting associates, avoiding police surveillance, and traveling to obtain or distribute drugs. Third, they can be passed between members of a drug conspiracy to allow substitution when one member leaves the area temporarily. Since cellular phone use became widespread, every drug dealer I have contacted has used one or more cellular telephones for his or her drug business. I also know that it is common for drug traffickers to retain in their possession phones that they previously used, but have discontinued actively using, for their drug trafficking business. Based on my training and experience, the data maintained in a cellular telephone used by a drug dealer is evidence of a crime or crimes. This includes the following:

AFFIDAVIT OF SHAWNA MCCANN - 133
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

a. The assigned number to the cellular telephone (known as the mobile directory number or MDN), and the identifying telephone serial number (Electronic Serial Number, or ESN), (Mobile Identification Number, or MIN), (International Mobile Subscriber Identity, or IMSI), or (International Mobile Equipment Identity, or IMEI) are important evidence because they reveal the service provider, allow us to obtain subscriber information, and uniquely identify the telephone. This information can be used to obtain toll records, to identify contacts by this telephone with other cellular telephones used by co-conspirators, to identify other telephones used by the same subscriber or purchased as part of a package, and to confirm if the telephone was contacted by a cooperating source or was intercepted on a wiretap here or in another district.

b. The stored list of recent received calls and sent calls is important evidence. It identifies telephones recently in contact with the telephone user. This is valuable information in a drug investigation because it will identify telephones used by other members of the organization, such as suppliers, distributors, and customers, and it confirms the date and time of contacts. If the user is under surveillance, it identifies what number he called during or around the time of a drug transaction or surveilled meeting. Even if a contact involves a telephone user not part of the conspiracy, the information is helpful (and thus is evidence) because it leads to friends and associates of the user who can identify the user, help locate the user, and provide information about the user. Identifying a defendant's law-abiding friends is often just as useful as identifying his drug-trafficking associates.

c. Stored text messages, emails, and any social media content/messages (like Facebook messenger) are important evidence, similar to stored numbers. Agents can identify both drug associates, and friends of the user who likely have helpful information about the user, his location, and his activities.

AFFIDAVIT OF SHAWNA MCCANN - 134
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

d.      Photographs and video recordings on a cellular telephone, including metadata, are evidence because they help identify the user, either through his or her own picture/video, or through pictures/videos of friends, family, and associates that can identify the user and the locations the user has been. Pictures/videos also identify associates likely to be members of the drug trafficking organization. Some drug dealers photograph/video groups of associates, sometimes posing with weapons and showing identifiable gang signs. Also, digital photos often have embedded "geocode" or GPS information embedded in them. Geocode information is typically the longitude and latitude where the photo was taken. Showing where the photo was taken can have evidentiary value. This location information is helpful because, for example, it can show where coconspirators meet, where they travel, and where assets might be located.

e.      Stored web browsing history is important evidence because it shows the user's activities and places of interest, including if the user looked up addresses, restaurants, and other businesses on a web browser on the cell phone, which can show where coconspirators meet, where they travel, and where assets might be located. Moreover, through web browsing history, a user can also access or look up associates or coconspirators on social media, which is valuable information in a drug investigation because it will identify members of the organization, such as suppliers, distributors and customers.f.   Stored address records are important evidence because they show the user's close associates and family members, and they contain names and nicknames connected to phone numbers that can be used to identify suspects.

g.      Stored data in money transfer applications, such as Venmo and CashApp, are important evidence because they show from whom and to whom the user is sending money. In the era of digital currency and online money transfers, I know based on my training and experience, and intercepted communications during this investigation that drug traffickers, and specifically drug traffickers

AFFIDAVIT OF SHAWNA MCCANN - 135
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

within the Michael Walker DTO, use Cash App and other money transfer applications to pay for drug products in lieu of physical cash. Accordingly, any stored data on money transfer applications on cell phones can show the user's drug trafficking associates, customers, and other connections.

h.    Stored location data, including from any map applications on the cell phone, are important evidence because the data can show where the user has been, including addresses of residences and business parking lots, which can show stash house locations, drug transaction meeting locations, or the addresses of a drug trafficker's associates, customers, or suppliers.

## JUSTIFICATION FOR NIGHTTIME SERVICE

257.    During the course of this investigation, investigators have seized approximately 33 firearms during probable cause stops and searches of or the execution of search warrants on individuals who are the focus of this investigation. Additionally, during the course of this investigation, subjects of this investigation or those associated with them have or are suspected to be involved in incidents of shootings, robbery, and burglary with the use of firearms, and other crimes of violence. Currently, daybreak is occurring around 6:00 a.m. Investigators intend to serve all of these warrants at 5:00 a.m., increasing the likelihood subjects are asleep as those serving the search warrants approach the residences, decreasing the likelihood of subjects arming themselves, destroying evidence, or alerting their co-conspirators prior to investigators knocking and announcing.

## CONCLUSION

258.    Based on the above-described information, there is probable cause to believe that contained within the locations and vehicles, described in Attachments A and A1 through A39, there exists evidence, fruits, and instrumentalities, as described in Attachment B, of violations of 21 U.S.C. §§ 841 and 846 (distribution of, and possession with intent to distribute, controlled substances, and conspiracy to do the same), 21 U.S.C. § 843(b) (use of communication facilities to commit, facilitate, or further an act or acts

AFFIDAVIT OF SHAWNA MCCANN - 136
USAO #2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  which constitute a felony), and 18 U.S.C. §§ 1956 and 1957 (money laundering and

2  conspiracy to do the same), committed by Curtis Snipes aka Big Curt aka Dirty, Michael

3  Hopkins aka Mike, Terry Ezell aka T, Wayne Dubois, Jamar Howard aka JHoov aka

4  Creamy, Jerry Jones aka Snake, Gerald Aikens, Davon Evans aka Devo aka Gonzo, Tibor

5  Jackson, Terry Cameron, Craig Jordan aka 6`9, Isiah Reynolds, and Carlos Daniels aka

6  Los.

7

8

9                                              _____

10                                             Shawna McCann, Affiant
                                               Special Agent, FBI
11

12      The above-named agent provided a sworn statement to the truth of the foregoing

13  affidavit by telephone on the 31st day of March, 2021.

14

15

16

17                                             _____

18                                             THE HONORABLE MARY ALICE THEILER
                                               United States Magistrate Judge
19

20

21

22

23

24

25

26

27

28

AFFIDAVIT OF SHAWNA MCCANN - 137
USAO #2019R01083

# ATTACHMENT A

## Locations and Vehicles to Be Searched

This warrant authorizes the government to search the following locations and vehicles for evidence, instrumentalities, and/or fruits of the commission of the following crimes, as further described in Attachment B hereto: distribution and possession with intent to distribute controlled substances, in violation of Title 21, United States Code, Section 841(a)(1), and conspiracy to commit these offenses in violation of Title 21, United States Code, Section 846; laundering of monetary instruments in violation of Title 18, United States Code, Sections 1956 and 1957, and conspiracy to commit the same; use of a communications facility to commit, facilitate, or further acts which constitute a felony drug offense in violation of Title 21, United States Code, Section 843(b); interstate and foreign travel to promote, manage, establish, carry on, or facilitate unlawful activity, in violation of Title 18, United States Code, Section 1952, in violation of Title 21, United States Code, Section 952; possession of a firearm in furtherance of a drug trafficking crime, in violation of Title 18, United States Code, Section 924(c); and prohibited person in possession of a firearm, in violation of Title 18, United States Code, Section 922(g).

With respect to the locations to be searched, where that location is an apartment or multi-family residence, the search is to include all rooms within the residence, and any assigned garages or storage rooms, attached or detached, and any vehicles found within an assigned garage or in any assigned parking space, whether or not particularly named among the vehicles for which specific search authorization is sought.

With respect to the locations to be searched, where that location is a single-family residence, the search is to include all rooms within the residence, and all garages, storage rooms, outbuildings, and other structures, attached or detached, and any vehicles found within the curtilage of the residence, whether or not particularly named among the vehicles for which specific search authorization is sought.

ATTACHMENT A - 1
USAO No. 2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    With respect to the locations and vehicles to be searched, the search is to include

2  all containers, locked or unlocked, where the items in Attachment B could be found.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ATTACHMENT A - 2
USAO No. 2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ATTACHMENT A1**

**Locations to Be Searched**

3651 South Tyler Street, Tacoma, Washington (Subject Premises 2), a single-family home of Curtis Snipes with a light blue exterior, white trim doors, garage and windows, as depicted below.



ATTACHMENT A1 - 1
USAO No. 2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ATTACHMENT A2**

**Locations to Be Searched**

310 25th Avenue, Seattle, Washington (Subject Premises 34), a single-family home associated with Curtis Snipes and Terry Ezell with a brown exterior, as depicted below.



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**ATTACHMENT A3**

**Locations to Be Searched**

5137 S Leo Street, Seattle, Washington (Subject Premises 35), a single-family home associated with Curtis Snipes with a red brick and green exterior, as depicted below.



ATTACHMENT A3 - 1
USAO No. 2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**ATTACHMENT A4**

**Locations to Be Searched**

2101 E James Street, Apt. 208, Seattle, Washington (Subject Premises 52), an apartment unit associated with Terry Ezell in a multi-unit apartment complex with a blue and white trim exterior and a "208" marker on the door, as depicted below:





ATTACHMENT A4 - 1
USAO No. 2019R01083

**ATTACHMENT A5**

**Locations to Be Searched**

The person of Terry L. Ezell, date of birth 08-05-1966.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**ATTACHMENT A6**

**Locations to Be Searched**

615 East 49th Street, Tacoma, Washington (Subject Premises 36), a single-family

residence of Michael Hopkins with a beige and white trim exterior, as depicted below.

 

ATTACHMENT A5 - 1
USAO No. 2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**ATTACHMENT A7**

**Locations to Be Searched**

A tan 1997 Ford F150 bearing Washington license C41266U (Subject Vehicle 32), registered to Michael L. Hopkins at 615 East 49th Street, Tacoma, Washington.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

**ATTACHMENT A8**

2

**Locations to Be Searched**

3

4        2102 Martin Luther King Jr. Way, Tacoma, Washington (Subject Premises 37), a

5  single-family, two-story residence of Wayne Dubois with a beige and red trim exterior, as

6  depicted below.

7



8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ATTACHMENT A7 - 1
USAO No. 2019R01083

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ATTACHMENT A9**

**Locations to Be Searched**

A red 2012 Chevrolet Silverado bearing Washington license plate C95611N (Subject Vehicle 33) registered to Wayne R. Dubois at 2300 S Massachusetts Street, Apt. 213, Seattle, Washington.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ATTACHMENT A10**

**Locations to Be Searched**

The person of Wayne R. Dubois, date of birth 08-17-1972.

ATTACHMENT A9 - 1
USAO No. 2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**ATTACHMENT A11**

**Locations to Be Searched**

2909 Mill Avenue S, Renton, Washington (Subject Premises 10), a single-family residence of Jamar Howard with white exterior, as depicted below.



ATTACHMENT A9 - 1
USAO No. 2019R01083

**ATTACHMENT A12**

**Locations to Be Searched**

13011 East Gibson Road, Apt. P128, Everett, Washington (Subject Premises 38), an apartment unit residence of Jerry Jones on the first floor of a multi-unit apartment complex with a green and brown trim exterior and the marker "128" next to the front door, as depicted below.



ATTACHMENT A10 - 1
USAO No. 2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**ATTACHMENT A13**

**Locations to Be Searched**

A 2006 Range Rover bearing Washington license plate BVK2041 (Subject Vehicle 34) registered to Jerry D. Jones at 6118 S 242nd Place, Apt. 13-303, Kent, Washington.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**ATTACHMENT A14**

**Locations to Be Searched**

A black 2018 Toyota Camry bearing Washington license plate BVM7668 (Subject Vehicle 35) registered to Michelle L. Marshall at 13011 East Gibson Road, Apt. #P128, Everett, Washington.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**ATTACHMENT A15**

**Locations to Be Searched**

The person of Jerry D. Jones, date of birth 06-30-1970.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ATTACHMENT A16**

**Locations to Be Searched**

4041 30th Avenue South, Seattle, Washington (Subject Premises 39), a single-family, two-story residence of Gerald Aikens with a brown and white trim exterior, as depicted below.



ATTACHMENT A13 - 1
USAO No. 2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**ATTACHMENT A17**

**Locations to Be Searched**

A black 2013 Ford F150 bearing Washington license plate C72919R (Subject Vehicle 36) registered to Gerald Aikens II at 4041 30th Avenue South, Seattle, Washington.

**ATTACHMENT A18**

**Locations to Be Searched**

The person of Gerald C. Aikens, date of birth 12-14-1978.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ATTACHMENT A19**

**Locations to Be Searched**

601 25th Avenue E, Seattle, Washington (Subject Premises 42), a single-family residence of Davon Evans with a beige exterior, as depicted below.



ATTACHMENT A18 - 1
USAO No. 2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ATTACHMENT A20**

**Locations to Be Searched**

A blue 2006 Dodge Ram 1500 truck bearing Washington license plate C55634E (Subject Vehicle 41) registered to Davon Evans at 601 25th Avenue E, Seattle, Washington.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

**ATTACHMENT A21**

2

**Locations to Be Searched**

3

4       6430 S 118th Street, Seattle, Washington (Subject Premises 43), a single-family

5   residence frequented by Davon Evans with a beige exterior, as depicted below.

6



7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ATTACHMENT A19 - 1
USAO No. 2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ATTACHMENT A22**

**Locations to Be Searched**

The person of Davon A. Evans, date of birth 06-10-1974.

**ATTACHMENT A23**

**Locations to Be Searched**

4842 Rural Road SW, Apt. 207, Tumwater, Washington (Subject Premises 44), apartment unit residence of Tibor Jackson brown and brick exterior and a "207" marker on the front door, as depicted below.




ATTACHMENT A21 - 1
USAO No. 2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ATTACHMENT A24**

**Locations to Be Searched**

A black 2014 Hyundai Santa Fe bearing Washington license plate number BFL2212 (Subject Vehicle 42) registered to Jennifer A. Scott at 3211 Southeast Kamilche Point, Shelton, Washington.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ATTACHMENT A25**

**Locations to Be Searched**

The person of Tibor J. Jackson, date of birth 11-06-1988.

ATTACHMENT A23 - 1
USAO No. 2019R01083

**ATTACHMENT A26**

**Locations to Be Searched**

1013 South 316th Street, Federal Way, Washington (Subject Premises 45), a single-family residence of Terry Cameron with a yellow and brown trim exterior, as depicted below.



ATTACHMENT A23 - 1
USAO No. 2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**ATTACHMENT A27**

**Locations to Be Searched**

A white 2005 Volvo XC90 bearing Washington state license plate number BVB0498 (Subject Vehicle 38) registered to Terry V. Cameron at 1013 South 316th Street, Federal Way, Washington.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**ATTACHMENT A28**

**Locations to Be Searched**

Seattle Inn Northgate, Room 45, located at 12035 Aurora Avenue N, Seattle, Washington (Subject Premises 46), hotel room residence of Craig Jordan with a reddish brown and white trim exterior, as depicted below.



ATTACHMENT A25 - 1
USAO No. 2019R01083

**ATTACHMENT A29**

**Locations to Be Searched**

Hillside Motel, Room 3, located at 2451 Aurora Avenue N, Seattle, Washington (Subject Premises 50), secondary hotel room associated with Craig Jordan with a light gray and white trim exterior, as depicted below.



ATTACHMENT A26 - 1
USAO No. 2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**ATTACHMENT A30**

**Locations to Be Searched**

A white 2017 Chevy Silverado bearing Washington license plate number C41148U (Subject Vehicle 39) registered to Craig E. Jordan at 711 N 83rd Street, Seattle, Washington.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    **ATTACHMENT A31**

2    **Locations to Be Searched**

3

4    The person of Craig E. Jordan, date of birth 08-27-1969.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ATTACHMENT A28 - 1
USAO No. 2019R01083

**ATTACHMENT A32**

**Locations to Be Searched**

323 25th Avenue S, Apt. 218, Seattle, Washington (Subject Premises 47) apartment unit residence of Isiah Reynolds, within the Gideon-Mathews Gardens multi-unit apartment complex with interior access doors to the specific apartment unit, which has a "218" marker next to the door, as depicted below.





ATTACHMENT A28 - 1
USAO No. 2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**ATTACHMENT A33**

**Locations to Be Searched**

A silver Mercedes Benz C240 with no front or rear license plate and a temporary tag in the rear window (Subject Vehicle 40).

ATTACHMENT A29 - 1
USAO No. 2019R01083

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ATTACHMENT A34**

**Locations to Be Searched**

The person of Isiah D. Reynolds, date of birth 03-03-1965.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**ATTACHMENT A35**

**Locations to Be Searched**

Bellevue South Tower, 10700 NE 4th Street, Unit 2016, Bellevue, Washington (Subject Premises 49), condo unit residence of Carlos Daniels on the 20th floor, within a multi-unit condominium complex with interior access doors to the specific apartment unit, as depicted below, and assigned storage unit number P364-04.



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**ATTACHMENT A36**

**Locations to Be Searched**

A blue 2006 Bentley Continental bearing Washington license plate number CEO (Subject Vehicle 44) registered to Carlos R. Daniels at 4300 Cashmere Drive NE, Lacey, Washington.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**ATTACHMENT A37**

**Locations to Be Searched**

A dark blue 2004 Land Rover Range Rover bearing Washington license plate number BHF1786 (Subject Vehicle 45) registered to Carlos R. Daniels at 4300 Cashmere Drive NE, Lacey, Washington.

ATTACHMENT A32 - 1
USAO No. 2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ATTACHMENT A38**

**Locations to Be Searched**

A dark blue 2008 Mercedes CL bearing Washington license plate BJY3445 (Subject Vehicle 50) registered to Carlos R. Daniels at 4300 Cashmere Drive NE, Lacey, Washington.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**ATTACHMENT A39**

**Locations to Be Searched**

The person of Carlos R. Daniels, date of birth 12-15-1969.

ATTACHMENT A32 - 1
USAO No. 2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

# ATTACHMENT B

## Items to Be Seized

From the locations and vehicles listed in Attachment A, and A1 through A39 of this warrant, the government is authorized to search for and seize the following items, which are evidence, instrumentalities, and/or fruits of the commission of the following crimes: distribution and possession with intent to distribute controlled substances, in violation of Title 21, United States Code, Section 841(a)(1), and conspiracy to commit these offenses in violation of Title 21, United States Code, Section 846; laundering of monetary instruments in violation of Title 18, United States Code, Sections 1956 and 1957, and conspiracy to commit the same; use of a communications facility to commit, facilitate, or further acts which constitute a felony drug offense in violation of Title 21, United States Code, Section 843(b); interstate and foreign travel to promote, manage, establish, carry on, or facilitate unlawful activity, in violation of Title 18, United States Code, Section 1952, in violation of Title 21, United States Code, Section 952; possession of a firearm in furtherance of a drug trafficking crime, in violation of Title 18, United States Code, Section 924(c); and prohibited person in possession of a firearm, in violation of Title 18, United States Code, Section 922(g), including the following:

1.     Any controlled substances and suspected controlled substances, including but not limited to cocaine, crack cocaine, and marijuana.

2.     Drug paraphernalia, meaning items used or intended to be used to store, process, package, use, and/or distribute controlled substances, such as plastic bags, cutting agents, scales, measuring equipment, chemicals or similar items used to test the purity and/or quality of controlled substances, and similar items.

3.     Drug transaction records, meaning documents such as ledgers, receipts, notes, and similar items relating to the acquisition, transportation, and distribution of controlled substances.

ATTACHMENT B - 1
USAO No. 2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

4.      Customer and supplier information, including items identifying drug customers and drug suppliers, such as telephone records, personal address books, correspondence, diaries, calendars, notes with phone numbers and names, "pay/owe sheets" with drug amounts and prices, maps or directions, and similar items.

5.      Financial records, including bank records, safe deposit box records and keys, credit card records, bills, receipts, tax returns, vehicle documents/titles, financial instruments, money transfers, wire transmittals, negotiable instruments, bank drafts, cashier's checks, business records, documents related to the purchase, sale, and improvement of real estate, and any other records that show income and expenditures, net worth, or relate to obtaining, transferring, secreting, laundering, or spending large sums of money acquired from engaging in the acquisition and distribution of controlled substances

6.      Cash, precious metals, jewelry, and other similar items of value, and/or proceeds of drug transactions, as well as money counters.

7.      Documents and other property, such as photographs, mail, or other items, tending to show who resides in and has dominion and control over the location.

8.      Firearms or parts thereof, ammunition, firearms magazines, firearms accessories, body armor, firearms boxes, firearms manuals, records of the purchase of firearms, or other items related to the ownership or use of firearms.

9.      Cell phones and other communications devices. If such cell phones or other communications devices are seized, the government may search them without further authorization for the following items:

a.      Assigned phone number and identifying telephone serial number (ESN, MIN, IMSI, or IMEI);

b.      Stored list of recent received, sent, and missed calls;

c.      Stored contact information;

d.      Stored photographs, videos, addresses, calendar notes, notes, map history, or documents/files of or related to narcotics, currency, firearms or other

ATTACHMENT B - 2
USAO No. 2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

weapons, evidence of suspected criminal activity, and/or the user of the phone or suspected co-conspirators, including any embedded GPS data or other metadata associated with those photographs, videos, and other items;

      e.      Stored text messages related to the aforementioned crimes of investigation, including Apple iMessages, Blackberry Messenger messages, or other similar messaging services where the data is stored on the telephone;

      f.      Stored emails related to the aforementioned crimes of investigation;

      g.      Stored voicemails related to the aforementioned crimes of investigation;

      h.      Stored web browsing history related to the aforementioned crimes of investigation;

      i.      Stored social media content/history related to the aforementioned crimes of investigation;

      j.      Stored banking or money transfer history, including application-based money transfer data/history (i.e. Venmo or CashApp account data/history); and

      k.      Stored location data, including from any map applications on the cell phone.

The applied-for warrant authorizes the forensic examination of any seized cell phone or other communication device for the purpose of identifying electronically stored data described herein. This review may be conducted by any federal or local government personnel, sworn or non-sworn, assisting in the investigation, who may include, in addition to law enforcement officers and agents, federal and local contractors and support staff, attorneys for the government, attorney support staff, and technical experts. Pursuant to the requested warrant, the FBI may deliver a complete copy of the electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

ATTACHMENT B - 3
USAO No. 2019R01083

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970